Michael A. Orozco, Esq.
Bailey & Orozco, LLC
744 Broad Street, Suite 1901
Newark, N.J. 07102
Phone: (973) 693-4408, Fax: (973) 735-2684

Harry Asatrian
Strasser & Asatrian, LLC
744 Broad Street, 16th Floor
Phone: (973) 735 2716, Fax: (973) 735-2717
Attorneys for Maria Pacheco Bolanos

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Maria Pacheco Bolanos,

    Plaintiff-Petitioner,

v.

OSCAR AVILA, in his official capacity as
Directory of Hudson County Correctional
Facility, MICHAEL MUKASEY in his
official capacity as Attorney General of the
United States, HILLARY CLINTON in her
official capacity as Secretary of State of the
United States

    Defendants-Respondents,

**Civil Action No.**


**Hon.**


## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO
## 28 U.S.C. §2241

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................i-iv

INTRODUCTION...............................................................................................1

JURISDICTION AND VENUE.............................................................................1

PARTIES ..........................................................................................................2

FACTS AND PROCEDURAL HISTORY.............................................................2

CLAIMS FOR RELIEF ......................................................................................6

I. THE MAGISTRATE JUDGE ERRED IN FINDING SUFFICIENT PROBABLE CAUSE
BASED UPON THE 'EVIDENCE' OFFERED BY COSTA RICA IN THE EXTRADITION
PETITION..........................................................................................................6

    A.    An extradition petition alone is not evidence where the
          defendant has not been convicted....................................................6

    B.    The Magistrate Judge erred in finding the evidence submitted by
          petitioner as inadmissible and as contradictory evidence....................8

        1.    The evidence and statements presented by defendant were
              properly authenticated and are, therefore, admissible......................13

    C.    When taking into account the relevant and similar provisions in treaties that are
          used for extraditing countries, and where the 'evidence' submitted is only a
          certified petition, the petition alone is sufficient only when it pertains to
          convicted defendants......................................................................15

    D.    At a minimum, additional documentation should have
          been requested pursuant to the controlling treaty....................................16

    E.    Mrs. Bolanos, upon extradition, would be subject to procedures and punishment so
          antipathetic to a federal court's sense of decency to require reexamination of the rigid
          extradition guidelines....................................................................18

PRAYER FOR RELIEF........................................................................................22

## TABLE OF AUTHORITIES

Abu Eiain v. Adams, 529 F. Supp. 685 (1980) …………………………………………..8

Afanasjev v. Hurlburt, 418 F. 3d 1110, 1164-1165 (11th Cir. 2005). …………………..15

Ahmad v. Wigen, 910 F.2d 1063, 1064-5 (2d Cir.1990) ………………………………….6

Arnbjornsdottir-Mendler v. United States, 721 F.2d 679, 683 (9th Cir. 1983)…………..20

Artukovic v. Rison, 784 F.2d 1354 (9th Cir. 1986). ……………………………………15

Barapind v. Enomoto, 400 F.3d 744, 750 (9th Cir. 2005)……………………………… 11

Birknes, 527 F.2d at 960.. …………………………………………………………….11

Bloomfield v. Gengler, 507 F. 2d 925 (1974) ……………………………………….....16

Charlton v. Kelly, 229 U.S. 447, 461, 33 S.Ct. 945, 57 L.Ed. 1274 (1913) …………11,12

Collins v. Loisel, 259 U.S. 309,315-16,42 S.Ct. 469, 66 L.Ed. 956 (1922) …..10,11,12,15

Cucuzzella v. Kelikoa 638 F.2d 105 (1981) …………………………………………...8

Escobedo v. United States, 623 F.2d 1098 (5th Cir. 1980). ………………………………15

Fernandez v. Phillips, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925) …….. 6

Gallina v. Frasher, 278 F.2d 77, 78 (2d Cir.)………………………………………20,21,22

Hoxha v. Levi, 465 F.3d 554,564 (3rd Cir. 2006)…………………………………………20

In re Extradition of Cheung, 968 F. Supp. 791, 798-99 (D.Conn. 1997) ……………….17

In re Lehming, 951 F. Supp. 505 (1996)……………………………………………….8,13

In Re Marasco, 325 F. 2d 562 (1970) …………………………………………………..8

In Re Mousa Mohammed Abu Marzook, 924 F. Supp. 592 (1996) ……………………...8

In Re Ryan, 380 F. Supp. 270 (1973) …………………………………………………..8

In Re Sergio Luigi Locatelli, 468 F. Supp. 568 (1979) ………………………………..8

In the Matter of The Extradition of Gunther Lehming, 951 F. Supp. 505, 514

(D. Del. 1996). ...................................................................................13

In the Matter of Extradition of Singh, 123 F.R.D. 127 (DNJ 1987)........................20

Iriarte v. United States, 157 F.2d 105, 108 (1st Cir. 1946) *cert. denied,*
335 U.S. 816, 93 L. Ed. 371 (1948)................................................................. 11

Jhirad v. Ferrandina, 536 F.2d 478, 482 (2d Cir.), cert. denied,
429 U.S. 833, 97 S. Ct. 97, 50 L.Ed.2d 98 (1976). ............................................. 6

Jiminez v. Aristeguieta, 311 F. 2d 547 (1962) .....................................................8

Kwong Hai Chew v. Colding, 344 U.S. 590, 596-97 (1953)..................................19

Landon v. Plasencia, 459 U.S. 21, 32 (1982).....................................................19

Lynch v. Cannatella, 810 F.2d 1363, 1374 (5th Cir. 1987)...................................19

Messina v. United States, 728 F.2d 77, 79 (2d Cir.1984)… .....................................6

Messina v. U.S., 728 F.2d 77 (1984) ................................................................8

Ntakirutmana v. Reno, 184 F.3d 419 (1999) ......................................................8

Oteiza v. Jacobus, 136 U.S. 330 (1890) .............................................................7

Plyler v. Doe, 457 U.S. 202, 210 (1982)...........................................................19

Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir. 1986); *cert. denied,*
476 U.S. 882, (1986). ..................................................................................13

Republic of France v. Moghadam, 617 F. Supp. 777 (1985) ..........................8,13,18

Sakaguchi v. Kaulukukui, 520 F. 2d 726 (1975) ..................................................8

Sayne v. Shipley, 418 F.2d 679, 685 (5th Cir. 1969). .........................................15

Shapiro v. Ferrardina, Supra, 478 F.2d at 901.. ................................................10

Simmons v. Braun, 627 F.2d 635, 637 (2d Cir.1980). ...........................................6

Sindona v. Grant, 619 F. 2d 167 (2d. Cir. 1908).................................... 12,13,20

Sing, supra, 170 F. Supp.2d at 994...................................................................11

Spatola v. United States, 925 F.2d 615, 617 (2nd  Cir. 1991).........................................1,2

Tineo v. Ashcroft, 350 F.3d 382, 398 (3d Cir. 2003.............................................19

United States v. Atur, 300 F. Supp. 2d 418, 426 (S.D. W.Va. 2003). ......................13

U.S. v. Barr, 619 F. Supp. 1068 (1985)..............................................................18

United States v. Henry, 604 F.2d 908, 914 (5th Cir. 1979)………………………....19

United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996)…………………….19

United States ex rel. Petrushansky v. Marasco, 325 F.2d 562, 567 (2d Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 969, 11 L.Ed.2d 971 (1964)................................ 11

United States v. Taitz, 134 F.R.D. 288, 291 (S.D.Cal. 1991) ...................................7

Valentine v. United States, 299 U.S. 5 (1936). ...................................................16

Whitney v. Robertson, 124 US 190, 194, 31 L. Ed. 386 (1888)………………….... 11

Wong Wing v. United States, 163 U.S. 228 (1896.............................................19

Yamataya v. Fisher, 189 U.S. 86 (1903)......................................................19

Zadvydas v. Davis, 533 U.S. 678, 693, (2001)……………………………….......19

## FEDERAL STATUTES

Equal Access to Justice Act, 28 U.S.C. § 2412...............................................19

I, § 9, cl. 2.................................................................................... 1

16 U.S.C. § 1651.............................................................................. 1

18 U.S.C § 3181................................................................................. 12,13

18 U.S.C. §3184................................................................................ 4,12

18 U.S.C. §3190................................................................................4,7

18 U.S.C. §3194................................................................................4,

28 U.S.C. Sec. 1291…………………………………………………………6

28 U.S.C § 1331 ………………………………………………………… 1

28 U.S.C §§ 2201-02 ………………………………………………… 1

28 U.S.C § 2412.. ………………………………………………… 19,23

28 U.S.C §2241…………………………………………………….. 1,2,6

28 U.S.C. § 2243………………………………………………………1,23

## TREATIES

(U.S.- C.R., Dec. 16,1982, S. Treaty Doc. 98-17 (1984)…………………………………7

France (U.S.-Fr., Apr. 23 1996, S. Treaty Doc. 105-13 (1998)……………………….16

Germany (U.S.-G.R., Jun. 20, 1978, S. Treaty Doc. 96-1 (1979)……………………….16

Italy (U.S.-Itl., Oct. 13, 1983, S. Treaty Doc. 98-20 (1984)………………………….16

Japan (U.S.- Ja., March 3, 1978, S. Treaty Doc. 96-16 (1979)………………………….16

Mexico (U.S.-Mex., May 4, 1978, S. Treaty Doc. 96-13 (1979)……………………...16

United States and Canada (U.S.-Can., July 9, 1974, S. Treaty Doc. 93-31 (1975)……...16

Feb. 4, 1985, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85…………………….21

## INTRODUCTION

1.      Petitioner Maria Pacheco Bolanos has been imprisoned since April 9th, 2008, when she was arrested on an INTERPOL warrant for her failure to appear before a court in Costa Rica.

2.      Mrs. Bolanos was originally ordered to be extradited on January 20th, 2009, by the Honorable Mark Faulk, Magistrate Judge, in Mag. No. 08-3641. Petitioner brings this action as an appeal of the order granting extradition pursuant to Title 28 United States Code §2241and Spatola v. United States, 925 F.2d 615, 617 (2nd Cir. 1991).

3.      Petitioner requests that the Court issue the writ of habeas corpus and order her immediate release under reasonable condition of supervision or, in the alternative, order an adequate hearing date and brief scheduling.

4.      Pursuant to 28 U.S.C. §2243, and as set forth in an application filed herein Mrs. Bolanos respectfully requests that the court immediately order Respondents to show cause why the writ of habeas corpus should not be granted.  Mrs. Bolanos also requests that the Court set a prompt hearing on the matter upon Respondents' return on the order to show cause.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §2241 (habeas corpus); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. §§ 2201-02 (declaratory relief); and the U.S. Constitution, art.I, § 9, cl. 2 (Suspension Clause).

6.      Mrs. Bolanos has exhausted any and all administrative remedies to the extent required by law.

7.      The Federal District Courts are the first venue where a habeas corpus petition must be filed when seeking review of an Order of Extradition, pursuant to Title 28 United States Code §2241and Spatola v. United States, 925 F.2d 615, 617 (2nd Cir. 1991).

1

8.      Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §2241 (d) because Mrs. Bolanos is incarcerated at Hudson County Correctional Facility in South Kearny, New Jersey and because the matter was originally heard before the Honorable Mark Falk, Magistrate Judge, Federal District Court for the District of New Jersey.

## PARTIES

9.      Petitioner is a national and citizen of Costa Rica and has resided in the United States for the past ten years.  During that time she given birth to three children.  She is currently at the Hudson County Correctional Facility in South Kearny, New Jersey.  She is now legally married to Marcos Carvajal, the father of her three children and her paramour since she began living in the United States.  She has applied for citizenship based upon her marriage and family with Mr. Carvajal, a US citizen.

10.      Respondent Oscar Avila is the Director of the Hudson County Correctional Facility and is Mrs. Bolanos's immediate custodian.  Mr. Avila is sued in his official capacity.

11.      Respondent Michael Mukasey is the Attorney General of the United States and the head of the Department of Justice.  Mr. Mukasey is a legal custodian of Mrs. Bolanos and is being sued in his official capacity.

12.      Respondent Hillary Clinton is the Secretary of State of the United States.  She is responsible for the issuance of an approval by the Department of State following the order of extradition by the Magistrate Judge, Honorable Mark Faulk.  Mrs. Clinton is being sued in her official capacity.

## FACTS AND PROCEDURAL HERTORY

13.      Petitioner was charged with murder in Costa Rica, stemming from her alleged involvement in the murder of a Costa Rican national in November of 1997, named Jose Borrase Andres Taylor.  It is worth noting that the decedent is the son of a very powerful and wealthy

media mogul in Costa Rica, Andres Borrase Sanou.   Mr. Sanou is the owner of a large newspaper in Costa Rica, called La Prensa Libre.   Originally, the only suspect in the case was Laureano Montero Romero, the boyfriend of Petitioner, who was charged with murder.   It was a well known fact that Mr. Romero and Mr. Taylor did not like one another.   This stemmed from a long time feud between Mr. Romero and Mr. Taylor which started as a civil dispute in the Costa Rican courts over a piece of property.   The night that Mr. Taylor was killed Mr. Romero appeared in a local hospital with a gunshot wound, immediately arousing suspicion once Mr. Taylor's body was found.   A few days after the discovery of the body Mr. Romero was charged with Mr. Taylor's murder.

14.     The death of Mr. Taylor was surrounded by a large amount of publicity, especially given the fact that his father owned a newspaper.   During the course of the investigation the Petitioner was the star witness against Mr. Romero, revealing information of his whereabouts on the night of the murder.   Over time, however, the investigators began focusing their attention on Mrs. Bolanos, eventually charging her as an accomplice.   As can be seen from the "evidence" presented by the extradition petition, there is no basis to support such a charge.

15.     A trial was started in Costa Rica charging Petitioner with "Aggravated Homicide Degree of Complicity" in December of 1998.   At this point, seeing the way in which the powers that be had turned against her, and the manner in which the court was handing the matter, Petitioner became very afraid about the possible outcome.   Not because she was guilty, but because the case appeared hopelessly lost.   There was a great deal of media attention, the police officers who originally investigated the matter were now serving as the prosecutors, and Mr. Sanou regularly published articles declaring Mrs. Bolanos a criminal and murderer.   This was, arguably, part of Mr. Sanou's scheme to ensure a conviction against Petitioner.   Mr. Sanou also spent large sums of money trying to hunt down the Petitioner.   He publicly admitted this when he

3

published numerous articles about Petitioner after her capture. This shows the great lengths that he will go to avenge the death of his son, at any cost.

16.     A trial was started in the Trial Court of Cartago, Costa Rica, in December 1998. Both Bolanos and Romero were being tried at the same time. After a short break, the court reconvened on January 4th, 1999. At that time, defendant Maria Pacheco Bolanos did not appear, resulting in an order for her arrest. Again, her fear was that the trial was impossible to win given the aforementioned facts.

17.     Petitioner fled to the United States and resided here until her arrest. On or about April 9, 2008, the defendant was arrested in Long Island, New York, on an INTERPOL warrant. Since that time she has remained incarcerated in the Hudson County Correctional Facility, located in Kearny New Jersey.

18.     A certified Extradition Petition was received by the Consul General at the United States Embassy, in accordance with 18 U.S.C. 3190 on or about May 13, 2008. On or about June 16, 2008, by way of Diplomatic Note No.: ECRW-20-08, the Embassy of Costa Rica formally requested extradition. A copy of the extradition petition is attached hereto as **Exhibit A.**

19.     By way of a complaint for a Warrant of Arrest pursuant to 18 U.S.C. 3184, on September 16th, 2008, the extradition proceedings began in the Federal District Court for the District of New Jersey before the Honorable Mark Falk, Magistrate Judge, Mag. No.: 08-3641. A copy of the Warrant of Arrest is attached hereto as **Exhibit B.** A scheduling order was issued on October 22, 2008.

20.     The government filed its brief, attached hereto as **Exhibit C**, on October 17th, 2008. Defendant filed its response on November 3rd, 2008, attached hereto as **Exhibit D.** Upon receipt of our response, the United States government requested more time to reply. Their reply was filed on December 12th, 2008, attached hereto as **Exhibit E.** On December 23rd, 2008, Judge

4

Falk heard oral arguments in the matter.  A copy of the transcript from the proceeding is attached hereto as **Exhibit F**.  At the end of the hearing, this office requested that the parties be able to file supplemental briefs in order to address certain issues that were brought up at the hearing, specifically the authentication of the sworn statements acquired from the trial court in Cartago, Costa Rica, where the Petitioner is charged.  That request was granted by Judge Falk.  On December 29th, 2008, defendant filed her first supplemental brief, attached hereto as **Exhibit G**. The Government responded on January 7th, 2009, attached hereto as **Exhibit H**.  The final memorandum to the court was submitted by this office on January 9th, 2009, attached hereto as **Exhibit I.**

21.     On January 20th, 2009, Judge Falk issued a written opinion on the extradition petition, attached hereto as **Exhibit J**.  For the purposes of this appeal to the District Court defendant/petitioner is seeking review of the Judge's decision regarding the sufficiency of the evidence presented and the finding of the existence of probable cause.  **See** Section (d), **Exhibit J, Opinion of Judge Falk, pg. 9.**

## CLAIMS FOR RELIEF

## I. THE MAGISTRATE JUDGE ERRED IN FINDING SUFFICIENT PROBABLE CAUSE BASED UPON THE 'EVIDENCE' OFFERED BY COSTA RICA IN THE EXTRADITION PETITION.

It is well settled that the scope of review for an extradition matter is limited. An order certifying a request for extradition cannot be reviewed on direct appeal because "[e]xtradition orders do not ... constitute 'final decisions of a district court,' appealable as of right under 28 U.S.C. Sec. 1291." Jhirad v. Ferrandina, 536 F.2d 478, 482 (2d Cir.), cert. denied, 429 U.S. 833, 97 S. Ct. 97, 50 L.Ed.2d 98 (1976). Instead, a party who is to be extradited may obtain limited review of an extradition order by seeking a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2241. In this context, "habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." Fernandez v. Phillips, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925) (citations omitted); see Ahmad v. Wigen, 910 F.2d 1063, 1064-5 (2d Cir.1990); Messina v. United States, 728 F.2d 77, 79 (2d Cir.1984); Simmons v. Braun, 627 F.2d 635, 637 (2d Cir.1980). In the instant matter petitioner is appealing the Magistrate Judge's decision regarding a finding of probable cause based upon the evidence presented.

**A.    An extradition petition alone is not evidence where the defendant has not been convicted.**

Where the treaty lists requirements such as the introduction of evidence to support the extradition of defendants who have not yet been convicted, the extraditing state is required to produce actual documentary evidence other than a verified petition.

The government's response to the defendant's brief, attached hereto as **Exhibit E**, contains a cornucopia of cases which allegedly stand for the proposition that a certified and

6

authenticated extradition petition is sufficient evidence to satisfy probable cause. The case law and relevant treaty, however, are quite clear that where a defendant has not been convicted, and the treaty calls for "such evidence as, according to the law of the Requested State, would be necessary to justify the apprehension and commitment for trial of the person if the offense had been committed there", then actual evidence is required to be submitted along with the extradition petition. U.S.-C.R., Dec. 16, 1982, S. Treaty Doc. 98-17 (1984). Evidence is defined by Mirriam-Websters as "something that furnishes proof; *specifically* : something legally submitted to a tribunal to ascertain the truth of a matter." *Webster's Third International New Dictionary*, (Phillip B. Grove ed., G & C Merriam Co. 1961). Nothing other than a petition has been submitted as proof and to hold that is contains evidence, alone, amounts to nothing more than a rubber stamp to order a defendant to be extradited.

There is not one single case that the defendant's attorneys have found that stands for the proposition that a certified, signed extradition petition alone is sufficient evidence to find probable cause where that defendant has not been convicted in the Requesting State. Moreover, 18 U.S.C. 3190 provides that "**Depositions, warrants, or other papers or copies thereof** offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated." (*Emphasis added*). The purpose of the statute is to afford the Government an efficient method of satisfying obligations **under extradition treaties** and [to] supply a framework through which the Government can introduce evidence to efficiently extradite fugitives." United States v. Taitz, 134 F.R.D. 288, 291 (S.D.Cal. 1991), *citing* Oteiza v. Jacobus, 136 U.S. 330 (1890)(emphasis added). Thus, pursuant to the applicable treaty, statute and case law, the Requesting State must submit evidence along with the extradition petition to the United States. It is, arguably, an articulable standard.

7

That standard, defendant/petitioner argues, is the following: *at a minimum, where the treaty lists requirements such as the introduction of evidence to support the extradition of defendants who have not yet been convicted, the extraditing state is required to produce actual documentary evidence other than a verified petition.*

The amount of cases where extradition petitions were granted and were based upon actual evidence submitted in addition to the diplomatic papers is extensive.[1]  In these cases there is an extradition treaty in place which literally parrots the current relevant treaty and what is necessary to support the petition when the extradition request pertains to individuals who have not been convicted.  Where the defendant has been convicted, the treaties between all of the countries only require a certified petition, nothing more.  Thus, evidencing a standard based upon the treaty requiring supplemental, tangible evidence to support an extradition where there has been no conviction, such as in the instant matter.

**B.      The Magistrate Judge erred in finding the evidence submitted by Petitioner as inadmissible and as contradictory evidence.**

In his opinion Judge Falk concluded that the evidence submitted by Petitioner in the

---

[1] See, Cucuzzella v. Kelikoa 638 F.2d 105 (1981)(holding that the evidence was sufficient to find probable cause, where requesting state submitted affidavits that would be admissible in a Canadian Court); Abu Eiain v. Adams, 529 F. Supp. 685 (1980)(holding that there was sufficient evidence to satisfy extradition request when requesting state of Israel submitted 3 separate statements by witnesses); Messina v. U.S., 728 F.2d 77 (1984)(granting extradition where court was provided not only with affidavits, but audio copies of wire taps incriminating defendant with extraditable crimes); In re Lehming, 951 F. Supp. 505 (1996)(holding extradition sufficient where Germany had provided transcribed sworn statements and documents from court proceedings in Germany as evidence); In Re Sergio Luigi Locatelli, 468 F. Supp. 568 (1979)(granting extradition where extraditing country provided sworn testimony, forged documents and intelligence reports); Republic of France v. Moghadam, 617 F. Supp. 777 (1985)(holding insufficient probable cause even after requesting state had submitted statements and letters from people other than prosecutors to support petition); In Re Mousa Mohammed Abu Marzook, 924 F. Supp. 592 (1996)(holding extradition was proper where Israel had presented numerous affidavits in support of extradition request); Ntakirutmana v. Reno, 184 F.3d 419 (1999)(where the original extradition request was denied for lack of probable cause extraditing entity submitted additional declarations of witnesses); In re Ryan, 380 F. Supp. 270 (1973)(granting extradition request where requesting state provided depositions of eyewitnesses); Sakaguchi v. Kaulukukui, 520 F. 2d 726 (1975)(granting extradition where requesting state provided sworn confessions, affidavits, autopsy reports and investigation reports); Jiminez v. Aristeguieta, 311 F. 2d 547 (1962)(granting extradition where the court found extraditing country had provided voluminous evidence in the form of **documentary** evidence); In Re Marasco, 325 F. 2d 562 (1970)(holding sufficient probable cause to grant extradition where requesting state provided numerous statements and affidavits).

extradition proceedings was inadmissible as it was deemed contradictory. **See Exhibit J**, page 9, Footnote 14. Petitioner submitted the sworn statements of three individuals who were mentioned in the extradition petition as having positively identified her on the night that the decedent, Mr. Taylor, was killed. These three statements, which were translated by a federal court certified translator on behalf of Petitioner, never actually positively identify the defendant. More importantly, these statements show that these are unquestionably the basis for the prosecutor's numerous conclusory statements contained in the extradition petition.[2] They, therefore, cannot be contradictory as it is the very evidence that they rely upon to base their misstatements.

It is wholly illogical to find that they are contradictory because they were not submitted with the purpose of showing that it was not petitioner, or that petitioner had an alibi. They were submitted to show and prove, without question, that the Costa Rican authorities are abusing our justice system and are asking that our honorable courts simply accept their unethical and wholly irresponsible allegations as true when 90% of what is contained in the petition is, unequivocally, a lie and fabricated. Prosecutors are permitted to make conclusions when the evidence points them in that direction. They cross the proverbial line when they mis-state what witnesses will testify to when the prior sworn statements of those witnesses cannot even remotely be held to constitute probable cause. Our court system should not be perverted in such a way.

The Statements and their translations were included as Exhibits A, B, and C and can be found attached to **Exhibit D**. During the extradition proceeding Petitioner sought to introduce these documents as evidence after they were properly authenticated by Mr. Fernando Sanchez Chacon. Mr. Chacon is a licensed attorney from the Requesting State; Costa Rica. He testified to the authenticity of the documents submitted, from whom they were acquired, and when. See,

---

[2] Other 'evidence' later submitted to the Court on behalf of the Requesting State, specifically, the letter which was attached to Exhibit H, passes the line of being conclusory and is an outrageous and unabashed lie. As evidenced by the translated exhibit attached to Exhibit I of this Writ, the Costa Rican government had examined the hairs from the scene of the crime and concluded, unequivocally, that they did not belong to the defendant.

**Exhibit F,** pages 23-30. Even if Judge Falk admitted the witnesses' statements as they are stated in the extradition petition, the reasonable inferences which can be drawn from those statements do not provide a sufficient probable cause basis to establish that Ms. Bolanos was involved in the planning of the crime, present at the crime scene, or involved in the commission of any crime whatsoever. Essentially the only 'evidence' presented by Costa Rica that actually supports the extradition petition are the 'conclusions' of their prosecutor, based upon his 'interpretation' of the actual facts, which is evidenced by the translations and is a gross and unethical interpretation that this court must scrutinize.

It is true that the Court may only receive evidence that explains the evidence introduced by the demanding country; and, that the accused has no right to present evidence calculated to contradict the demanding country's proof or to pose questions of credibility. Collins v. Loisel, 259 U.S. 309, 315-16, 42 S.Ct. 469, 66 L.Ed. 956 (1922); Shapiro v. Ferrardina, Supra, 478 F.2d at 901. However, the undersigned has located no case which precludes this Court from reviewing the actual facts relied upon by Costa Rica, factually stated, and without the misstatements or conclusions of Costa Rica's prosecutor. Having reviewed that evidence, this Court must evaluate it to determine that the presented evidence actually establishes a sufficient factual probable cause basis for the extradition petition. We, respectfully, argue that it cannot, and it was clear error to hold otherwise.

Pursuant to the language of the Treaty, at the hearing of this matter, the evidence submitted by the Government in support of the extradition petition must be established to be both competent, and sufficient to support the issuance of an arrest warrant under the laws, rules and procedures applicable to criminal prosecutions in the United States. See Birknes, 527 F.2d at 960, *citing* Iriarte v. United States, 157 F.2d 105, 108 (1st Cir. 1946), *cert. denied*, 335 U.S. 816, 93 L. Ed. 371 (1948); and, Whitney v. Robertson, 124 US 190, 194, 31 L. Ed. 386 (1888).

10

An accused person's right to produce evidence at an extradition hearing is limited. The rule is that the accused has no right to introduce evidence which merely contradicts the demanding country's proof, or which only poses conflicts of credibility. On the other hand, the accused has the right to introduce evidence which is "explanatory" of the demanding country's proof. The extent of such explanatory evidence to be received is largely in the discretion of the judge ruling on the extradition request. Collins v. Loisel, 259 U.S. 309, 315-17, 42 S.Ct. 469, 66 L.Ed. 956 (1922); Charlton v. Kelly, 229 U.S. 447, 461, 33 S.Ct. 945, 57 L.Ed. 1274 (1913); United States ex rel. Petrushansky v. Marasco, 325 F.2d 562, 567 (2d Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 969, 11 L.Ed.2d 971 (1964).

The distinction between "contradictory evidence" and "explanatory evidence" is difficult to articulate. However, the purpose behind the rule is reasonably clear. In admitting "explanatory evidence," the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause. The scope of this evidence is restricted to what is appropriate to an extradition hearing. See Sing, supra, 170 F. Supp.2d at 994. The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits. Barapind v. Enomoto, 400 F.3d 744, 750 (9th Cir. 2005). Respectfully, Ms. Bolanos is not turning this hearing into a full trial, and is only demanding that the United States require that Costa Rica produce sufficient, actual, certifiable evidence that warrants a finding of probable cause other than it's own petition.

The Supreme Court has twice cited with approval a district court case which aptly summarizes the relevant considerations when determining if there is sufficient probable cause to warrant the extradition of a defendant. The Supreme Court decisions are Collins v. Loisel, 259 U.S. 309, 316, 42 S.Ct. 469, 66 L.Ed. 956 (1922), and Charlton v. Kelly, 229 U.S. 447, 461, 33

S.Ct. 945, 57 L.Ed. 1274 (1913).  Recent decisions such as <u>Sindona</u>, 450 F. Supp. 672, establish

that a judge presiding over an extradition hearing is to consider the sufficiency of the evidence

presented and decide that **a lack of evidence renders any statements conclusory** (emphasis

added).  In this instant matter, not one piece of evidence has been forwarded, translated, certified,

or provided that would satisfy a finding of probable cause.  Thus, every statement offered is, for

all intents and purposes, at best, conclusory.

  18 USC Section 3184 controls internal extradition proceedings as so far as they address

the sufficiency of evidence.  Section 3184 states:

> Whenever there is a treaty or convention for extradition between
> the United States and any foreign government, or in cases arising
> under <u>section 3181(b)</u>, any justice or judge of the United States, or
> any magistrate judge authorized so to do by a court of the United
> States, or any judge of a court of record of general jurisdiction of
> any State, may, upon complaint made under oath, charging any
> person found within his jurisdiction, with having committed within
> the jurisdiction of any such foreign government any of the crimes
> provided for by such treaty or convention, or provided for under
> <u>section 3181(b)</u>, issue his warrant for the apprehension of the
> person so charged, that he may be brought before such justice,
> judge, or magistrate judge, to the end that the evidence of
> criminality may be heard and considered. Such complaint may be
> filed before and such warrant may be issued by a judge or
> magistrate judge of the United States District Court for the District
> of Columbia if the whereabouts within the United States of the
> person charged are not known or, if there is reason to believe the
> person will shortly enter the United States. If, on such hearing, he
> deems the evidence sufficient to sustain the charge under the
> provisions of the proper treaty or convention, or under <u>section</u>
> <u>3181(b)</u>, he shall certify the same, together with a copy of all the
> testimony taken before him, to the Secretary of State, that a
> warrant may issue upon the requisition of the proper authorities of
> such foreign government, for the surrender of such person,
> according to the stipulations of the treaty or convention; and he
> shall issue his warrant for the commitment of the person so
> charged to the proper jail, there to remain until such surrender shall
> be made.

  <u>See also</u>, <u>Republic of France v. Moghadam</u>, 617 F. Supp. 777, 781 (1985).  <u>See also</u>,

<u>Sindona v. Grant</u>, 619 F. 2d 167 (2d. Cir. 1908).  The evidence submitted and relied upon by the

Government is insufficient to support a finding of probable cause with regard to Ms. Bolanos' alleged involvement in the homicide of Jose Borrase Taylor in Costa Rica because there is none. When evaluating the probable cause proffered by the Government, the Court

> "...is to review the **evidence** presented and make an independent determination that the accused committed the crimes alleged. As stated by the Supreme Court, 'the commissioner must judge for himself the persuasiveness of the facts relied upon by a complaining officer to show probable cause. **He should not accept without question the complainant's mere conclusions** that the person whose arrest is sought has committed a crime."

(emphasis added)In the Matter of The Extradition of Gunther Lehming, 951 F. Supp. 505, 514 (D. Del. 1996).[3] In essence, the standard for the court's determination is identical to the standard under Federal Rule of Criminal Procedure 5.1 (e). United States v. Atur, 300 F. Supp. 2d 418, 426 (S.D. W.Va. 2003). (Citations omitted). A magistrate judge sitting in an extradition case reserves the sole right to determine the credibility, if any, of the Government's evidence. Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir. 1986); *cert. denied*, 476 U.S. 882, (1986). Here, there was none, and the magistrate judge should have required the Requesting State to submit more proofs.

**1.     The evidence and statements presented by defendant were properly authenticated and are, therefore, admissible.**

First, the documents produced by defendant were properly authenticated. The documents submitted were acquired by Mr. Chacon by and through the court in Cartago, Costa Rica. As he testified in court during the extradition hearing, the court in Cartago keeps a file of every case and updates it regularly with official court documents as the matter proceeds. **Exhibit F,** pgs 24-

---

[3] It should be noted that due to the deficiency in the supporting Probable Cause, the Lehming Court did not issue a certificate of Extradition to the Secretary of State.  What is of greater weight for the arguments contained in this brief is that the court in Lehming found that the 'evidence' submitted by the requesting state amounted to "unsupported conclusory statements which are insufficient to satisfy probable cause." Lehming at 517.  It was clear error to accept the petition's conclusory statements as evidence, especially after Petitioner was able to submit the actual sworn statements which contained nothing even remotely approaching the misstatements in Costa Rica's petition.

30. Mr. Chacon acquired those sworn statements through the courts, directly from the custodian

of records of the court in Cartago. He has reviewed the file regularly, and he testified to the fact

that the documents submitted by defendant were the same as the documents found in Cartago.

He personally delivered those documents to the United States.

Even thought the Federal Rules of Evidence do not apply, Rule 901 is instructive; "[t]he

requirement of authentication or identification as a condition precedent to admissibility is

satisfied by evidence sufficient to support a finding that the matter in question is what its

proponent claims...( 7) *Public records or reports*. Evidence that a writing authorized by law to

be recorded or filed and in fact recorded or filed in a public office, or a purported public record,

report, statement, or data compilation, in any form, is from the public office where items of this

nature are kept." Here, defendant brought a licensed attorney from Costa Rica to testify to the

authenticity of the documents presented, thus satisfying the Federal Rule 901. Moreover, since

the rules of evidence don't apply and are mentioned here only for the purpose of showing that

the requisite necessities for proper authentication were met under the only rule to provide

guidance, defendant was the only party that actually presented tangible evidence and witnesses.

The rules of criminal procedure and evidence that would apply at trial have no

application in an extradition hearing. Afanasjev v. Hurlburt, 418 F. 3d 1110, 1164-1165 (11th

Cir. 2005). An extradition hearing may be predicated entirely upon the unsworn statements of

absent witnesses. Collins, supra, 259 U.S. at 317. Both sworn and unsworn statements in

properly authenticated documents are permissible. Artukovic v. Rison, 784 F.2d 1354 (9th Cir.

1986). This includes multiple hearsay. Sayne v. Shipley, 418 F.2d 679, 685 (5th Cir. 1969). 18

U.S.C. §3190; Escobedo v. United States, 623 F.2d 1098 (5th Cir. 1980). Mr. Chacon testified

about the manner in which the statements were taken, before whom, and that the statements are

accurate copies of those found in the official records of the court in Cartago. Yet these

14

statements, which are the only source of information that the prosecutor could use to base his conclusory statements, do not even remotely approach a finding of probable cause.

More importantly, the Government has failed to produce the sworn, or unsworn statement, of any individual who can or would testify in the matter in Costa Rica. Petitioner may appear to reiterate this point too often, but the statements of the prosecutor are not evidence, not in this country nor in Costa Rica. The prosecutor is not a witness, therefore, the extradition petition is not sufficient evidence alone, and to hold it does completely disregards the right of the defendant to challenge any 'evidence' because the entire document is deemed to be authenticated by the requesting country. In other words, according to the logic contained in the opinion of Judge Falk, the petition is evidence, it is properly authenticated, therefore the extradition must be granted, and the defendant never has a fighting to chance to introduce explanatory evidence. This kind of logic fails to preserve our system of justice because it rubber stamps the petition. Given the fact that the Costa Rican authorities have blatantly misrepresented themselves this Court must carefully scrutinize the manner in which this extradition proceeding continues.

**C.    When taking into account the relevant and similar provisions in treaties that are used for extraditing countries, and where the 'evidence' submitted is only a certified petition, the petition alone is sufficient only when it pertains to convicted defendants.**

Defendant concedes that, in certain cases, the petition alone is sufficient to establish probable cause. The instant matter is not such a case. The government cannot point to one single case which supports their contention that the petition alone is sufficient to support probable cause where the defendant has not been convicted. The only cases which support that contention deal with cases where the defendant has already been convicted. Extradition treaties are to be liberally construed. <u>Valentine v. United States,</u> 299 U.S. 5 (1936). However liberal the interpretation of the relevant provisions, there is unquestionably a requirement of evidence which has not and cannot be met here.

15

It also flows logically from the case law and the similar treaties.[4]  In fact, based upon the respective treaty and relevant US cases, the only time a certified extradition petition is sufficient is when the defendant has been convicted.   Spatola v. United States, 741 F. Supp. 362 (1991)(holding that where "there has been a judgment of conviction there is no need for an 'independent' determination of probable cause: the relator's guilt is an adjudicated fact which a fortiori establishes probable cause." Id. At 374); Bloomfield v. Gengler, 507 F. 2d 925 (1974)(where defendants were not tried in absentia, and there was a conviction, court held finding of probable cause is, in essence, a per se standard).

The reasoning behind the opinions where the Court found probable cause based upon a finding of guilt after a trial is clear; the Court should not question the requesting country's justice system.[5]  In re Extradition of Cheung, 968 F. Supp. 791, 798-99 (D.Conn. 1997).  The United States should not question the manner in which a defendant has been convicted.  Here, there is no conviction, and the standard is that the judge find probable cause based upon the evidence. But the question becomes: what evidence has been presented?  The answer is none whatsoever.

### D. At a minimum, additional documentation should have been requested pursuant to the controlling treaty.

As previously stated, the evidence that can be submitted is controlled by the Extradition Treaty.  Under the Treaty this court has the authority to order additional documentation from the requesting State if it finds that the request does not fulfill its requirements.  Article 10 of the Treaty states:

---

[4] All of the treaties pertaining to the cited cases in the previous section of this memorandum differentiate between convicted defendants and charged defendants. Thus, a standard exists which requires petitions to be supplemented by evidence where the defendant has not been convicted. See Treaty between United States and Canada (U.S.-Can., July 9, 1974, S. Treaty Doc. 93-31 (1975)); Mexico (U.S.-Mex., May 4, 1978, S. Treaty Doc. 96-13 (1979)); Japan (U.S.- Ja., March 3, 1978, S. Treaty Doc. 96-16 (1979)); Italy (U.S.-Itl., Oct. 13, 1983, S. Treaty Doc. 98-20 (1984), France (U.S.-Fr., Apr. 23 1996, S. Treaty Doc. 105-13 (1998) and; Germany (U.S.-G.R., Jun. 20, 1978, S. Treaty Doc. 96-1 (1979)).
[5]

16

**Additional documentation.** (1) If the Requested State considers that the documents furnished in support of the request for the extradition of a person sought are not sufficient to fulfill the requirements of this Treaty, that State shall request the submission of necessary additional documents. The Requested State may set a time limit for the submission of such documents, and may grant a reasonable extension of the time limit upon application of the Requesting State setting forth reasons therefore. (2) If the person sought is in custody and the additional documents submitted are not sufficient, or if such documents are not received within the period specified by the Requested State, that person may be discharged from custody. Such discharge shall not prejudice the re-arrest and the extradition of the person if the additional documents are subsequently received.

This office is humbly requesting that, based upon the issues raised by the respondent's attorneys, this court should require the Requesting State to produce, at a minimum, actual evidence to support their contention and satisfy the probable cause requirements. Indeed, numerous courts have held that where the Requesting State has not produced evidence to sustain a finding of probable cause, the extradition request shall be denied. See Republic of France v. Moghadam, 617 F. Supp. 777 (1985); U.S. v. Barr, 619 F. Supp. 1068 (1985). Here, the petitioner is asking the requesting state to produce some form of tangible evidence, other than the fabricated lies of the Costa Rican authorities. The matter in Costa Rica was mishandled from the beginning, with so many evidentiary issues that if this Court had the power to retain jurisdiction over the case it would unquestionably result in either a dismissal of the charges or an acquittal at trial. This is a bold statement, however, given the limited information which can be submitted in an extradition, those evidentiary issues will never see the light of date in a US court.

In the instant matter it is conceded that, pursuant to Article 9 of the applicable Treaty the request for extradition contains most of the following requirements:

> (a) Information concerning the identify of the person sought and the location where the person may be found...and
> (b) A brief statement of the facts of the case.

17

(3) the request for extradition **shall be accompanied by documents which contain**:
    (a) a detailed explanation of the pertinent facts of the case;
    (b) Evidence that the person sought is the person charged or convicted;
    (c) The text and an explanation of the law describing the offenses and the penalties therefore; and
    (d) the text and an explanation of the law setting forth the statute of limitations applicable to the trial and punishment therefore.
(4) When the request for extradition relates to a person who **has not yet been convicted, it shall be accompanied by**
    (a) A copy of the charging document, or an equivalent document issued by a judge or judicial authority; **and**
    (c)    such evidence, as in accordance with the laws of the Requested State, would be necessary to justify the apprehension and commitment for trial of the person sought if the offense had been committed there.

It is argued here, that under section 4 of the aforementioned Article, the Requesting State has failed, completely, to meet the requirements under sub-section (b). It is under subsection (b) that the Requesting State has failed to produce the necessary evidence that would satisfy the finding of probable cause under US law because she has not yet been convicted. It is so clear, and logical, that Petitioner respectfully requests that Your Honor order the requesting state to produce such evidence if and when this matter is returned to the Magistrate Judge.

### E. Mrs. Bolanos, upon extradition, would be subject to procedures and punishment so antipathetic to a federal court's sense of decency to require reexamination of the rigid extradition guidelines.

The Supreme Court has recognized that aliens who are physically in the United States are entitled, as a matter of due process, to a *fair hearing* before they can be removed. Zadvydas v. Davis, 533 U.S. 678, 693, (2001)(holding that "the Due Process Clause applies to all 'persons' within the U.S."); Kwong Hai Chew v. Colding, 344 U.S. 590, 596-97 (1953); Tineo v. Ashcroft, 350 F.3d 382, 398 (3d Cir. 2003). The Court has repeatedly stressed that persons physically present in the United States do enjoy due process rights. See Wong Wing v. United States, 163 U.S. 228 (1896); Yamataya v. Fisher, 189 U.S. 86 (1903); Landon v. Plasencia, 459 U.S. 21, 32

(1982). Mrs. Bolanos should be afforded due process rights in a form of an evidentiary hearing as she is presently in the United States. [6]

The Costa Rican government's request to extradite Mrs. Bolanos for the murder of Jose Barrase Andres Taylor is a subterfuge orchestrated by the decedent's father, one of the most powerful and influential figures in that country, to punish her at any cost. Mrs. Bolanos' fear of returning to Costa Rica is so real that it should be given due consideration at this juncture. This case presents facts so egregious as to offend the court's sense of decency to reexamine the doctrine of non-inquiry, an exception to the general rule of not inquiring into the procedures which await the relator upon extradition. Gallina v. Frasher, 278 F.2d 77, 78 (2d Cir.), cert denied, 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960), see, Hoxha v. Levi, 465 F.3d 554,564 (3rd Cir. 2006)(acknowledging this exception but declining to apply it to the facts)(citations omitted).

Mrs. Bolanos's extradition to Costa Rica would result in the torture and death of a mother of three at the hands of the decedent's vengeful father. An evidentiary hearing on the issues raised by Mrs. Bolanos, therefore, would be appropriate to prevent a possible bizarre miscarriage of justice, which has been denied thus far. See Arnbjornsdottir-Mendler v. United States, 721 F.2d 679, 683 (9th Cir. 1983)(holding that an evidentiary hearing be conducted when relator's claims are corroborated); Sindona v. Grant, 619 F.2d 167 (2nd Cir. 1980)(same).

The reluctance of some courts to exercise the Gallina exemption stems from the lack of judicial fortitude in applying the moral force of justice that upholds the foundation of our legal system. See In the Matter of Extradition of Singh, 123 F.R.D. 127 (DNJ 1987).   But this

---

[6] Historically, courts have afforded non-citizens within the United States a broad array of constitutional rights. See Plyler v. Doe, 457 U.S. 202, 210 (1982) (a state may not discriminate against children present without admission in the provision of an education); Lynch v. Cannatella, 810 F.2d 1363, 1374 (5th Cir. 1987) (excludable aliens "are entitled under the due process clauses of the Fifth and Fourteenth Amendments to be free of gross physical abuse at the hands of state or federal officials."); United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996) (non-admitted aliens are entitled to Miranda warnings prior to custodial interrogations); United States v. Henry, 604 F.2d 908, 914 (5th Cir. 1979) (same).

unwillingness to dispense with true justice is outdated and conflicts with international human rights law. With the ratification of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (hereinafter "Torture Convention") by the United States, courts routinely condemn the actions of foreign governments for violating human rights and uphold the non-refoulment obligation. CAT, *opened for signature*, Feb. 4, 1985, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85.[7]

Article 3 of the Torture Convention absolutely bars states from returning anyone to another state where there are substantial grounds for believing she would be in danger of torture. Specifically it provides in pertinent part: "No State Party *shall* expel, return ("refouler") or *extradite* a person to another State where there are substantial grounds for believing that he would be in danger of being subject to torture." Id. (Emphasis added.) Given the expressed language of the Torture Convention, this court has the authority to ensure that the Executive branch is complying with the law in her extradition. At a minimum, this requires an evidentiary hearing on the matter.

The case fits within the narrow exception discussed in Gallina because the motive behind the extradition of Mrs. Bolanos is questionable, at best. This ruse perpetrated by the blood-thirsty puppet master, Mr. Sanou, who has most likely lined the pockets of corrupt Coasta Rican officials in an effort to hunt down this woman cloaked in an extradition request by that government, is simply a scheme to avenge his son's death. Evidently the individual responsible for the death of Mr. Sanou's son has confessed and *expressly exonerated* Mrs. Bolanos of any involvement whatsoever. But this has not quenched Mr. Sanou's thirst for punishment. Because Mr. Sanou reigns supreme in Costa Rica, Mrs. Bolanos has little to no chance of escaping his fury unless this court demands real answers. Therefore, extraditing her to Costa Rica without

---

[7] President Ronald Reagan signed the Torture Convention on behalf of the United States on April 18, 1988. On November 20, 1994, one month after President Clinton had deposited the instrument of ratification with the U.N. Secretary-General, the United States became a full party.

further investigation or inquiry into these serious claims would subject her to procedures and punishment so antipathetic to a federal court's sense of decency to require reexamination of the rigid extradition guidelines. Id. at 79.   This is such a case that this Court should exercise the full measure of justice envisioned in Gallina.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Petitioner prays that the Court grant the following relief:

(a) Assume jurisdiction over the matter;

(b) Order Respondents to show cause, within three days of filing the petition, why the writ of habeas corpus should not be granted; and set a hearing on the matter within five days of Respondents' return on the order to show cause, pursuant to 28 U.S.C. § 2243;

(c) Grant the writ of habeas corpus and order Mrs. Bolanos's immediate release from custody under reasonable conditions of supervision;

(d) Award reasonable attorney's fees, costs and other disbursements pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;

(e) Stay of the order of extradition dated January 20, 2009, and;

(f) Grant any other and further relief that the court deems just and proper.

On the brief

Michael Orozco
Bailey & Orozco, LLC
744 Broad St., Suite 1901
Newark, NJ 07102
Attorneys for Petitioner

Haroutyun Asatrian
Strasser Asatrian LLC
744 Broad Street, 16th Floor
Newark, NJ 07102
Attorneys for Petitioner

Dated: 3-12-09