# EXHIBIT C



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*970 Broad Street, Suite 700*                    *(973)645-2700*
*Newark, NJ 07102*

October 17, 2008

**Via Facsimile and Regular Mail**
Honorable Mark Falk
United States Magistrate Judge
Martin Luther King, Jr. Federal Building
  & U.S. Courthouse
50 Walnut Street
Newark, New Jersey  07101

Re:    In the Matter of the Extradition of Magdalena Pacheco Bolanos,
          a/k/a "Maria Magdalena Pacheco Bolanos,"
          a/k/a "Veronica Giron Solares," and
          a/k/a "Maria Pacheco Carvajal"
          (Case No. 08-3641)

Dear Judge Falk:

　　Enclosed is a courtesy copy of the Government's Memorandum in support of extradition which was electronically filed today in the above referenced matter.  The memorandum was served upon counsel for Magdalena Pacheco Bolanos, a/k/a "Maria Magdalena Pacheco Bolanos," a/k/a "Veronica Giron Solares" and a/k/a "Maria Pacheco Carvajal" via ECF and regular mail.

　　Thank you for your consideration.

                                        Respectfully submitted,

                                        CHRISTOPHER J. CHRISTIE
                                        United States Attorney

                                        /s/  Lakshmi Srinivasan Herman

                                        By: Lakshmi Srinivasan Herman
                                        Assistant U.S. Attorney

Enclosure

cc:    Howard W. Bailey, Esq. (by regular mail)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN THE MATTER OF THE EXTRADITION  :    Hon. Mark Falk
   OF
MAGDALENA PACHECO BOLANOS,   :    Mag No. 08-3641
 a/k/a "Maria Magdalena Pacheco Bolanos,"
 a/k/a "Veronica Giron Solares," and  :
 a/k/a "Maria Pacheco Carvajal"

             :

## MEMORANDUM: THE LAW OF EXTRADITION

Magdalena Pacheco Bolanos, a/k/a "Maria Magdalena Pacheco Bolanos," a/k/a "Veronica

Giron Solares" and a/k/a "Maria Pacheco Carvajal" ("Pacheco Bolanos") was arrested on September

17, 2008 at the request of the Government of Costa Rica pursuant to the Extradition Treaty between

the United States and Costa Rica (the "Treaty"), a copy of which is attached as Exhibit 1. In this

matter, the Government acts on behalf of the Costa Rican government.

By statute, this Court must thereafter hold a hearing to consider the evidence of criminality

presented by Costa Rica and to determine whether it is "sufficient to sustain the charge under the

provisions of the proper treaty or convention . . . ." 18 U.S.C. § 3184. If the Court finds Pacheco

Bolanos extraditable, it certifies that conclusion to the Secretary of State, who decides whether to

surrender her. Because the law regulating extradition differs from ordinary criminal or civil

proceedings so much as to be classed *sui generis*, the Government offers this memorandum as a

guide to the nature of the hearing and a description of its distinctive features.

## I. Nature of the Hearing

### A. Purpose of Hearing

The purpose of the hearing required by 18 U.S.C. § 3184 is to determine whether a person

arrested pursuant to a complaint in the United States on behalf of a foreign government is subject to surrender to the requesting country under the terms of the pertinent treaty and relevant law. If the Court decides that the elements necessary for extradition are present, it incorporates these determinations in factual findings and conclusions of law styled as a certification of extraditability which is forwarded to the Department of State for disposition by the Secretary of State. The decision to surrender Pacheco Bolanos rests with the Secretary.

**B.     Elements Necessary for Extradition**

There are several formulations of the requirements for extradition. The Supreme Court in *Ornelas v. Ruiz* held that a determination of extraditability was proper if: (1) the judicial officer was authorized to conduct extradition proceedings; (2) the court had jurisdiction over the fugitive; (3) the applicable treaty was in full force and effect; (4) the crimes for which surrender was requested were covered by the treaties; and (5) there was competent legal evidence for the decision. *Ornelas v. Ruiz*, 161 U.S. 502 (1896); *accord Bingham v. Bradley*, 241 U.S. 511 (1916); *McNamara v. Henkel*, 226 U.S. 520 (1913); *Zanazanian v. United States*, 729 F.2d 624 (9th Cir. 1980). Another formula calls for a determination that: (1) there are criminal charges pending in the requesting state; (2) the charges are included under the treaty as extraditable offenses; and (3) there is probable cause to believe that a crime was committed and that the person before the court committed it. *United States v. Barr*, 619 F. Supp. 1068, 1070 (E.D. Pa. 1985). The Government will briefly discuss these elements, drawing on both *Ornelas* and *Barr*.

1. Authority of the judicial officer

The statute, 18 U.S.C. § 3184, authorizes a broad class of judicial officers to hear extradition cases. Federal judges are clearly authorized by the statute to hear and decide extradition cases; the

statute provides that magistrates may do so if permitted by rule of their court. *See Ward v. Rutherford*, 921 F.2d 286 (D.C. Cir. 1990) (rejecting constitutional challenge to magistrate's authority). The local rules for the District of New Jersey permit magistrate judges to conduct extradition proceedings in accordance with 18 U.S.C. § 3184. Cr. Rule 5.1(k) United States Magistrate Judges.

### 2. Jurisdiction over the fugitive

Although the Supreme Court included personal jurisdiction as an essential element for reasons of analytic completeness, the question of jurisdiction has not been a decisive issue in an extradition case in modern times. If the fugitive is before the court, the court has personal jurisdiction. *See In re Pazienza*, 619 F. Supp. 611 (S.D.N.Y. 1985).

### 3. Treaty in full force and effect

The extradition statute, 18 U.S.C. § 3184, appears to limit extradition to instances in which a treaty is in force between the requesting state and the requested state, and several cases have so held. *See, e.g., Argento v. Horn*, 241 F.2d 258 (6th Cir. 1957). As part of its proof, the Government will provide a declaration from an attorney in the Office of the Legal Adviser of the Department of State attesting that the treaty is in full force and effect. The Department of State's opinion in this sphere is entitled to deference from the court. *Galanis v. Pallanck*, 568 F.2d 234 (2d Cir. 1977); *Sayne v. Shipley*, 418 F.2d 679 (5th Cir. 1969), *cert. denied*, 398 U.S. 903 (1970).

### 4. Charges or conviction in the requesting state

The treaty provides for the return of fugitives charged with or convicted of a crime in the requesting state. *See* Article 2 of the Extradition Treaty between the Government of the United States of America and the Government of the Republic of Costa Rica. The documents submitted by

Costa Rica, which were previously submitted to the Court, will establish that Pacheco Bolanos has been charged. Because criminal procedures under other systems differ from ours, the charging document will not necessarily be an indictment or a criminal information. In many countries, the charges are reflected in the arrest warrant. The Court should not be drawn into a technical dispute over the significance of the term "charging document." *Matter of Assarsson*, 687 F.2d 1157 (7th Cir. 1982).

     5. <u>Crime covered by the treaty</u>

Extradition treaties create an obligation to surrender fugitives under the circumstances defined in the treaty. The treaty may specify that extradition can be had for particular offenses that are listed in the treaty, for any serious offense that is punishable in both the requesting and requested state, for some combination of those two categories, or for an even broader range of offenses. The Court must determine whether the crime for which extradition is requested is among the offenses specified in the treaty as giving rise to an obligation to extradite.

Dual criminality is not required *per se* for extradition; it need be found only if the treaty so requires. *Factor v. Laubenheimer*, 290 U.S. 276 (1933); *In re Assarsson*, 635 F.2d 1237 (7th Cir. 1980). Dual criminality is found in this case because the Treaty states that "[a]n offense shall be an extraditable offense if it may be punished under the laws of both Contracting Parties by deprivation of liberty for a maximum period of more than one year or by any greater punishment." Article 2(1) of the Extradition Treaty between the Government of the United States of America and the Government of the Republic of Costa Rica. A requesting country is not obliged to produce evidence on all elements of a criminal offense nor to establish that its crimes are identical to ours. *Kelly v. Griffin*, 241 U.S. 6, 15 (1916). If a dual criminality analysis is required, the Court should examine

-4-

the facts and decide whether Pacheco Bolanos' conduct would have been criminal under our law. The Supreme Court noted in *Collins v. Loisel* that:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the *particular act* charged is criminal in both jurisdictions.

259 U.S. 309, 312 (emphasis added); *Accord Messina v. United States*, 728 F.2d 77 (2d Cir. 1984); *Cucuzzella v. Keliikoa*, 638 F.2d 105, 108 (9th Cir. 1981); *United States v. Stockinger*, 269 F.2d 681, 687 (2d Cir. 1959); *Di Stefano v. Moore*, 46 F.2d 308 (E.D.N.Y. 1930), *aff'd*, 46 F.2d 310 (2d Cir. 1930), *cert. denied*, 283 U.S. 830 (1931). The Court's analysis of the question of dual criminality is subject to the general requirement that it "approach challenges to extradition with a view towards finding the offenses within the treaty." *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981).

In comparing the foreign offense with United States law to decide the question of dual criminality, the magistrate may consider federal law, the law of the state in which the hearing is held, and the law of a preponderance of the states. *Cucuzzella v. Keliikoa*, 638 F.2d 105.

6. Competent legal evidence

This is the familiar requirement of probable cause to believe that a crime was committed and that the person before the court committed it. The standard of proof in extradition proceedings is that of probable cause as defined in federal law. *Sindona v. Grant*, 619 F.2d 167 (2d Cir. 1980). This means evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused. *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973). The Supreme Court stated in *Collins v. Loisel* that "[t]he function of the

committing magistrate is to determine whether there is competent evidence to justify holding the

accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."

259 U.S. at 316. The Fourth Circuit explained the court's function in an extradition proceeding in

the following terms:

> The extradition hearing is not designed as a full trial.
> The purpose is to inquire into the presence of probable
> cause to believe that there has been a violation of one
> or more of the criminal laws of the extraditing country,
> that the alleged conduct, if committed in the United
> States, would have been a violation of our criminal law,
> and that the extradited individual is the one sought by
> the foreign nation for trial on the charge of violation
> of its criminal laws.

*Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976). *See also Fernandez v. Phillips*, 268 U.S. 311,

312 (1925); *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 730-31 (9th Cir. 1975)

(magistrate's function is to determine whether there is "'any' evidence sufficient to establish

reasonable or probable cause") (quoting *Fernandez*, 268 U.S. at 312); *Merino v. United States*

*Marshal*, 326 F.2d 5, 11 (9th Cir. 1963), *cert. denied*, 397 U.S. 872 (1964); *Jimenez v. Aristeguieta*,

311 F.2d 547, 562 (5th Cir. 1962); *In re Ryan*, 360 F. Supp. 270, 273 (E.D.N.Y. 1973), *aff'd*, 478

F.2d 1397 (2d Cir. 1973).

### C.    Role of the Judicial Officer

The Court considers the evidence presented on behalf of the requesting state and determines

whether the elements defined in the treaty and the case law cited above have been established. If any

explanatory evidence or evidence in support of an affirmative defense specified in the treaty is

offered, the Court rules on it. The Court makes written findings of fact and conclusions of law as

to each of the elements, including separate findings for each offense as to which extradition is

sought. *Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973). If the fugitive is determined to be

extraditable, he or she is committed to the custody of the United States Marshal to await the

determination by the Secretary of State and transfer to the representatives of the requesting state.

The court's Certification of Extraditability is provided to the Secretary of State together with a copy

of any evidence presented on behalf of the fugitive. 18 U.S.C. § 3184.

## II. Distinctive Features of the Law of Extradition

### A. Extradition Hearing Not a Criminal Proceeding

An extradition hearing is not a criminal proceeding; its purpose is merely to decide probable

cause, not guilt or innocence. *Neely v. Henkel*, 180 U.S. 109 (1901); *Benson v. McMahon*, 127 U.S.

457, 463 (1888); *Simmons v. Braun*, 627 F.2d 635 (2d Cir. 1980); *United States ex rel. Oppenheim*

*v. Hecht*, 16 F.2d 955 (2d Cir. 1927). Thus, the person whose extradition is sought is not entitled

to the rights available in a criminal trial at common law. *Charlton v. Kelly*, 229 U.S. 447, 461

(1931); *Glucksman v. Henkel*, 221 U.S. 508, 512 (1911); *Stockinger*, 269 F.2d at 687. For example,

the fugitive has no right to discovery or even to cross-examination if any witnesses testify at the

hearing (*Messina*, 728 F.2d 77); his or her right to present evidence is severely limited (*Id.*; *see infra*

Sections II.D, II.E); and the Sixth Amendment's guarantee to a speedy trial, being limited by its

terms to criminal prosecutions, does not pertain to extradition proceedings (*Jhirad v. Ferrandina*,

536 F.2d 478, 485 n.9 (2d Cir. 1976)).

### B. Inapplicability of Federal Rules of Criminal Procedure and Evidence

The Federal Rules of Criminal Procedure do not apply to extradition proceedings. Fed. R.

Crim. P. Rule 1(a)(5)(A) states that "[p]roceedings not governed by these rules include the

extradition and rendition of a fugitive." The Federal Rules of Evidence are also inapplicable. Fed.

R. Evid. Rule 1101(d)(3) provides that "[t]he rules (other than with respect to privileges) do not apply

. . . [to p]roceedings for extradition or rendition." *See Melia v. United States*, 667 F.2d 300 (2d Cir.

1981); *Greci v. Birknes*, 527 F.2d 956 (1st Cir. 1976); *Merino*, 326 F.2d at 12.

### C. Admissibility of Evidence

"Unique rules of 'wide latitude' govern reception of evidence in Section 3184 hearings."

*Sayne v. Shipley*, 418 F.2d at 685 (citation omitted).  Among these unique rules are the following:

#### 1. Admissibility of hearsay

Hearsay evidence is admissible at extradition hearings and may support a finding of

extraditability. *Collins v. Loisel*, 259 U.S. at 317; *O'Brien v. Rozman*, 554 F.2d 780, 783 (6th Cir.

1977); *In re David*, 395 F. Supp. 803, 806 (E.D. Ill. 1975); *United States ex rel. Eatessami v.*

*Marasco*, 275 F. Supp. 492, 494 (S.D.N.Y. 1967).  Extradition treaties do not contemplate the

introduction of testimony of live witnesses at extradition proceedings because to do so "would defeat

the whole object of the treaty." *Bingham v. Bradley*, 241 U.S. at 517.  Thus, a finding of

extraditability may be and typically is based entirely on documentary evidence. *Shapiro v.*

*Ferrandina*, 478 F.2d at 902-03; *O'Brien v. Rozman*, 554 F.2d at 783; *In re Edmonson*, 352 F. Supp.

22, 24 (D. Minn. 1972).

#### 2. Certification of documents

In *Cucuzzella v. Keliikoa*, 638 F.2d 105 (9th Cir. 1981), the Court held that 18 U.S.C. § 3190

governs the admissibility of statements submitted by the requesting state and is satisfied by a

certification that accords with the terms of the statute. *See also Collins v. Loisel*, 259 U.S. 309.

Alternatively, documents may be received in evidence if they are certified in accordance with the

terms of the treaty. *Emami v. United States District Court*, 834 F.2d 1444 (9th Cir. 1987).

### D. Limitations on Fugitive's Evidence

Pacheco Bolanos' right to controvert the evidence introduced against her is limited to

testimony which explains rather than contradicts the demanding country's proof. *Hooker v. Klein,*

573 F.2d 1360, 1368 (9th Cir. 1978), *cert. denied,* 439 U.S. 932 (1978). The district court in *Matter*

*of Sindona,* 450 F. Supp. 672, 685 (S.D.N.Y. 1978), *aff'd,* 619 F.2d 167 (2d Cir. 1980), discussed

the distinction between contradictory and explanatory evidence and cited the established authority

for the proposition that an extradition hearing should not be transformed into a full trial on the

merits:

> The distinction between "contradictory evidence"
> and "explanatory evidence" is difficult to articulate.
> However, the purpose behind the rule is reasonably
> clear. In admitting "explanatory evidence," the
> intention is to afford an accused person the opportunity
> to present reasonably clear-cut proof which would be
> of limited scope and having some reasonable chance
> of negating a showing of probable cause. The scope
> of this evidence is restricted to what is appropriate to
> an extradition hearing. The decisions are emphatic
> that the extraditee cannot be allowed to turn the
> extradition hearing into a full trial on the merits.
> The Supreme Court has twice cited with approval
> a district court case which aptly summarizes the
> relevant considerations. The Supreme Court decisions
> are *Collins v. Loisel,* 259 U.S. 309, 316, 42 S.Ct. 469,
> 66 L.Ed. 956 (1922), and *Charlton v. Kelly,*
> 229 U.S. 447, 461, 33 S.Ct. 945, 57 L.Ed. 1274 (1913).
> The district court opinion is *In re Wadge,* 15 F. 864, 866
> (S.D.N.Y 1883) in which the court dealt with the argument
> of an extraditee that he should be given an extensive
> hearing in the extradition proceedings: "If this were
> recognized as the legal right of the accused in extradition
> proceedings, it would give him the option of insisting
> upon a full hearing and trial of his case here; and that might
> compel the demanding government to produce all its evidence
> here, both direct and rebutting, in order to meet the defense

> thus gathered from every quarter. The result would be that
> the foreign government though entitled by the terms of the
> treaty to the extradition of the accused for the purpose
> of a trial where the crime was committed, would be
> compelled to go into a full trial on the merits in a foreign
> country, under all the disadvantages of such a situation,
> and could not obtain extradition until after it had procured
> a conviction of the accused upon a full and substantial trial
> here. This would be in plain contravention of the
> intent and meaning of the extradition treaties."

450 F. Supp. 672 at 685.  The extent to which Pacheco Bolanos may offer explanatory proof is

largely within the discretion of the committing judicial officer.  *Hooker v. Klein*, 573 F.2d at 1369;

*United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir. 1963), *cert. denied*, 376

U.S. 952 (1964) (and cases cited therein).  However, some matters are clearly contradictory and thus

impermissible.  *See infra* Section II.E.

### E. Impermissible Defenses

Defenses against extradition which "savor of technicality" should be rejected by a court as

they are peculiarly inappropriate in dealings with a foreign nation.  *Bingham v. Bradley*, 241 U.S.

at 517.  For example, a variance between the charges pending in the foreign state and the complaint

filed on behalf of that state in our federal courts is not a defense to surrender.  *Glucksman v. Henkel*,

221 U.S. at 513-14; *Accord Bingham v. Bradley*, 241 U.S. at 517; *United States ex rel. Bloomfield*

*v. Gengler*, 507 F.2d 925, 927-1024 (2d Cir. 1974); *Shapiro v. Ferrandina*, 478 F.2d at 904; *In re*

*Edmonson*, 352 F. Supp. at 24.

### 1. Conflicting evidence

Pacheco Bolanos' grounds for opposition to the extradition request are severely

circumscribed.  *Hooker v. Klein*, 573 F.2d at 1368; *First Nat'l City Bank of New York v.*

-10-

*Aristeguieta*, 387 F.2d 219, 222 (2d Cir. 1960); *In re Shapiro*, 352 F. Supp. 641, 645 (S.D.N.Y.

1973). She may not introduce evidence that conflicts with the evidence submitted on behalf of the

demanding state (*Collins v. Loisel*, 259 U.S. at 315-17); establishes an alibi (*Abu Eain v. Adams*, 529

F. Supp 685 (N.D. Ill. 1980)); sets up an insanity defense (*Hooker v. Klein*, 573 F.2d 1360); or

impeaches the credibility of the demanding country's witnesses (*In re Locatelli*, 468 F. Supp. 568

(S.D.N.Y. 1979)). She is limited to introducing explanatory evidence. *See supra* Section II.D.

  2. Trial in demanding country on other charges

  A fugitive's contention that he or she will be tried in the extraditing country for crimes other

than those for which extradition will be granted, or that surrender is being requested for political

offenses, must be rejected as baseless, without merit, or beyond the responsibility of the court, for

the United States Government does not presume that the demanding government will seek a trial in

violation of a treaty. *Bingham v. Bradley*, 241 U.S. at 514-15. As the district court noted in *Gallina*

*v. Fraser*, 177 F. Supp. 856, 867 (D. Conn. 1959), *aff'd*, 278 F.2d 77 (1960): "the Secretary of State

of the United States would not authorize the surrender of a fugitive . . . to be punished for non-

extraditable crimes, and . . . any extradition would be so conditioned as to negate this possibility."

  3. Motivation of demanding country: rule of non-inquiry

  Should a fugitive suggest that a court look behind the extradition request to the motives of

the government of the demanding country, the answer may be found in *In re Lincoln*, 228 F. 70, 74,

(E.D.N.Y. 1915), *aff'd*, 241 U.S. 651 (1916): "It is not a part of the court proceedings nor of the

hearing upon the charge of the crime to exercise discretion as to whether the criminal charge is a

cloak for political action, nor whether the request is made in good faith. Such matters should be left

to the Department of State. . . ." In *In re Gonzalez*, the court further noted that 18 U.S.C. § 3184

-11-

gives it no authority to inquire into such matters. *See In re Gonzalez*, 217 F. Supp. 717, 722, n.15

(S.D.N.Y. 1963); *Accord In re Extradition of Singh*, 123 F.R.D. 127, 129-37 (D.N.J. 1987) (citing

cases on doctrine of non-inquiry). In *Ramos v. Diaz*, 179 F. Supp. 459, 463 (S.D. Fla. 1959), the

court clearly stated that the motive of the demanding government in an extradition proceeding is not

controlling; the circumstances surrounding the offense when it occurred are dispositive. *See also*

*Matter of Locatelli*, 468 F. Supp. 568, 575 (S.D.N.Y. 1979).

### 4. Lack of U.S. constitutional protections abroad

Questions concerning the judicial procedure in the requesting state and the treatment that

might be accorded Pacheco Bolanos after extradition are not proper matters for consideration by the

certifying judicial officer, according to what the Second Circuit refers to as "substantial authority."

*Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir. 1990) (citing *Sindona v. Grant*, 619 F.2d at 174);

*Arnbjornsdottir-Mendler v. United States*, 721 F.2d 679, 683 (9th Cir. 1983); *Jhirad v. Ferrandina*,

536 F.2d 478; *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971), *cert. denied*,

405 U.S. 989 (1972); *Matter of Extradition of Tang Yee-Chun*, 674 F. Supp. 1058, 1068-69

(S.D.N.Y. 1987). Considering the same issue in a slightly different context, the Court of Appeals for

the District of Columbia Circuit said:

> What we learn from *Neely* [*Neely v. Henkel*, 180 U.S. 109]
> is that a surrender of an American citizen required by treaty
> for purposes of a foreign criminal proceeding is unimpaired
> by an absence in the foreign judicial system of safeguards in
> all respects equivalent to those constitutionally enjoined
> upon American trials.

*Holmes v. Laird*, 459 F.2d 1211, 1219 (D.C. Cir. 1972), *cert. denied*, 409 U.S. 869 (1972); *Accord*

*Pfeifer v. United States Bureau of Prisons*, 468 F. Supp. 920 (S.D. Cal. 1979), *aff'd*, 615 F.2d 873

(9th Cir. 1980). The *Gallina* court disposed of the issue in the following words:

> Regardless of what constitutional protections are given to
> persons held for trial in the courts of the United States or
> of the constituent states thereof, those protections cannot be
> claimed by an accused whose trial and conviction have been
> held or are to be held under the laws of another nation,
> acting according to its traditional processes and within the
> scope of its authority and jurisdiction.

*Gallina v. Fraser*, 177 F. Supp. at 866.

### F. Extradition Treaties to Be Liberally Interpreted

Extradition treaties must be liberally construed to effect their purpose, namely, the surrender of fugitives for trial for their alleged offenses. *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14 (1936); *Factor v. Laubenheimer*, 290 U.S. at 293, 301; *McElvy v. Civiletti*, 523 F. Supp. at 47. In discussing the application of this rule, the United States Supreme Court in *Factor v. Laubenheimer* wrote that:

> [A] narrow and restricted construction is to be avoided as not consonant
> with the principles deemed controlling in the interpretation of
> international agreements. Considerations which should govern the
> diplomatic relations between nations, and the good faith of treaties,
> as well, require that their obligations should be liberally construed so
> as to effect the apparent intentions of the parties to secure equality
> and reciprocity between them.

290 U.S. at 293.

In order to carry out a treaty obligation the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure." *Id.* at 298; *accord In re Chan Kam-Shu*, 477 F.2d 333, 338 (5th Cir. 1973), *cert. denied*, 414 U.S. 847 (1973).

This country does not expect foreign governments to be versed in our criminal laws and procedures. *Grin v. Shine*, 187 U.S. 181, 184 (1902). Thus, "[f]orm is not to be insisted upon

-13-

beyond the requirements of safety and justice." *Fernandez v. Phillips*, 268 U.S. at 312. This approach is mandated by the liberal rules of construction that are to be used in interpreting extradition agreements.

Statements by the United States Department of State as to interpretation of treaties are to be given great weight by our courts. *Sayne v. Shipley*, 418 F.2d at 684; *In re Ryan*, 360 F. Supp. at 272 n.4; *In re Extradition of D'Amico*, 177 F. Supp. 648, 653 n.7 (S.D.N.Y. 1959), *appeal dismissed*, 286 F.2d 320 (2d Cir. 1961), *cert. denied*, 366 U.S. 963 (1961).

### G. Fugitive for Extradition Purposes

The nature of the Pacheco Bolanos' absence from the country seeking her surrender is immaterial; it is sufficient for purposes of extradition that she be found in the United States. *Vardy v. United States*, 529 F.2d 404, 407 (5th Cir. 1976), *reh. denied*, 533 F.2d 310 (5th Cir. 1976); *In re Chan Kam-Shu*, 477 F.2d at 338-39; *United States ex rel. Eatessami v. Marasco*, 275 F. Supp. at 496.

### H. Statute of Limitations

Article 7 of the Extradition Treaty with Costa Rica, provides that:

> Extradition shall not be granted when the prosecution or
> the enforcement of the penalty for the offense for which
> extradition has been sought has become barred by lapse
> of time pursuant to the laws of the Requesting State.

The State making the requisition is Costa Rica. Article 31 of the Costa Rican Penal Code prohibits criminal actions after three to ten years, depending on the penalty by which the crime may be punished. For the crime of aggravated homicide, the statute of limitations is ten years. The issuance of an international order of arrest for Pacheco Bolanos tolled the limitations period, in

accordance with subparagraph (d) of Article 34 of the Penal Code. The crime was committed on or about November 18, 1997. A international warrant for Pacheco Bolanos' arrest was issued on May 29, 2000; therefore, the limitations period was tolled in accordance with Article 34(d).

## CONCLUSION

Extradition hearings are often characterized as *sui generis. See, e.g., Hooker v. Klein*, 573 F.2d at 1369. Despite the unusual nature of the proceedings, there is no mystery to the law of extradition: it is regulated by a body of well-settled precedent, much of it originating with the Supreme Court. *Ahmad v. Wigen*, 910 F.2d at 1065. Although other elements must also be present, the paramount issue of every extradition proceeding is whether there exists probable cause to believe that the fugitive has committed the crimes charged in the requesting country. The latter determination is the kind that courts make in a preliminary hearing under Rule 5.1, Fed. R. Crim. P. *Ward v. Rutherford*, 921 F.2d at 287. The extradition hearing must not be converted into a trial on the merits, and the rules ordinarily applicable in such trials are not used. Pacheco Bolanos' opportunities to oppose the request are limited because her defenses will be aired in the requesting country. The Court's findings of fact and conclusions of law should deal with each of the elements listed above, and with each offense for which extradition is requested.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
United States Attorney

/s/ Lakshmi Srinivasan Herman

By: Lakshmi Srinivasan Herman
Assistant U.S. Attorney

-15-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 17th

day of October, 2008, to:

      Howard Woodley Bailey, Esq.
      Bailey & Orozco, LLC
      744 Broad Street, Suite 1901
      Newark, New Jersey 07102-3806

DISTRICT OF COLUMBIA, ss:


## DECLARATION OF HEATHER K. MCSHAIN


I, Heather K. McShain, declare and say as follows:


1.   I am an Attorney Adviser in the Office of the Legal
Adviser for the Department of State, Washington, D.C.   This
office has responsibility for extradition requests within the
Department of State, and I am familiar with the extradition case
of Magdalena Pacheco Bolanos.   I make the following statements
based upon my personal knowledge and upon information made
available to me in the performance of my official duties.

2.   In accordance with the provisions of the extradition
treaty in full force and effect between the United States and
Costa Rica, the Embassy of Costa Rica has submitted a diplomatic
note no. ECRW-20-08, dated June 16, 2008, formally requesting
the extradition of Magdalena Pacheco Bolanos.   A copy of the
diplomatic note is attached to this declaration.

3.   The relevant and applicable treaty provisions in full
force and effect between the United States and Costa Rica are
found in the Extradition Treaty between the United States of
America and Costa Rica of December 4, 1982, together with a
related exchange of notes signed on December 16, 1982.   A copy
of the Treaty, together with the related exchange of notes, is
attached to this declaration.

4.   In accordance with Article 20 of the 1982 Extradition
Treaty, together with the related exchange of notes, between the
United States and Costa Rica, the Government of the United
States provides legal representation in United States courts for

Case 2:09-cv-01208-JLL   Document 1-5   Filed 03/17/09   Page 20 of 37
Case 2:08-mj-03641-MF   Document 10-2   Filed 10/17/2008   Page 2 of 19
08033265-1

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

...ify That Heather K. McShain, whose name is subscribed to the document hereunto annexed, ...s... time of subscribing the same Attorney Advisor, Office of the Legal Adviser, Department of ...t... ...ted States of America, and that full faith and credit are due to her acts as such.

In testimony whereof, I, Condoleezza Rice, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this twelfth day of August, 2008.

_____
Secretary of State

By_____

Assistant Authentication Officer,
Department of State

Issu... ...uant to ... State of
Sept... ...789, 1 S... ...-69; 22
USC... ...22USC ... ...5 USC
301; ...C 1733 e... ...8 USC
1443... ...LE 44 Fe... ...ules of
Civil ... ...ure.

*T... ...rtificate is not valid if it is removed or altered in any way whatsoever*

2

Costa Rica in its extradition requests, and Costa Rica provides legal representation in its courts for extradition requests made by the United States.

5. The offense for which Magdalena Pacheco Bolanos's extradition is sought is covered by Article 2 of the 1982 Extradition Treaty, together with the related exchange of notes.

6. The documents submitted by the Embassy of Costa Rica in support of its extradition request were certified on May 13, 2008, by David R. Dreher, Consul General at the United States Embassy, in accordance with 18 U.S.C. § 3190. Mr. Dreher at the time of his certification was the principal consular officer of the United States in Costa Rica.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on August 12, 2008.


Heather McShain

Attachments:

1. Copy of note
2. Copy of treaty



**EMBASSY OF COSTA RICA**
*2114 S Street, N.W.*
*Washington, D.C. 20008*

ECRW-20-08

The Embassy of Costa Rica in Washington, D.C. presents its compliments to the Department of State of the United States of America and has the honor to submit to its consideration, the request by the Government of Costa Rica for the extradition of **MAGDALENA PACHECO BOLAÑOS** who has been indicted by the Court of Justice of Cartago, case No. 97-2000572-349-PE.

The official documents attached hereby are duly certified by Mr. David R. Dreher, Consul General of the United States of America at the Embassy of United States in San José, Costa Rica, on May 13, 2008.

The Embassy of Costa Rica avails itself of this opportunity to renew to the Department of State of the United States of America, the assurances of its highest consideration and esteem.

<u>Washington, D.C., June 16, 2008</u>



To The Honorable
Department of State
United Sates of America

| 98TH CONGRESS 2d Session | SENATE | TREATY DOC. 98-17 |
|---|---|---|

# EXTRADITION TREATY WITH COSTA RICA

## M E S S A G E

### FROM

# THE PRESIDENT OF THE UNITED STATES

### TRANSMITTING

THE EXTRADITION TREATY BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE REPUBLIC OF COSTA RICA, SIGNED AT SAN JOSE ON DECEMBER 4, 1982, TOGETHER WITH A RELATED EXCHANGE OF NOTES SIGNED ON DECEMBER 16, 1982

## Entered into Force on October 11, 1991



### English Text Only

APRIL 24, 1984.—Treaty was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE

31-118 O          WASHINGTON : 1984

## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *April 17, 1984.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Treaty on Extradition between the United States of America and Costa Rica, signed at San Jose on December 4, 1982, together with a related exchange of notes signed on December 16, 1982.

I transmit also, for the information of the Senate, the Report of the Department of State with respect to the Treaty.

The Treaty will facilitate United States efforts to prosecute narcotics conspiracies by expressly providing that conspiracies and attempts to commit extraditable offenses constitute extraditable offenses. The Treaty also provides a legal basis for temporarily surrendering prisoners to stand trial for crimes which occurred in the requesting State.

The Treaty follows generally the form and content of extradition treaties recently concluded by this Government. Upon entry into force, it will terminate and supersede the existing extradition treaty between the United States and Costa Rica.

This Treaty will make a significant contribution to the international cooperation in law enforcement. I recommend that the Senate give early and favorable consideration to the Treaty and give its advice and consent to ratification.

RONALD REAGAN.

(III)

## LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, April 11, 1984.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Treaty on Extradition between the United States of America and Costa Rica, signed at San Jose on December 4, 1982, together with a related exchange of notes signed on December 16, 1982. I recommend that this Treaty and the related exchange of notes be transmitted to the Senate for advice and consent to ratification.

The Treaty follows generally the form and content of extradition treaties recently concluded by this Government.

Article 1 obligates each State to extradite to the other, in accordance with the provisions of the Treaty, any persons who are charged with, or have been convicted of, an extraditable offense. (Extradition shall shall also be granted, Article 2 explains, for attempts and conspiracies to commit extraditable offenses, as well as for participation in such offenses.)

Article 2 permits extradition for any offense punishable under the laws of both States by imprisonment for more than one year. Instead of listing each offense for which extradition may be granted, as in United States practice until recently, this Treaty adopts the modern practice of permitting extradition for any crime punishable under the laws of both contracting Parties for a minimum period. This obviates the need to renegotiate or supplement the Treaty should both States pass laws covering new types of criminal activity, such as computer-related crimes.

Article 2 also follows the practice of recent United States extradition treaties in indicating that the dual criminality standard should be interpreted liberally in order to effectuate the intent of the Parties that fugitives be brought to justice. The interpretive diplomatic notes which accompany the Treaty expressly confirm this interpretation. The interpretive notes also state that fiscal offenses are extraditable offenses. Article 2 further provides that, if extradition is granted for an extraditable offense, it may also be granted for offenses which are punishable by less than a year's imprisonment.

Article 3 provides that extradition shall be granted for an extraditable offense regardless of where it was committed.

Articles 4, 6 and 7 state mandatory grounds for refusal of extradition. Article 4 provides that extradition shall be denied when the offense for which extradition is requested is a political or military offense. Article 6 states that extradition shall be denied when the per-

(V)

— 1

VI

son sought has been in jeopardy in the requested State for the same offense. Article 7 provides that extradition shall be denied when the statute of limitations of the requesting State bars the prosecution or the enforcement of the penalty.

Article 5 provides that extradition may be refused when the offense is punishable by death in the requesting, but not the requested, State, unless satisfactory assurances are received that the death penalty, if imposed, will not be carried out.

Article 8 states the obligation of the requested State concerning extradition of its nationals. It provides, in brief, that if extradition is denied on the basis of nationality, the requested State shall, upon request, submit the case to its competent authorities for prosecution.

Articles 9-13 specify the procedures by which extradition is to be accomplished. The procedures provided therein are similar to those found in other modern extradition treaties.

Article 14 provides that if the person sought is being prosecuted or is serving a sentence in the requested State for a different offense, that State may either (a) defer surrender until the proceedings are concluded or the sentence has been served, or (b) temporarily surrender the person solely for the purpose of prosecution. Temporary surrender is an innovative feature found in recent United States extradition treaties (Italy, The Netherlands and Sweden).

Article 15 sets forth a non-exclusive list of factors to be considered by the requested Party in determining to which State to surrender a person sought by more than one State.

Article 16 expressly incorporates into the Treaty the rule of specialty. This article provides, subject to specified exceptions, that a person extradited under the Treaty may not be detained, tried or punished for an offense other than that for which extradition has been granted.

Article 17 permits surrender without formal proceedings where the person sought agrees in writing to surrender after having been advised by a competent judicial authority of his or her right to a formal proceeding and that the surrender shall not be subject to the rule of specialty.

Article 18 provides for the seizure and surrender to the requesting State of all property related to the offense for which extradition is requested. This obligation is subject to the rights of third parties.

Article 19 governs transit through the territory of one of the contracting Parties of a person being surrendered to the other Party by a third country.

Article 20 provides that the requested State shall represent the requesting State in any proceedings in the requested State arising out of a request for extradition.

Article 21 governs expenses in a manner similar to other recent United States extradition treaties.

Article 22, like the parallel provision of almost all recent United States extradition treaties, stipulates that the Treaty is retroactive, in the sense that it applies to offenses commited before as well as after its entry into force.

VII.

Article 23 provides that the Treaty will enter into force immediately upon the exchange of the instruments of ratification. Upon entry into force, this Treaty will terminate the Treaty on Extradition between the United States and Costa Rica signed on November 10, 1922.

Article 24 provides for denunciation of the Treaty by either Party upon six months written notice to the other.

The Department of Justice joins the Department of State in favoring approval of this Treaty by the Senate at an early date.

Respectfully submitted,

GEORGE P. SHULTZ.

EXTRADITION TREATY BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE REPUBLIC OF COSTA RICA

The Government of the United States of America and the Government of the Republic of Costa Rica,

Desiring to provide for more effective cooperation between the two States in the repression of crime; and

Desiring to conclude a new Treaty for the reciprocal extradition of fugitives from justice,

Have agreed as follows:

ARTICLE 1

### Obligation to Extradite

The Contracting Parties agree to extradite to each other, subject to the provisions in this Treaty, persons found in the territory of one of the Contracting Parties who have been charged with, are being tried for, or have been found guilty of an extraditable offense in the Requesting State.

ARTICLE 2

### Extraditable Offenses

(1) An offense shall be an extraditable offense if it may be punished under the laws of both Contracting Parties by deprivation of liberty for a maximum period of more than one year or by any greater punishment.

(2) An offense shall also be extraditable if it consists of an attempt to commit or participation in the commission of any offense described in paragraph (1) of this Article. Extradition shall also be granted for illicit association, as provided by the laws of Costa Rica, to commit any offense described in paragraph (1) of this Article, and for conspiring as provided by the laws of the United States of America, to commit any such offense.

(3) For the purpose of this Article, an offense shall be an extraditable offense:

(a) Whether or not the laws of the Contracting Parties place the offense within the same category of offenses or denominate the offense by the same terminology; or

(b) Whether or not the offense is one for which United States federal law requires, for the purpose of establishing jurisdiction in a United States federal court, proof of interstate transportation, or use of, or effect on, the mails or other facilities affecting interstate or foreign commerce.

(4) When extradition has been granted for an extraditable offense, it may also be granted for any other offense specified in the request

(1)

2

for extradition, even if the other offense may be punished by less than
one year's deprivation of liberty in either State, provided that all other
requirements for extradition are met. The Requesting State shall sub-
mit the documentation required by Article 9 for each offense for which
extradition is requested pursuant to this paragraph.

### ARTICLE 3

#### Jurisdiction

Extradition shall be granted for an extraditable offense regardless
of where the act or acts constituting the offense were committed.

### ARTICLE 4

#### Political and Military Offenses

(1) Extradition shall not be granted when the offense for which
extradition is requested is a political offense or if the Requested State
determines that extradition has been requested for the principal pur-
pose of prosecuting or punishing a person for an offense of a political
character. Costa Rica shall not grant extradition for an offense con-
nected with a political offense as long as its Constitution prohibits
extradition for such an offense.

(2) For the purposes of this Treaty, the following offenses shall
not be considered to be included in paragraph (1) of this Article:

(a) The murder or other willful crime against the life or physi-
cal integrity of a Head of State or Head of Government or of his
family, including attempts to commit such an offense.

(b) An offense with respect to which the Contracting Parties
have the obligation to prosecute or to grant extradition by rea-
son of a multilateral international agreement.

(3) Extradition shall not be granted when the offense for which
extradition is requested is an offense of a purely military nature.

### ARTICLE 5

#### Capital Punishment

When the offense for which extradition is requested is punishable
by death under the laws of the Requesting State and the laws of the
Requested State do not permit such punishment for that offense,
extradition may be refused, unless, before extradition is granted, the
Requesting State furnishes such assurances as the Requested State
considers sufficient, that the death penalty shall not be imposed, or,
if imposed, shall not be executed.

### ARTICLE 6

#### Prior Jeopardy for the Same Offense

(1) Extradition shall not be granted when the person sought is
being tried; has been convicted, acquitted, or pardoned; or has served

3

the sentence imposed by the Requested State for the same offense aris-
ing out of the same acts for which extradition is requested.

(2) Extradition may be granted, however, even if the competent
authorities of the Requested State have decided to refrain from prose-
cuting the person sought for the acts for which extradition is requested,
or to discontinue any criminal proceedings which have been initiated
against the person sought.

### ARTICLE 7

### Statute of Limitations

Extradition shall not be granted when the prosecution or the en-
forcement of the penalty for the offense for which extradition has been
sought has become barred by lapse of time pusuant to the laws of the
Requesting State.

### ARTICLE 8

### Extradition of Nationals

(1) Neither of the Contracting Parties shall be bound to surrender
its nationals. The Requested State, however, shall have the power to
grant the extradition of its nationals if, in its discretion, this is deemed
proper to do and provided the constitution of the Requested State does
not so preclude. In no event may either Contracting Party refuse to
extradite one of its nationals on the basis of nationality after the per-
son's nationality has been cancelled in accordance with the law of the
Requested State.

(2) The Requested State shall undertake all available legal meas-
ures to suspend proceedings for the naturalization of the person sought
until a decision is made on the request for extradition and, if that re-
quest is granted, until that person is surrendered.

(3) If the Requested State refuses extradition on the basis of na-
tionality, it shall, at the request of the Requesting State, submit the
case to its competent authorities for prosecution. If the Requested
State requires additional documents or evidence, such documents or
evidence shall be submitted without charge to that State. The Re-
questing State shall be informed of the result of its request.

### ARTICLE 9

### Extradition Procedures and Required Documents

(1) The request for extradition shall be made by a diplomatic agent
of the Requesting State or, if none is present, by a consular officer of
that State.

(2) The request for extradition shall contain:
(a) Information concerning the identity of the person sought
and the location where the person may be found, if known; and
(b) A brief statement of the facts of the case.

(3) The request for extradition shall be accompanied by documents
which contain:
(a) A detailed explanation of the pertinent facts of the case;
(b) Evidence that the person sought is the person charged or
convicted;

(c) The text and an explanation of the law describing the offenses and the penalties therefor; and

(d) The text and an explanation of the law setting forth the statute of limitations applicable to the trial and punishment therefor.

(4) When the request for extradition relates to a person who has not yet been convicted, it shall be accompanied by:

(a) A copy of the charging document, or an equivalent document issued by a judge or judicial authority; and

(b) Such evidence, as in accordance with the laws of the Requested State, would be necessary to justify the apprehension and commitment for trial of the person sought if the offense had been committed there.

(5) When the request for extradition relates to a convicted person, it shall be accompanied by a copy of the judgment of conviction or a statement by a competent judicial authority of the Requesting State that the person has been convicted.

(6) All documents transmitted by the Requesting State shall be translated, in either the Requesting or the Requested State, into the language of the Requested State.

## ARTICLE 10

### Additional Documentation

(1) If the Requested State considers that the documents furnished in support of the request for the extradition of a person sought are not sufficient to fulfill the requirements of this Treaty, that State shall request the submission of necessary additional documents. The Requested State may set a time limit for the submission of such documents, and may grant a reasonable extension of the time limit upon application of the Requesting State setting forth reasons therefor.

(2) If the person sought is in custody and the additional documents submitted are not sufficient, or if such documents are not received within the period specified by the Requested State, that person may be discharged from custody. Such discharge shall not prejudice the re-arrest and the extradition of the person if the additional documents are subsequently received.

## ARTICLE 11

### Provisional Detention

(1) In case of urgency, either Contracting Party may request the provisional detention of any charged or convicted person. Application for provisional detention shall be made either through the diplomatic channel or directly between the Department of Justice of the United States of America and the *Ministerio de Justicia* of the Republic of Costa Rica.

(2) The application shall contain information identifying the person sought; the location of that person, if known; a brief statement of the facts of the case; a statement of the existence of a warrant of

5

arrest or an order of detention issued by a judicial authority, or a judgment of conviction against that person; and a statement that a request for extradition of the person will follow.

(3) On receipt of such an application, the Requested State shall take the appropriate steps to secure the detention of the person sought. The Requesting State shall be promptly notified of the results of its application.

(4) Provisional detention shall be terminated if, within a period of 60 days after the apprehension of the person sought, the Requested State has not received the request for extradition and the supporting documents required by Article 9.

(5) The termination of provisional detention pursuant to paragraph (4) of this Article shall not prejudice the extradition of the person sought if the extradition request and the documents mentioned in Article 9 are delivered later.

### ARTICLE 12

#### *Detention and Release*

A person detained pursuant to the Treaty shall not be released until the extradition request has been finally decided, unless such release is required under the extradition law of the Requested State or unless this Treaty provides for such release.

### ARTICLE 13

#### *Decision and Surrender*

(1) The Requested State shall promptly communicate through the diplomatic channel to the Requesting State its decision on the request for extradition.

(2) The Requested State shall provide the reasons for any partial or complete rejection of the request for extradition.

(3) If extradition has been granted, surrender of the person shall take place within such time as may be prescribed by the law of the Requested State. The Contracting Parties shall agree on the time and place of the surrender of the person sought. If, however, that person has not left the territory of the Requested State within the prescribed time, that person may be set at liberty.

### ARTICLE 14

#### *Deferred Surrender or Temporary Surrender*

(1) If the extradition request is granted in the case of a person who is being prosecuted or is serving a sentence in the territory of the Requested State for a different offense, the Requested State may defer the surrender of the person sought until the conclusion of the proceedings against that person or the full execution of the sentence that may be, or may have been, imposed.

(2) If the extradition request is granted in the case of a person who is serving a sentence in the territory of the Requested State for a

6.

different offense, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody while in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person in accordance with conditions to be determined by mutual agreement of the Contracting Parties.

## ARTICLE 15

### Requests by Several States

(1) The Requested State, upon receiving requests from the other Contracting Party and from one or more other States for the extradition of the same person, either for the same offense or for different offenses, shall, in its discretion, determine to which State it will surrender that person. In making its decision, it may consider relevant factors including:

    (a) The State in which the offense was committed;

    (b) The gravity of the offenses if the States are seeking the person for different offenses;

    (c) The possibility of reextradition between the Requesting States; and

    (d) The order in which the requests were received from the Requesting States.

(2) Preference shall always be given to an extradition request made pursuant to an extradition treaty.

## ARTICLE 16

### Rule of Speciality

(1) A person extradited under this Treaty may be detained, tried, or punished in the Requesting State only for:

    (a) The offense for which extradition has been granted;

    (b) A lesser included offense;

    (c) An offense committed after the extradition; or

    (d) Any offense for which the Requested State consents to the person's detention, trial, or punishment. For purposes of this paragraph, the Requested State may require the submission of the documents mentioned in Article 9.

(2) A person extradited under this Treaty may not be extradited to a third State unless the Requested State consents.

(3) Nothing in paragraphs (1) and (2) of this Article shall prevent the detention, trial, or punishment of an extradited person in accordance with the laws of the Requesting State or the extradition of that person to a third State, if:

    (a) The person has left the territory of the Requesting State after extradition and has voluntarily returned to it; or

    (b) The person has not left the territory of the Requesting State within 30 days from the day on which that person was free to leave.

7

### ARTICLE 17

#### Simplified Extradition

If the person sought agrees in writing to removal to the Requesting State after personally being advised by a competent judicial authority that the person sought has the right to a formal extradition proceeding and that the surrender shall not be subject to Article 16, the Requested State may surrender that person without such a proceeding.

### ARTICLE 18

#### Surrender of Articles, Instruments, Objects, and Documents

(1) All articles, instruments, objects of value, documents, and other evidence relating to the offense may be seized and, upon granting of extradition, surrendered to the Requesting State. The property mentioned in this Article may be surrendered even when extradition cannot be granted or effected due to the death, disappearance, or escape of the person sought. The rights of third parties in such property shall be duly respected.

(2) The Requested State may condition the surrender of the property upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable, and may defer its surrender if it is needed as evidence in the Requested State.

### ARTICLE 19

#### Transit

(1) Either Contracting Party may authorize transit through its territory of a person surrendered to the other Party by a third State. The Contracting Party requesting transit shall provide the transit State, through diplomatic channels, with a request for transit which shall contain a description of the person being transmitted and a brief statement of the facts of the case.

(2) No such authorization is required where air transportation is used and no landing is scheduled in the territory of the other Contracting Party. If an unscheduled landing occurs within the territory of that Party, it shall detain the person for a period not exeeding 96 hours while awaiting the request for transit pursuant to paragraph (1) of this Article.

### ARTICLE 20

#### Representation

(1) The Department of Justice of the United States of America shall advise, assist, and represent, or provide for the representation of, the Republic of Costa Rica in any proceedings in the United States arising out of a request for extradition made by Costa Rica.

(2) The Procuraduria General of the Republic of Costa Rica shall advise, assist, and represent, or provide for the representation of, the

8

United States of America in any proceedings in Costa Rica arising out of a request for extradition made by the United States.

(3) The representation functions set forth in paragraphs (1) and (2) of this Article may be assumed by any successor agency designated by the laws of the affected State.

### ARTICLE 21

### *Expenses*

(1) The Requesting State shall pay expenses related to the translation of documents and the transportation of the person sought from the place of the extradition proceeding to the Requesting State. The Requested State shall pay all other expenses related to the extradition request and proceedings.

(2) The Requested State shall make no pecuniary claim against the Requesting State arising out of the arrest, detention, examination, and surrender of persons sought under the terms of this Treaty.

### ARTICLE 22

### *Scope of Application*

The procedures established by this Treaty shall apply to offenses committed before as well as after the date this Treaty enters into force.

### ARTICLE 23

### *Ratification and Entry into Force*

(1) This Treaty shall be subject to ratification; the instruments of ratification shall be exchanged at Washington as soon as possible.

(2) This Treaty shall enter into force immediately upon the exchange of the instruments of ratification.

(3) Upon the entry into force of this Treaty, the Treaty between the United States of America and the Republic of Costa Rica, signed at San Jose, November 10, 1922, shall cease to have effect.

### ARTICLE 24

### *Denunciation*

Either Contracting Party may denounce this Treaty at any time by giving written notice to the other Party, and the denunciation shall be effective six months after the date of receipt of such notice.

DONE at San Jose, in duplicate, in the English and Spanish languages, both texts being equally authentic, this fourth day of December, 1982.

FOR THE UNITED STATES
OF AMERICA:

*Ronald Reagan*

President of the
United States of America

FOR THE REPUBLIC OF
COSTA RICA:

President of the
Republic of Costa Rica

9

No. 202

SAN JOSÉ, *December 16, 1982.*

His Excellency FERNANDO VOLIO JIMÉNEZ,
*Ministry of Foreign Relations, Republic of Costa Rica*

EXCELLENCY: I have the honor to refer to the Extradition Treaty between the United States of America and the Republic of Costa Rica signed on December 4, 1982, and in particular to Articles 2 and 16 thereof.

Article 2 of the Treaty broadly defines offenses which are extraditable in order to insure that all felonies punishable under the laws of both Contracting Parties are extraditable. During the negotiations, questions arose as to whether offenses under certain complex United States statutes fall within the definition of extraditable offenses. It is understood that, notwithstanding any differences in the categorization of the offenses under the laws of the Contracting Parties and the terminology used to define those offenses, it is the intent of both Parties that such offenses be covered as long as there is an analogous offense under the laws of each Party. For example, it is understood that an offense under Section 848, Title 21, United States Code, which proscribes engaging in a continuing criminal enterprise with five or more other persons to commit a series of serious offenses under the narcotics control laws of the United States, will be considered by the Government of Costa Rica to be analogous to the offenses proscribed by Article 272 or Article 372 of the Penal Code of Costa Rica, and, therefore, to be an extraditable offense under the Treaty. As another example, it is understood that an offense under Section 1962(c), Title 18, United States Code, which prohibits participating in conducting the affairs of an enterprise through a pattern of racketeering activity, will be considered by the Government of Costa Rica to be analogous to the offense of illicit association under Article 272 of its law and, therefore, to be an extraditable offense.

It is also understood that fiscal offenses which may be punished by a maximum period of deprivation of liberty in excess of one year in both States are extraditable offenses under the Treaty.

Article 16 of the Treaty sets forth the rule of speciality applicable to extradited persons. Paragraph (1)(b) of that Article provides that a person who has been extradited under the Treaty may be detained, tried, or punished in the Requesting State not only for the offense for which that person was extradited, but also for an offense of a lesser degree of culpability which is based on the same facts as the offense for which extradition was granted. For example, this paragraph would permit the Requesting State to try a person for involuntary manslaughter after the person had been extradited for murder, without first obtaining the consent of the Requested State. While the English and Spanish texts use different terminology in paragraph (1)(b) of Article 16, it is understood that the terminology used has the same effect in the legal systems of the United States and Costa Rica.

I would appreciate a note from your Excellency confirming that the understandings described above are also the understandings of the Government of Costa Rica.

Accept, Excellency, the renewed assurances of my highest and most distinguished consideration.

/s/ FRANCIS J. MCNEIL.

10

DEPARTMENT OF STATE,
DIVISION OF LANGUAGE SERVICES,
*San Jose, December 16, 1982.*

(TRANSLATION)

LS No. 108430, JRP/ADS, Spanish.
No. 577-82/D.G.M.

His Excellency FRANCIS J. McNEIL,
*Ambassador, Embassy of the United States of America, San Jose.*

MR. AMBASSADOR: I have the honor to acknowledge receipt of Your Excellency's note No. 202 of this date, which reads as follows:

[The Spanish translation of note No. 202 agrees in all substantive respects with the original English text.]

I am happy to inform Your Excellency that the Government of Costa Rica fully agrees with the above note, whose text is absolutely correct.

I avail myself of this opportunity to renew to Your Excellency the assurances of my distinguished consideration.

FERNANDO VOLIO JIMENEZ,
*Minister of Foreign Affairs and Worship,*
*Republic of Costa Rica.*

O