# EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN THE MATTER OF THE EXTRADITION : Hon. Mark Falk
   OF
MAGDALENA PACHECO BOLANOS, : Mag No. 08-3641
   a/k/a "Maria Magdalena Pacheco Bolanos,"
   a/k/a "Veronica Giron Solares," and :
   a/k/a "Maria Pacheco Carvajal"
                                                                        :

UNITED STATES' MEMORANDUM OF LAW IN
REPLY TO PACHECO BOLANOS' BRIEF

The Government submits this memorandum of law in reply to the brief submitted by Magdalena Pacheco Bolanos, a/k/a "Maria Magdalena Pacheco Bolanos," a/k/a "Veronica Giron Solares" and a/k/a "Maria Pacheco Carvajal" (the "FUGITIVE"). The Government respectfully reserves its right to supplement its responses at the extradition hearing.

The FUGITIVE's brief argues that the documents submitted by the Government, on Costa Rica's behalf, are not properly authenticated and are insufficient to establish probable cause to believe that the FUGITIVE committed a crime. The FUGITIVE's brief is meritless and confuses the issues of admissibility, weight of the evidence and probable cause. The relevant issues addressed by the FUGITIVE's brief have previously been addressed in the Government's brief dated October 17, 2008.

**I. THE COSTA RICAN CHARGES**

The FUGITIVE is charged in the Penal Court of the Judicial Circuit of Cartago, as an Accomplice to Aggravated Homicide, as covered by and punishable under Title IV, About the Crimes, Title I, Crimes Against Life, Section I, Homicide, Article 112; and Title II, Punishable Action, Section II, Authors and Accomplices, Article 47 of the Penal Code of Costa Rica. A

warrant for her arrest was issued on January 4, 1999 by the Penal Court of the Judicial Circuit of Cartago, Costa Rica, in criminal case number 97-200572-349-PE after the fugitive failed to appear in Court and was declared in contempt. On May 29, 2000, the Penal Court of the Judicial Circuit of Cartago issued a warrant for the international arrest of the FUGITIVE. The FUGITIVE fled Costa Rica during criminal proceedings against her, and therefore has not been convicted of the crime for which she is charged.

Acting as an accomplice to aggravated homicide is an extraditable offense under Article 2, Paragraph 1 of the Extradition Treaty (the "TREATY") between the United States and Costa Rica.

## II. STATEMENT OF FACTS

According to an investigation by Costa Rican authorities, the FUGITIVE and her boyfriend, Laureano Montero Romero ("Montero Romero") conspired to kill Jose Andres Borrase Taylor (the "VICTIM") in late 1997 over a property dispute. On November 18, 1997, the VICTIM and Montero Romero agreed to meet at Montero Romero's residence, where both Montero Romero and the FUGITIVE lived, to discuss problems regarding their adjoining properties. When the VICTIM arrived at the residence, Montero Romero engaged the VICTIM in an argument and then stunned him unconscious with an electric stick. Montero Romero then shot the VICTIM with a twenty-two caliber weapon. The FUGITIVE and an unidentified accomplice helped Montero Romero handcuff and further incapacitate the VICTIM. The FUGITIVE, Montero Romero and the unidentified accomplice pushed the VICTIM into the FUGITIVE's car and the FUGITIVE then drove the VICTIM to the Los Tinoco farm in Tres Rios.

Once at the farm, Montero Romero shot the VICTIM five times in the back and twice in the neck. Afterwards, the FUGITIVE, Montero Romero and the unidentified accomplice left the VICTIM's body in the surrounding areas of Banco Popular in San Pedro de Montes de Oca. The FUGITIVE then took evidence of the crime, including a shovel, and disposed of it. On November 19, 1997, the FUGITIVE took the vehicle used in the homicide and had all four tires changed so that the tire tracks at the scene of the crime would not match her new tires. On November 19, 1997, the FUGITIVE also washed her car to remove evidence of the crime.

The Government of Costa Rica found that there was sufficient evidence to indict the FUGITIVE. However, the FUGITIVE fled Costa Rica during criminal proceedings against her. She used a false name and false documents to conceal her identity in order to enter the United States.

The FUGITIVE's co-defendant, Montero Romero, was tried and found guilty of aggravated homicide, and has currently served approximately 10 years in jail.

The FUGITIVE was arrested in the United States on September 17, 2008 at the request of the Government of Costa Rica pursuant to the TREATY.

### III.   THE DEFENSE CONFUSES ADMISSIBILITY AND WEIGHT OF EVIDENCE IN AN ATTEMPT TO FORESTALL THE EXTRADITION HEARING

The purpose of the extradition hearing is clearly stated in Title 18 U.S.C. § 3184. "[T]he magistrate must hear and consider the evidence of criminality presented by the requesting state and determine whether it suffices to sustain the charge under the treaty." The most important function of the extradition hearing is to decide if there is probable cause to believe that a crime was committed and that the person whose extradition is requested committed it.

The extradition hearing is not a criminal trial or an adjudication of the merits of the charges underlying the request for extradition. *Benson v. McMahon*, 127 U.S. 457, 463 (1888). The constitutional guarantees pertaining to criminal prosecutions therefore do not apply in an extradition hearing. *See, e.g., Glucksman v. Henkel*, 221 U.S. 508, 512 (1911);[1] *Caltagirone v. Grant*, 629 F.2d 739 (2nd Cir. 1980). Statutes and case law regulating criminal trials, *e.g.*, production of exculpatory or *Brady* material, likewise do not control in extradition cases. Furthermore, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence do not apply to extradition hearings. Fed. R. Crim. P. 54(b)(5); Fed. R. Evid.1101(d)(3). "Unique rules of 'wide latitude' govern the reception of evidence in Section 3184 hearings." *Sayne v. Shipley*, 418 F.2d 679, 685 (5th Cir. 1970) (citation omitted).

1. <u>Admissibility of hearsay</u>

Hearsay evidence is admissible at extradition hearings and may support a finding of extraditability. *Collins v. Loisel*, 259 U.S. 309, 317 (1922); *O'Brien v. Rozman*, 554 F.2d 780, 783 (6th Cir. 1977); *In re David*, 395 F. Supp. 803, 806 (E.D. Ill. 1975); *United States ex rel. Eatessami v. Marasco*, 275 F. Supp. 492, 494 (S.D.N.Y. 1967). Extradition treaties do not contemplate the introduction of testimony of live witnesses at extradition proceedings because to do so "would defeat the whole object of the treaty."[2] *Bingham v. Bradley*, 241 U.S. 511, 517 (1916). Thus, a finding of extraditability is typically based entirely on documentary evidence. *Shapiro v. Ferrandina*, 478 F.2d 894, 902-03 (2d Cir. 1973); *O'Brien v. Rozman*, 554 F.2d 780,

---

[1] In Justice Holmes' majority opinion, he said, "It is common in extradition cases to attempt to bring to bear all the factitious niceties of a criminal trial at common law. But it is a waste of time." *Glucksman v. Henkel*, 221 U.S. at 512.

[2] The FUGITIVE's request that Fernando Sanchez Chacon, a licensed attorney from Costa Rica, provide live testimony should be denied.

783 (6th Cir. 1977); *In re Edmonson*, 352 F. Supp. 22, 24 (D. Minn. 1972).

2.   Certification of documents

In *Cucuzzella v. Keliikoa*, the court held that Title 18 U.S.C. § 3190 governs the admissibility of statements submitted by the requesting state and the standard is satisfied by a certification that accords with the terms of the statute. 638 F.2d 105 (9th Cir. 1991); *see also Collins v. Loisel*, 259 U.S. 309. Alternatively, documents may be received in evidence if they are certified in accordance with the terms of the treaty. *Emami v. United States District Court*, 834 F.2d 1444 (9th Cir. 1987).

The requesting state must present "evidence sufficient to sustain the charge." 18 U.S.C. § 3184. Since 1848, Congress has allowed properly certified "depositions, warrants or other papers" to be received in evidence in extradition cases. Act of August 12, 1848, c. 167, §2, 9 Stat. 302, *codified as* 18 U.S.C. § 3190 (with minor changes: 18 U.S.C. § 3190 now mandates the receipt in evidence of depositions, warrants and other papers if they are certified by the "principal diplomatic or consular officer of the United States resident in such foreign country" as being "legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped . . ."). Documents certified in accordance with 18 U.S.C. § 3190 are conclusively admissible. *Cucuzzella v. Keliikoa*, 638 F.2d 105, 106-07 (9th Cir. 1981); *Emami v. United States District Court*, 834 F.2d 1444, 1451 (9th Cir. 1987); *United States v. Fernandez-Morris*, 99 F. Supp.2d 1358, 1361 (S.D. Fl. 1999). Because the diplomatic or consular officer's certificate is conclusive on the propriety and legality of the underlying authentications, *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984) (quoting *Galanis v. Pallanck*, 568 F.2d 234, 240 (2d Cir. 1977)),

issues concerning authentications should be rare.

The documents that have been submitted in this matter, which were appended to the Complaint as Exhibit 1, are admissible. Appropriate officers of the Department of State and its Consular sections have certified these documents in accordance with 18 U.S.C. § 3190. Heather K. McShain, an Attorney Advisor in the Office of the Legal Adviser of the United States Department of State, has provided the Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the TREATY, stating that the offense for which extradition is demanded is covered by the TREATY, and confirming that the documents supporting the request for extradition are properly certified by the principal American diplomatic or consular officer in Costa Rica, in accordance with Title 18, United States Code, Section 3190, so as to enable them to be received in evidence. The declaration from the Department of State with its attachments, including a copy of the relevant TREATY, and the certified documents submitted in support of the request were previously filed with the Complaint as Exhibit 1. Accordingly, the exhibits are presumptively what they purport to be and the Court should admit them into evidence for consideration in support of the Government's application for extradition of the FUGITIVE.

While the extradition papers submitted in the package may be unwieldy, they must be examined in their totality. And while the English translation may not be ideal, it still conveys the intended content sufficiently to determine the requisite elements; presumably the original Spanish official version would govern in case of conflict. The extradition statute, 18 U.S.C. § 3184, does not specify the form of the translation, and most treaties that mention translations are likewise silent on the formal requisites. Courts will generally presume that the translations are

correct, thus placing the burden on the FUGITIVE to show that they are incorrect in some material respect. *See In re David*, 395 F.Supp 803 (E.D. Ill. 1975); *Ntakirutimana v. Reno*, 184 F.3d 419, 430 (5th Cir. 1999). In the alternative, this Court has available to it as a resource in this District a pool of translators certified in the Spanish language, who might provide an independent means for the Court to confirm the translation.

3.   Limitations On The Evidence The Fugitive Can Introduce

The FUGITIVE's right to controvert the evidence introduced against her is limited to testimony which explains rather than contradicts the demanding country's proof. *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978), *cert. denied*, 439 U.S. 932 (1978). The district court in *Matter of Sindona*, 450 F. Supp. 672, 685 (S.D.N.Y. 1978), *aff'd*, 619 F.2d 167 (2d Cir. 1980), discussed the distinction between contradictory and explanatory evidence and cited the established authority for the proposition that an extradition hearing should not be transformed into a full trial on the merits:

> The distinction between "contradictory evidence" and "explanatory evidence" is difficult to articulate. However, the purpose behind the rule is reasonably clear. In admitting "explanatory evidence," the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and having some reasonable chance of negating a showing of probable cause. The scope of this evidence is restricted to what is appropriate to an extradition hearing. The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits. The Supreme Court has twice cited with approval a district court case which aptly summarizes the relevant considerations. The Supreme Court decisions are *Collins v. Loisel*, 259 U.S. 309, 316, 42 S.Ct. 469, 66 L.Ed. 956 (1922), and *Charlton v. Kelly*, 229 U.S. 447, 461, 33 S.Ct. 945, 57 L.Ed. 1274 (1913).

-7-

> In *In re Wadge*, 15 F. 864, 866 (S.D.N.Y 1883) the court dealt with the argument of an extraditee that he should be given an extensive hearing in the extradition proceedings: "If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter. The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here. This would be in plain contravention of the intent and meaning of the extradition treaties."

450 F. Supp. 672 at 685. The extent to which the FUGITIVE may offer explanatory proof is largely within the discretion of the committing judicial officer. *Hooker v. Klein*, 573 F.2d at 1369; *United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir. 1963), *cert. denied*, 376 U.S. 952 (1964) (and cases cited therein). However, some matters are clearly contradictory and thus impermissible. *See infra* "Impermissible Defenses."

4.   <u>Impermissible Defenses</u>

Defenses against extradition which "savor of technicality" should be rejected by a court as they are peculiarly inappropriate in dealings with a foreign nation. *Bingham v. Bradley*, 241 U.S. at 517. For example, a variance between the charges pending in the foreign state and the complaint filed on behalf of that state in our federal courts is not a defense to surrender. *Glucksman v. Henkel*, 221 U.S. at 513-14; *Accord Bingham v. Bradley*, 241 U.S. at 517; *United States ex rel. Bloomfield v. Gengler*, 507 F.2d 925, 927-1024 (2d Cir. 1974); *Shapiro v.*

-8-

*Ferrandina*, 478 F.2d at 904; *In re Edmonson*, 352 F. Supp. at 24.

### 5. Conflicting evidence

The FUGITIVE's grounds for opposition to the extradition request are severely circumscribed. *Hooker v. Klein*, 573 F.2d at 1368; *First Nat'l City Bank of New York v. Aristeguieta*, 387 F.2d 219, 222 (2d Cir. 1960); *In re Shapiro*, 352 F. Supp. 641, 645 (S.D.N.Y. 1973). She may not introduce evidence that conflicts with the evidence submitted on behalf of the demanding state (*Collins v. Loisel*, 259 U.S. at 315-17); establishes an alibi (*Abu Eain v. Adams*, 529 F. Supp 685 (N.D. Ill. 1980)); sets up an insanity defense (*Hooker v. Klein*, 573 F.2d 1360); or impeaches the credibility of the demanding country's witnesses (*In re Locatelli*, 468 F. Supp. 568 (S.D.N.Y. 1979)). She is limited to introducing explanatory evidence as previously discussed.

At an extradition hearing,

> [t]he accused is not entitled to introduce evidence which merely goes to his defense but he may offer limited evidence to explain elements in the case against him, since the extradition proceeding is not a trial of the guilt or innocence but of the character of a preliminary examination held before a committing magistrate to determine whether the accused shall be held for trial in another tribunal.

*Jimenez v. Aristeguieta*, 311 F.2d 547, 556 (5th Cir. 1962), *cert. denied*, 373 U.S. 914 (1963). A fugitive may not present evidence that contradicts the evidence presented by the Government, but may present only explanatory evidence. *Matter of Demjanjuk*, 603 F.Supp. 1463, 1464-1465 (N.D. Ohio 1984); *United States v. Fernandez-Morris*, 99 F.Supp.2d 1358, 1366 (S.D. Fl. 1999). Explanatory evidence is evidence rebutting probable cause, not evidence in defense. *Demjanjuk*, 603 F.Supp. at 1464. "The magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense." *Quinn v. Robinson*, 783 F.2d 776,

815 (9th Cir. 1986), *cert. denied,* 479 U.S. 882 (1986); *Austin v. Healey,* 5 F.3d 598, 605 (2nd Cir. 1993), *cert. denied,* 510 U.S. 1165 (1994) (quoting *Quinn).*

Here, the FUGITIVE argues that three conflicting, unauthenticated, unattested, purported statements by Martin Federico Carvajal Villalobos, Mariano Jesus Sandoval Rodriguez and Juan Carlos Stellar Vargas to the Costa Rican police undercut the substantial evidence submitted by Costa Rica. These statements may not be introduced at an extradition hearing as they are not authenticated, admissible or explanatory evidence. Even if these three statements were authenticated and admissible, they are merely conflicting evidence, which are not admissible. Furthermore, even if this Court were to accept the FUGITIVE's evidence, these three statements do not undercut the substantial evidence submitted by the Government on behalf of Costa Rica. *See infra* Section IV.

### IV.   PROBABLE CAUSE HAS BEEN ESTABLISHED

The standard of proof in extradition proceedings is that of probable cause as defined in federal law. *Sindona v. Grant,* 619 F.2d 167, 175 (2nd Cir. 1980); *see also United States v. Fernandez-Morris,* 99 F. Supp. 2d 1358, 1361 (S.D. Fla. 1999). This means evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused. *Coleman v. Burnett,* 477 F.2d 1187, 1202 (D.C. Cir. 1973). The Supreme Court stated in *Collins v. Loisel,* that "[t]he function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether evidence is sufficient to justify a conviction." 259 U.S. at 316. The Fourth Circuit explained the court's function in an extradition proceeding in the following terms:

> The extradition hearing is not designed as a full trial. The purpose is to inquire into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country, that the alleged conduct, if committed in the United States, would

> have been a violation of our criminal law, and that the
> extradited individual is the one sought by the foreign
> national for trial on the charge of violation of its criminal
> laws.

*Peroff v. Hylton,* 542 F.2d 1247, 1249 (4th Cir. 1976.) *See also, Fernandez v. Phillips,* 268 U.S. 311, 312 (1925); *United States ex rel. Sakaguchi v. Kaulukukui,* 520 F.2d 726, 730-31 (9th Cir. 1975) (magistrate's function is to determine whether there is "any" evidence establishing reasonable or probable cause); *Jimenez v. Aristeguieta,* 311 F.2d 547, 562 (5th Cir. 1962) (magistrate should not require evidence to convince himself that the fugitive was guilty, but only that it furnished good reason to believe that the crime alleged had been committed by the person charged with having committed it); *Merino v. United States Marshal,* 326 F.2d 5, 11 (9th Cir. 1963), *cert. denied,* 377 U.S. 977 (1964) (magistrate should determine whether there was "any" evidence to believe the accused was guilty); *In re Ryan,* 360 F. Supp. 270, 273 (E.D.N.Y.), *aff'd,* 478 F.2d 1397 (2nd Cir. 1973) ("any" evidence).

1. <u>Identity</u>

Identity is not an issue in this case. In fact, the FUGITIVE conceded that she was Pacheco Bolanos before this Court on September 23, 2008, and that she is the person being sought by Costa Rica, as depicted in the documents previously submitted to the Court. *See* Exhibit 1 of the Complaint.

2. <u>There Is Ample Evidence To Establish That Costa Rica Had Probable Cause To Support The Charge of Aggravated Murder Against The Fugitive</u>

Here, as listed below, the evidence before the Court is sufficient to establish probable cause to support the charge of accomplice to aggravated murder against the FUGITIVE.

1. The Government of Costa Rica found that there was sufficient evidence to indict the FUGITIVE and then proceeded with criminal proceedings against her based on those findings. However, the FUGITIVE fled Costa Rica and used a false name and false documents to conceal

-11-

her identity to enter the United States.

2. Two witnesses, Martin Carvajal Villalobos and Mariano Sandoval Rodriguez, stated that when they were leaving Montero Romero's house, where both Montero Romero and the FUGITIVE lived, they saw a "blond woman ... [with the] basic characteristics" of the FUGITIVE arrive. Indictment and Request to Open Trial, at 14.

3. Stellar Vargas ("Mr. Vargas") "provided a complete description of the physical characteristics of ... Pacheco Bolanos," whom he saw when the VICTIM was being carried out of Montero Romero's house by the FUGITIVE and others. *Id.* at 14-15. From Mr. Vargas' statement it can be "derived that [the VICTIM] was resisting Montero Romero and another unidentified subject ...; therefore [the FUGITIVE's] presence was necessary since she [drove] the vehicle because Montero Romero and the other had to dominate the [VICTIM]." *Id.*

4. The FUGITIVE's participation was "necessary to comply with the purpose of killing the [VICTIM] because [she] drove her vehicle" from Montero Romero's residence to the Los Tinoco farm in Tres Rios. *Id.*

5. The FUGITIVE then took evidence of the crime, including a shovel, a bedspread with blood, and disposed of it on the same day as the VICTIM's murder. *Id.* at 15, 17, 24. It was the FUGITIVE herself who took the officers of Homicides to the place where she disposed of the evidence of the crime. *Id.* at 17. This evidence was seized by the Costa Rican authorities. *Id.* at 24.

6. On November 19, 1997, the FUGITIVE took the vehicle used in the homicide and had all four tires changed so that the tire tracks at the scene of the crime would not match her new tires. *Id.* at 16. Carlos Rolando Alvarez Salazar ("Mr. Alvarez Salazar"), who worked at the tire shop, confirmed that the FUGITIVE asked him to replace the four tires in her car, which he

-12-

did. Furthermore, Mr. Alvarez Salazar, "describe[d] a woman with characteristics matching those of Pacheco Bolanos ...." "The conduct of ... Pacheco Bolanos is obvious, she had to get rid of the tires of the vehicle since their prints has been marked in the ground of the farm where [the FUGITIVE and Montero Romero] killed the [VICTIM]." *Id.* at 16. These tires were seized from the car shop. A comparison of the prints made at the grounds of the farm and the FUGITIVE's car tires show "the same characteristics in class, regarding the structure, shape and external aspect as ... the tires seized [from the car shop] and therefore those prints could have been made by [the FUGITIVE's car's] tires ...." *Id.* at 16, 25.

7. On November 19, 1997, the FUGITIVE also washed her car to remove evidence of the crime. Trial Court of Cartago's Statement in Support of Extradition, at 7.

8. Rodolfo Arronis Castro's ("Mr. Castro") testimony supports the fact that the VICTIM's murder was premeditated. Mr. Castro testified that Montero Romero had told him in the "early hours" of November 18, 1997 that Montero Romero and the FUGITIVE would be gone for three days and asked that Ms. Castro take care of their house. Indictment and Request to Open Trial, at 12, 22. Furthermore, Mr. Castro also testified that "everything [seemed] different from how they always left it, and he [felt] that something strange had taken place ...." *Id.* at 12.

9. Marcela Carranza Portocarrero is knowledgeable about the problems that her husband, the VICTIM, and her family experienced with the FUGITIVE and Montero Romero. "With this witness the Prosecutor's Office will prove that the [FUGITIVE and Montero Romero] were very problematic persons and that before killing the [VICTIM] they had already had strong oral confrontations." *Id.* at 23.

10. Jorge Mario Borrase Carranza is knowledgeable about the problems that his father,

the VICTIM, and his mother experienced with the FUGITIVE and Montero Romero. *Id.*

11. Three lawsuits (Montero Romero vs. Marcela Carranza; Magdalena Pacheco Bolanos vs. Edificios Borrase; and Marcela Portocarrero vs. Inversiones Las Nubes del Este, S.A.,) establish the legal problems between the VICTIM and the FUGITIVE and Montero Romero. *Id.* at 26.

12. A defense that the FUGITIVE put forth in Costa Rica during her criminal proceedings was that Montero Romero exercised psychological control over her. *Id.* at 19. (Emphasis added.) By virtue of this defense alone, the FUGITIVE admitted in Costa Rica that she committed the crime.

As set forth above, the government of Costa Rica has provided both direct and circumstantial evidence sufficient to support a finding of probable cause pursuant to Title 18 U.S.C. § 3184. *See, e.g., Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir.1990), *cert. denied*, 114 S.Ct. 1192 (1994); *Sindona v. Grant*, 619 F.2d 167, 175 (2d Cir.1980); *Jhirad v. Ferrandina*, 536 F.2d 478, 485 (2d Cir.), *cert. denied*, 429 U.S. 833 (1976); *Matter of Extradition of Hamilton-Byrne*, 831 F.Supp. 287, 289 (S.D.N.Y.1993). The evidence is sufficient to support a reasonable belief that the FUGITIVE committed the crime charged. *Austin v. Healey*, 5 F.3d 598, 605 (2d Cir.1993), *cert. denied*, 510 U.S. 1165 (1994); *Ahmad*, 910 F.2d at 1066; *Spatol v. United States*, 925 F.2d 615, 617-18 (2d Cir.1991). The submitted evidence permits this court to apply a "totality-of-the-circumstances analysis" and "make a practical, common-sense decision whether, given all the circumstances ... there is a fair probability that" the defendant committed the crime charged. *Glantz*, 1995 WL 495644, at *2 (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

That this Court accepts the sworn evidence provided by Costa Rica as true

-14-

inheres in any probable cause determination. *See Collins v. Loisel*, 259 U.S. 309, 315-316, (1922); *Marzook I*, 924 F.Supp. at 592 (court must accept as true all statements and offers of proof by the demanding state); *Matter of Extradition of Atta*, 1988 WL 66866, at *4 (E.D.N.Y. June 17, 1988).

In her pleading to this Court, the FUGITIVE argues for the admission of three unauthenticated unattested statements purportedly made by three of the witnesses in this case to the police and further argues that these statements undercut probable cause in this case. Essentially the FUGITIVE promotes these statements to say that she is not the correct person, that another woman at the house where she lived with the man with whom she had a common law relationship was the person who drove the car, disposed of the evidence, changed the tires and was the accessory in the killing of the victim with whom she and her now convicted co-defendant and former common law partner had an acrimonious dispute.

Setting aside the failures of authentication and certification as to these tendered documents, these statements should be excluded as inadmissible because they are offered to contradict the requesting country's proof of probable cause. *Charlton v. Kelly*, 229 U.S. 447, 456 (1913); *see also Mainero*, 164 F.3d at 1207, n. 7; *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir.1978). While the admission of evidence is within the discretion of this Court, the FUGITIVE may be permitted to offer explanatory testimony, "but may not offer proof which contradicts that of the demanding country.") *Collins*, 259 U.S. at 315-16; *Messina v. United States*, 728 F.2d 77, 79 (2d Cir.1984); *United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir.1963), *cert. denied*, 376 U.S. 952 (1964) (same); *Matter of Atta*, 1988 WL 66866, at *4 (same); *Matter of Sindona*, 450 F.Supp. 672, 685 (S.D.N.Y.1978) ("extraditee

cannot be permitted to turn the extradition hearing into a full trial on the merits").

While the distinction between contradictory and explanatory evidence has been described as a "somewhat murky principle" the line may be drawn between evidence rebutting probable cause and evidence establishing a defense. *Collins v. Loisel*, 259 U.S. 309, 315 (1922); *see also Republic of France v. Moghadam*, 617 F.Supp. 777, ,781 (N.D. Cal. 1985). "[I]n admitting 'explanatory evidence,' the intention is to afford the accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause." *Sindona*, 450 F.Supp. at 685.

The evidence tendered by the FUGITIVE is not clear-cut, is not limited in scope and does not negate the evidence submitted by Costa Rica establishing probable cause. As this evidence is offered for the purpose of contradicting the Costa Rican government's evidence or impeaching the statements of the Costa Rican authorities in their submitted documents, and not to explain or clarify any ambiguities in the government's case, the Court need not address such evidence in this proceeding. *Shapiro v. Ferrandina*, 478 F.2d 894, 904-05 (2d Cir.), *cert. denied*, 414 U.S. 884 (1973) ( "evidence of alibi or of facts contradicting the demanding country's proof ... may properly be excluded from the Magistrate's hearing").

Contrary to the FUGITIVE's claims, the Government has submitted, on behalf of Costa Rica, more than sufficient evidence to sustain a charge of aggravated murder. Therefore, probable cause has been satisfied in this case.

## V.   THE TREATY EXPRESSLY CALLS FOR REQUESTS FOR ADDITIONAL INFORMATION BEFORE A FUGITIVE IS RELEASED

The evidence submitted is more than sufficient to establish probable cause that the FUGITIVE committed the crime that she is charged with in Costa Rica. However, in the event

the Court find that the extradition package is insufficient, Article 10 of the TREATY expressly provides and calls for the Requested State, here the United States, to seek additional documentation in support of the request for extradition. "If the Requested State considers that the documents furnished in support of the request for extradition of a person sought are not sufficient ... that State *shall* request the submission of necessary additional documents." Article 10 of the TREATY. (Emphasis added.) Notwithstanding the foregoing arguments, if the Court should nonetheless determine it needs more information, the Government respectfully requests that the Court invoke this provision of the TREATY to seek the necessary information and retain the FUGITIVE in custody pending receipt of documents from Costa Rica.

## CONCLUSION

The Government respectfully submits that the Court should grant the Government's request that the FUGITIVE be extradited to Costa Rica.

Respectfully submitted,

RALPH J. MARRA, JR.
Acting United States Attorney


By: Lakshmi Srinivasan Herman
Assistant United States Attorney


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 12th day of December, 2008, to:

Howard Woodley Bailey, Esq.

Bailey & Orozco, LLC
744 Broad Street, Suite 1901
Newark, New Jersey 07102-3806