# EXHIBIT F

1

UNITED STATES DISTRICT COURT

2

DISTRICT OF NEW JERSEY

3

UNITED STATES,          .    Case No. 2:08-MJ-03641-MF-1

4

    Petitioner,       .    NEWARK, NEW JERSEY

                             .    Tuesday, December 23, 2008

5

      v.               .    11:08:31 a.m.

6

MARIA MAGDALENA PACHECO    .

BOLANOS aka VERONICA

7

GIRON SOLARES aka MARIA    .

PACHECO CARVAJAL,

8

    Respondent.       .

9

. . . . . . . . . . . . .

10

11

TRANSCRIPT OF EXTRADITION HEARING

BEFORE THE HONORABLE MARK FALK

12

UNITED STATES MAGISTRATE JUDGE

13

APPEARANCES:

14

For the Petitioner:       LAKSHMI SRINIVASAN HERMAN

                                 UNITED STATES ATTORNEY'S OFFICE

15

                                 970 Broad Street, 7th Floor

                                 Newark, NJ 07102

16

                                 (973) 645-3985

17

                                 GRACE H. PARK

                                 UNITED STATES ATTORNEY'S OFFICE

18

                                 970 Broad Street, 7th Floor

                                 Newark, NJ 07102

19

                                 (973) 645-2718

20

21

Court Recorder:

22

Transcription Service:      King Transcription Services

                                 65 Willowbrook Boulevard

23

                                 Wayne, New Jersey,   07470

                                 (973) 237-6080

24

25

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

1    APPEARANCES CONTINUED:

2

3    For the Respondent:          HOWARD W. BAILEY
                                   Bailey & Orozco, LLC
                                   The National Newark Building
4                                  744 Broad Street, Suite 1901
                                   Newark, New Jersey 07102
5                                  (866) 919-6193

6                                  MICHAEL A. OROZCO
                                   Bailey & Orozco, LLC
7                                  The National Newark Building
                                   744 Broad Street, Suite 1901
8                                  Newark, New Jersey 07102
                                   (866) 919-6193
9

10   Interpreter:                  SARA GARCIA-RANGEL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1

### INDEX

2

|                          | Direct | Cross | Re-<br>Direct | Re-<br>Cross | Further<br>Redirect |
|--------------------------|--------|-------|---------------|--------------|---------------------|
| WITNESSES FOR PETITIONER: |        |       |               |              |                     |

3

4

5

WITNESSES FOR RESPONDENT:

6

Fernando Sanchez Chucone    25,26   28,29

7

8

| ARGUMENTS: | Page |
|------------|------|
| BY: MS. HERMAN | 5 |
| BY: MR. BAILEY | 11 |
| BY: MR. OROZCO | 16 |

9

10

11

12

13

| EXHIBITS: | Marked | Received |
|-----------|--------|----------|

14

Petitioner's:

15

| Government Exhibit 1 - Petition | | 6 |

16

Respondent's:

17

| D-1,D-2,D-3 Three testimonies | 25 | |

18

19

| SUMMATIONS: | Page |
|-------------|------|
| BY: MR. OROZCO | 30 |
| BY: MS. PARK | 35 |

20

21

22

23

24

25

4

1    NEWARK, NEW JERSEY, TUESDAY, DECEMBER 23, 2008, 11:08 A.M.

2    (Call to Order of the Court.)

3    COURT CLERK:  The Court calls USA v. Bolanos.

4    THE COURT:  Can I have the appearances of Counsel,

5    please.

6    MS. HERMAN:  Good morning, Your Honor.  Assistant

7    United States Attorney Lakshmi Srinivasan Herman, on behalf of

8    the Government.

9    With me, at Counsel Table, is Grace Park.

10    THE COURT:  Good morning.

11    MS. PARK:  Good morning.

12    MR. BAILEY:  Good morning, Judge.  Howard Bailey,

13    from the firm of Bailey and Orozco, on behalf of our client,

14    Ms. Pacheco Bolanos.

15    With me is my partner and co-counsel on this matter,

16    Michael Orozco.

17    THE COURT:  Good morning.  I think --

18    MR. OROZCO:  Good morning, Judge.

19    THE COURT:  -- I think we should begin the proceeding

20    by swearing the interpreter in this case.  Sara?

21    S A R A   G A R C I A - R A N G E L, INTERPRETER, SWORN

22    COURT CLERK:  Can you kindly state your name for the

23    record.

24    INTERPRETER:  Sara Garcia-Rangel.

25    COURT CLERK:  Thank you.

5

1    THE COURT:  All right.  This is an extradition

2   hearing.  The parties have submitted memoranda, together with

3   declarations and certain exhibits, in support and in opposition

4   of -- of the application.  And the Court has carefully read

5   them.

6    I -- I suppose I'll hear briefly from the Government,

7   at this point, and then we'll hear from -- from defendant.

8    MS. HERMAN:  Your Honor, thank you.

9    THE COURT:  Mmm-hmm.

10    MS. HERMAN:  As -- as you know, Ms. Bolanos has been

11   indicted in Costa Rica as an accessory to homicide.  And it's

12   the Government's position that there is sufficient evidence to

13   proceed with extraditing her to Costa Rica.

14    The Court -- a Court in Cartago has already made a

15   determination that there is sufficient evidence, said there is

16   nothing for this Court to do except to extradite her to Costa

17   Rica.  However, if the Court believes otherwise, the

18   Government's reply brief also sets forth additional evidence

19   against the fugitive, which is more than sufficient to

20   establish probable cause.

21    The Federal Probable Cause Stand(sic) applies --

22   Standard applies here.  Probable cause signifies evidence

23   sufficient to cause a person of ordinary prudence and caution

24   to conscientiously entertain a reasonable belief of the

25   accused's guilt.

6

1        A Reviewing Court will sustain the finding of

2   probable cause in an extradition case if there is any evidence

3   to support it.

4                    (Pause in hearing)

5        MS. HERMAN:  Your Honor, may -- may I approach?

6        THE COURT:  Sure.

7        MS. HERMAN:  I'd like to move into evidence documents

8   that have been previously submitted as Government's exhibit 1.

9        THE COURT:  Mr. Bailey, have you seen this --

10       MR. BAILEY:  Judge, we have received that -- we had

11   received a copy of that from the Government itself, when we

12   became counsel to Ms. Pacheco Bolanos.  And -- so, Judge, I

13   don't see any basis for me to object to it, because it is, in

14   fact, the petition.

15       THE COURT:  Okay.  Well, that's fine.  I've also seen

16   it.  It has been submitted to me, but, so Government Exhibit 1

17   will be made a part of the record in this case.

18       MS. HERMAN:  Your Honor, in our brief, we listed all

19   the examples of why there is probable cause in this case.

20   Briefly, I will go over those for the Court.

21       Two witnesses, Martin Carvigel Villalabos (phonetic)

22   and Mariano Rodriguez (phonetic), stated that, when they were

23   leaving Ms. Bolanos's former lover's home, where she and

24   Montaro Romero (phonetic) had lived, they saw a blond woman

25   with the basic characteristics of the fugitive arrive.

7

1      And another witness, who was a caretaker of a

2   warehouse property across from where the fugitive lived, Mr.

3   Vargas, provided a complete description of the physical

4   characteristics of Pacheco Bolanos, whom he saw yelling when

5   the victim was being carried out of the house by the fugitive

6   and others.

7      Furthermore, the victim took evidence of the crime,

8   including a shovel, a bread(sic) -- a bread(sic) -- a

9   bedspread, rather, with blood, and disposed of it on the same

10   day as the victim's murder.

11      It was the fugitive, herself, who took the officers

12   in Costa Rica to the place where she disposed of the evidence

13   of the crime.

14      The day of the murder, November 19, '90(sic) -- '97,

15   the fugitive also took the vehicle used in the homicide and had

16   all four tires changed, so that the tire tracks at the scene of

17   the crime would not match her new tires.

18      A witness, by the name of Carlos Salazar (phonetic),

19   who worked at the tire shop, confirmed that the fugitive asked

20   him to replace the four tires in her car, which he did.   The

21   tires were then seized from the car shop.

22      A comparison of the prints made of the grounds of the

23   farm where the fugitive -- where the victim was found and the

24   fugitive's car tires share that the characteristics in class,

25   regarding the structure, shape, and external aspect, as to the

8

1   tires that were seized from the sh -- car shop match with those

2   -- match with the tires of the fugitive's car.

3          The day after the murder, the fugitive also washed

4   her car to remove all evidence of the crime.

5                    (Pause in hearing)

6          In -- in addition, late yesterday, we received a

7   letter from a prosecutor in Costa Rica --

8          MR. BAILEY:  Judge, I object to that letter being

9   introduced at this time.

10         THE COURT:  Well, let's just hear about it first,

11  okay?

12         MR. BAILEY:  Thank you, Judge.

13         THE COURT:  All right.

14         MS. HERMAN:  We pr -- the Government provided a -- a

15  copy of the letter and an unofficial translation to the letter

16  -- of the letter, rather, to Defense Counsel at the first

17  available opportunity, which was earlier -- early this -- this

18  -- this morning when we arrived in court, Your Honor.

19         In -- in part, the letter states that --

20         MR. BAILEY:  I object to this phrasing of what's in

21  the letter, Judge, without the determination that the letter,

22  itself, is admissible, at this juncture.

23         THE COURT:  Well, all right --

24         MS. HERMAN:  Would --

25         THE COURT:  -- I think, you know, the -- the -- the

9

1   -- the standard for the admissibility of evidence in a -- in an

2   extradition proceeding, I think you're aware of, and has been

3   eluded to, and it's a very -- the -- the Federal Rules of

4   Evidence don't a -- apply --

5          MS. HERMAN:  Don't apply.

6          THE COURT:  -- and et cetera.  And I -- I'm -- I'm

7   going to hear what has been said, and then we'll let you have

8   your objection to it.  I have no idea what it is.  But I think,

9   in the spirit of an extradition proceeding, there should be no

10  limitation on what the Court can hear.

11         I'm not thrilled that this is happening at the last

12  minute, but I don't know what the reason that -- for it is.

13         MR. BAILEY:  Thank you, Judge.

14         THE COURT:  Thank you.

15         MS. HERMAN:  In -- in -- in brief, in part, the

16  letter states that, in the presence of her lawyer, the fugitive

17  stated that she changed the tires of the car that she was

18  driving, in which the body of the victim was transferred, where

19  the body was ultimately abandoned, and that the tires were in

20  good condition.  And she also got rid of a firearm, a rifle,

21  which was arguably used to kill the victim.

22         Your Honor, this -- this letter has not been

23  certified, but we're -- if necessary, we'll get this certified.

24  The Government's position is there is sufficient probable

25  cause, despite this letter, for you to find that the fugitive

1   is extride(sic) -- should be sent back to Costa Rica.

2          THE COURT:   Okay.

3          MS. HERMAN:   It's also our understanding that the

4   Defense will offer a witness -- they have a witness that they

5   want to testify here, with regard to certain documents that

6   have been submitted.

7                    (Pause in hearing)

8          Our position is that the witness should not be

9   allowed to testify, because any testimony he would give would

10  be contradictory and not explanatory.   And it would not be

11  sufficient to obliterate PC in this case.

12         Furthermore, he is not the custodian of records, so

13  any testimony he would give, with regard to documents that have

14  been submitted by the defendant, would not be competent.

15         And also, all the documents that have been submitted

16  by the Government, on behalf of Costa Rica, need to be taken as

17  true.   Because to do so would defeat the purpose of the treaty.

18         And -- and one last issue, Your Honor, the Defense

19  has raised the point that the documents that the Government has

20  submitted as Exhibit A were not properly certified.   It's our

21  position that, under Title 18, United States Code Section 3190,

22  which governs admissibility, these documents are properly

23  certified and, therefore, conclusively admissible.

24         Thank you, Judge.

25         THE COURT:   Thank you.  Mr. Bailey?

11

1    MR. BAILEY:  Judge, thank you.  Judge, I just want to

2 ask the Court's indulgence on this.  Both Mr. Orozco and I

3 would like to address certain issues separately on this.  And,

4 if the Court will permit, I will start off, and then Mr. Orozco

5 will finish, regarding the -- the closing comments -- one other

6 issue and a closing comment?

7    THE COURT:  That's fine.

8    MR. BAILEY:  Thank you, Judge.

9    Judge, as set forth in the Defense brief, I think

10 that the -- the initial issue, given the papers that comprise

11 the petition itself, call into question what the evidentiary

12 standard is.  What is the Court supposed to be looking at?  Is

13 the Court -- and with the Court's indulgence, I'm just going to

14 refer to 18 USC Section 3190 as Section 3190, Judge.

15    Is the standard, Section 3190, which would control if

16 there was no specific language in the body of the treaty

17 itself?  Well, it turns out that there is specific language in

18 the treaty.  And, as set forth in our brief, Judge, I believe

19 that, under the case that would control -- at least one of the

20 case -- several of the cases that would control, among them,

21 Grechy (phonetic) versus Burton, as I believe it's on page four

22 of our brief, that, where there is specific language in a

23 treaty, that the language of the treaty and the applicable

24 standard, 3190, need to be examined to see which is the latest.

25 Because both, under the United Stated Constitution, have the

12

1   same level of authority and control the same way, so whichever

2   is the latest is going to control.

3         The language, respectfully Judge, in the treaty,

4   indicates that the laws of the requested country control what

5   is admissible.  It is not simply the language of what is in

6   section 3190.  If that were true, Judge, quite frankly it would

7   make no se -- the -- the prior rulings of the Court itself

8   would make no sense to be able to say, well, if the treaty says

9   that it's the laws in the requested state, and if that specific

10  phrase were to be interpreted as mean -- well, see Section

11  3190, then that -- that case in Grechy versus Burton is, I

12  would submit to the Court, has very little value.

13        I submit to the Court, respectfully Judge, that what

14  that specific language in the treaty says is that the rules,

15  notwithstanding Section 3190, notwithstanding that no there's

16  other provisions that say the Rules of Evidence don't apply in

17  extradition hearings, that that treaty, in essence, wipes those

18  statutory provisions from consideration, where a treaty does

19  contain this kind of language.

20        And so, respectfully Judge, I would submit that,

21  notwithstanding that under most circumstances the Rules of

22  Evidence would not apply where you have a treaty that contains

23  specific language, it supercedes the -- the provisions in the

24  US Code.  And that is the address in point A of our brief,

25  Judge.

13

1    And so I submit to the Court that, as an initial

2    consideration, that the applicable standard here is not 3190.

3    Second, Judge, even if Section 3190 controls, for the

4    sake of argument, cer -- Section 3190 controls, Section 3190

5    specifically addresses what is evidence.  In essence, Judge,

6    it's the kind of things we, as lawyers and you as a Judge, see.

7    It's affidavits.  It's a deposition.  These are documents that

8    are taken, under controlled circumstance, and to which there is

9    an attestation.

10    And -- and this is an issue, Judge, that Mr. Orozco

11    will be going into more, regarding the Exhibits attached to our

12    brief, that was being, in specific, three statements that are,

13    in fact, referenced by Costa Rica and now relied upon by the US

14    Attorney's Office in arguing for a certificate of

15    extraditability.

16    Those statements, Judge, are referenced and -- I'm

17    trying to put the nicest face I can on this -- interpreted by

18    the Costa Rican Prosecutor, but they're not attached.

19    Now, Judge, if, on examination, those statements,

20    referenced by Costa Rica, said what the Costa Rican Prosecutor

21    had interpreted them as saying, then, Judge, I would be very

22    hard-pressed to stand here and say what I'm about to say.

23    Unfortunately, Judge, the statements attached in the Exhibits

24    do not say what the Costa Rican Prosecutor has asserted that

25    they say.

14

1        And this is set out, Judge, in our brief, with

2   particularity.   Judge, I believe it starts in Section B, on

3   page 5 of our brief.   And it's specific, Judge, if I'm not

4   mistaken -- I'm sorry, Judge, it's in -- actually in Section C.

5   And this is getting a little bit into what Mr. Orozco will be

6   addressing, Judge --

7            THE COURT:   Mmm-hmm.

8            MR. BAILEY:   -- but there are specific inferences or

9   misstatements, if you will, the meaning about what these

10  statements say by the Costa Rican Prosecutor.   And they are

11  being relied upon by the Government to legitimize the extradite

12  -- the extradition petition itself and saying, this is

13  evidence.

14       There's no attestation here from the Costa Rican

15  Prosecutor, under oath, that what he's saying is true.   And

16  because of that, Judge, when -- regardless of whether it's

17  under the Rules of Evidence, as I've previously argued to the

18  Court, or under Section 1 -- 3190, there has to be something

19  that this Court can look at and say, here is evidence presented

20  -- it's not just an assertion by a prosecutor that has no way

21  of being contested, examined, reviewed, or determined to be

22  accurate, unless you bring in the very documents he's referring

23  to.

24       And so, Judge, as part of the Defense brief, we chose

25  the first three things that he utilized.   Those being:   the

1   statements of Mariano Sandival (phonetic) Rodriguez, Martin

2   Carvigel Villalabos, and Juan Carlos Stelof (phonetic).  Those

3   are the -- are -- are the -- the three initial documents that

4   he asserts say certain things, that these victims saw Ms.

5   Pacheco Bolanos do something or be in a certain place.  But,

6   when you read the actual statement, it does not say that,

7   Judge.  So it calls into question everything then that the

8   Costa Rican Prosecutor would have liked this Court to just

9   accept.

10       You know, Judge, for a long time I've been practicing

11  as a lawyer and, pr -- prior to that, as a police officer.  For

12  a long time, I've known that the Court instruction to a jury

13  that says, "False in one; false in all".  And I would submit to

14  the -- I'm sorry, Judge, that is an -- an instruction in the

15  Superior Courts here in New Jersey.  But I've been familiar

16  with it, Judge, and it's always stuck with me that, once

17  someone starts making something up, this is almost a -- a

18  composite what the Prosecutor would like this Court to just

19  accept is a composite of what he thinks his case says.

20       But, when he refers to the statements of specific

21  people and then doesn't attach them, Judge, it calls into

22  question why wouldn't you attach the statements?  If they're

23  going to say what you say they say, isn't that the best

24  evidence?  You know, Mr -- Mr -- Mr. Villalabos, he says, "X".

25  There it is in his statement.  That, Judge, I would submit

16

1    would be evidence that this Court would point at and go, "Mr.

2    Bailey, nice argument, sit down."

3            Under these circumstances, Judge, I would submit

4    that, regardless of the standard, whether or not you put it

5    under 3190 or not, that there has to be evidence that is

6    presented to this Court, not a composite narration that's

7    unattested to by the Prosecutor in Costa Rica.  I don't

8    respectfully think that that comports with what even the low

9    standard of extradition hearings requires.

10           And with that, Judge, I will defer now to Mr. Orozco,

11   with the Court's permission.

12               THE COURT:  Sure.

13               MR. BAILEY:  Thank you, Judge.

14               MR. OROZCO:  Your Honor.

15               THE COURT:  Yes.

16               MR. OROZCO:  The statements made in the extradition

17   are conclusory at best.  At worst, they are a misstatement and

18   a clear misstatement of what is actually contained as far as

19   the evidence is concerned.  Lack of evidence renders any

20   statement conclusory, Sindona 450 F. Supp. 672.

21           Judge, at this point in time, I would like to call to

22   the stand Mr. Fernando Chucone (phonetic) Sanchez(sic).  Your

23   Honor, Mr. Sanchez(sic) is an attorney practicing in his native

24   Costa Rica.  He has been involved with this case, since the

25   matter was brought for an extradition here in the United

17

1   States.

2         Your Honor, he is the perfect person in this -- in

3   this courtroom today to authenticate the documents that have

4   been previously submitted as part of the brief as Exhibits A,

5   B, and C.

6         And, Your Honor, I would submit to the Court that, of

7   course, Your Honor has to look at the evidence in the manner in

8   which it was submitted and decide whether or not this evidence

9   is explanatory or decide whether or not the evidence is

10  contradictory.  And I would submit to Your Honor that it is, in

11  fact, explanatory.

12        Because what we are saying and what we are showing to

13  the Court is, these are the statements contained in the

14  petition, under paragraphs 3, 4, 5, 10, 11, 12, 13 through 16.

15  And in those statements, Judge, which are contained in the

16  petition by the translation, it states that these individuals

17  were identified by the three persons that were previously

18  identified.  It -- it says, specifically, Judge, it couldn't be

19  any clearer.

20        Now, I am submitting those -- those translated

21  declarations, by which they rely upon in the petition, to

22  explain what is actually said by those individuals.  I'm not

23  contradictoring(sic) them -- I'm not contradicting them, Judge,

24  I am explaining them further, so that the Court can understand

25  what is actually contained in them.

1        At this point in time, Your Honor, I would request

2   that Your -- that the Court allow Mr. Chucone to testify, with

3   regards to the authentication of those documents.

4        MS. HERMAN:  Your -- Your Honor, the Government

5   objects to this witness as --

6        THE COURT:  Can -- can I just --

7        MS. HERMAN:  Sure.

8        THE COURT:  -- can we go on hold for a minute.

9        MS. HERMAN:  Sure.

10       THE COURT:  --

11       COURT CLERK:  Yes, Sir.  Off the record?

12       THE COURT:  Yeah.

13          (Off the record.  Back on the record)

14       COURT CLERK:  Okay, Judge.

15       THE COURT:  You were objecting.

16       MS. HERMAN:  I was objecting, Your Honor.  This

17   witness cannot authenticate those three documents in question.

18   He's not the proper person to do that, Your Honor.  And, you

19   know, the statements that they're offering are not explanatory,

20   you know, if any -- if anything they support what the -- what

21   the witnesses saw.  What they saw was a woman, similar to the

22   fugitive with her characteristics.  And it supports all the

23   other instances of probable cause that we've laid out in our

24   brief and that I mentioned to the Court earlier today.

25       And what the Defense is looking to do is have -- is

19

1   -- is have the case tried here, and that defeats the entire

2   purpose of the extradition proceeding.  And we have to take the

3   Prosecutor's statements in those documents at face value and as

4   being true.  So we ask that this witness not be allowed to

5   testify today.

6           MR. OROZCO:  Your Honor, may I respond?

7           THE COURT:  Sure.  Just one s --

8                       (Pause in hearing)

9           THE COURT:  Yes.

10          MR. OROZCO:  Your Honor, if the statements contained

11  therein are authenticated, how in the world can they be

12  contradictory.  This is the very evidence which Costa Rica is

13  relying upon in order to support their extradition.

14          Now, as far as Mr. Chucone being the custodian of

15  records, Your Honor, if I recall correctly, and, in fact, I do,

16  you, yourself, stated, Rules of Evidence don't apply in here.

17  Hearsay is perfectly admissible.  And this is the exact same

18  situation.

19          And there is plenty of case law, which I need not

20  recite right now, but I will get to very -- ver -- later,

21  plenty of case law where there have been a multitude of -- of

22  witnesses that have come to testify at an extradition on behalf

23  of both the extraditing state, as well as on behalf of the

24  defendant.  This is perfectly permissible, Judge.

25          MS. HERMAN:  Your Honor, if he's not the custodian of

20

1   records, what value will he contribute by testifying here

2   today?

3          MR. OROZCO:  Your Honor, m -- if I may respond, this

4   -- this individual is an attorney in Costa Rica, and he can

5   testify about the manner in which records are kept there in

6   Cartago and the fact that there -- there's a stack of papers

7   right here.  This is the exact same stack of papers that is

8   contained in Cartago, with regards to this matter.  And it's

9   all the evidence.

10         And that information and the -- and the de -- and the

11  statements that were taken and given to the Court as Exhibits A

12  through B(sic) -- A through C were taken from there.  He can

13  testify about that.

14         The fact that he's not the custodian of records is of

15  no -- is of no relevance.  Moreover, Judge, again, it's

16  hearsay.  And hearsay is admissible in an extradition.

17         THE COURT:  I want to understand what exactly your --

18  your contention is.  There are three statements attached to

19  your papers.

20         MR. OROZCO:  Correct, Judge.

21         THE COURT:  Now are you saying that they've been

22  improperly translated, is that the claim?

23         MR. OROZCO:  I -- I -- Your Honor, they haven't been

24  translated.

25         THE COURT:  They haven't been translated.

21

1          MR. OROZCO:   There's a -- there's a -- it's a

2    complete -- it's -- it's a c -- it -- the -- the extradition

3    petition states, and I recited the paragraphs, Judge, 3 through

4    5 and 10 through 16.   It states specifically what these

5    individuals saw.   It couldn't be any clearer.   There's no

6    translation there, because there is no evidence, Judge.   There

7    is no evidence, because those statements don't actually contain

8    that information.

9          And that's why we have submitted that.   It's

10   explanatory, Judge.   And it can't be considered contradictory,

11   because I'm submitting the very evidence which they're relying

12   upon in order to support their extradition petition.

13          And Mr. Chucone can testify about those contents; how

14   they were obtained; and from whom.

15          If anything, Judge, it is -- it is perfectly

16   admissible, because I -- I -- I -- I don't need him in order to

17   b -- I don't need him as custodian of records.   And, if hearsay

18   testimony is admissible in a extradition hearing, this is

19   exactly what hearsay would be --

20          THE COURT:   But what --

21          MR. OROZCO:   -- an individual whose testi --

22          THE COURT:   -- yeah, give me an offer of proof.   What

23   is this witness going to say?   What -- what is it that the

24   general substance of this testimony?

25          MR. OROZCO:   He can identify a document, Judge.   He

1    can -- he can say possibly that is the exact same document that

2    was relied upon -- that is contained -- I'm sorry -- that is

3    contained in the records in Cartago, in Costa Rica, and is the

4    only document that references any statements provided by the

5    three individuals named in the extradition petition.

6              THE COURT:   And -- and how does he have the -- the

7    knowledge or the ability to do that?

8              MR. OROZCO:   And I will explain it, Your Honor, in

9    further detail, I hope, if he's allowed to testify.   But

10   basically the way it functions in -- in Costa Rica, Judge, it

11   -- it is my understanding that, whenever documents are

12   submitted in a case, they are kept in a -- basically in a file,

13   if you will, in the court, in Cartago.

14             And, as documents are accumulated and as evidence is

15   accumulated, declarations and so on and so forth, those

16   documents are put into that file.   And any attorney in Costa

17   Rica can go to Cartago, request that that file be opened and

18   then take a look at it.   And everything is available, Judge,

19   everything, at any point in time.

20             And he's al -- Judge, and I would submit to the

21   Court, he's also the attorney in Costa Rica who's representing

22   Ms. Pacheco Bolanos, with regards to the matters that are --

23   that are -- that are ensuing there.   Obviously, they're waiting

24   for this extradition hearing to be over with, but he can

25   testify to that as well.

23

1          Your Honor, I would submit to the Court that it is --

2     that it is the very definition of hearsay, and hearsay is

3     admissible at an extradition hearing.

4          THE COURT:  Well, hearsay is admissible, but I mean,

5     you're -- we're jumping over a whole level of law.  I mean,

6     there -- there are -- there are facts that have been certified

7     to this Court.  I have the documents here by the -- the

8     Consulate General of the United States, by -- by authorities in

9     Costa Rica.  The -- the extradition statute is -- is -- is

10    clear on its face.  I suppose this entire line of -- of

11    argument is -- is premised on the fact that you're saying that

12    the -- the extradition statute shouldn't control.

13         MR. OROZCO:  Well --

14         THE COURT:  I -- I think that was what Mr. Bailey was

15    saying.  So we're already, to some extent, very far afield,

16    when we have documents that were signed and sealed, that

17    include the -- the indictment and, you know, to -- to this

18    Court seem authentic, within the -- the context of the removal

19    statute.

20         Having said that, and I -- I think it's going to be a

21    limited -- a -- a limited testimony that the Court will hear,

22    I'll allow this witness in and see where it's going.

23         MR. OROZCO:  Thank you, Judge.  Mr. Chucone.

24         MS. HERMAN:  Your -- Your Honor?

25         MR. OROZCO:  Your Honor, we're going to need the --

24

1    the services of the interpreter.

2              THE COURT:  Pardon me?

3              MS. HERMAN:  Your --

4              MR. OROZCO:  We're going to need the services of the

5    interpreter for Mr. Sanchez(sic).

6              THE COURT:  Okay.

7              MS. HERMAN:  Your -- Your Honor, we want to make sure

8    that the testimony of this witness is limited to how he

9    obtained the documents and not with regard to the substance of

10   what the documents say.

11             THE COURT:  I -- I agree with that.  I -- I said this

12   is going to be a very limited -- I -- I think I'm being

13   indulgent, in this respect, in allowing this.  We nor -- we

14   don't normally have witnesses such as this testify.  But go

15   ahead.

16             COURT CLERK:  The witness, if you'd please come

17   forward and make a spot.

18                       (Pause in hearing)

19   F E R N A N D O    S A N C H E Z    C H U C O N E, DEFENDANT'S

20   WITNESS, SWORN

21             THE COURT:  Now, Mr. Orozco, please get right --

22   right to the -- to the point with this witness.

23             THE WITNESS:  Fernando Sanchez Chucone.

24             THE COURT:  Have a seat.

25             MR. OROZCO:  Your Honor -- Your Honor, may I approach

25

1   the witness?

2           THE COURT:  Sure.

3                   (Pause in hearing)

4   DIRECT EXAMINATION BY MR. OROZCO:

5       Q    Mr. Chucone, before you are what has been marked as

6   Defense Exhibits D-1 through D-3.  Do you recognize those

7   documents?

8   A    Yes, sir.

9       Q    Can you tell me what D-1 is?

10  A    This is the testimony of Mariano Jesus Sandival Rodriguez.

11      Q    And when was that testimony taken?

12          MS. PARK:  Objection, Your Honor.  He is no --

13  he hasn't --

14          MR. OROZCO:  I'm establishing the foundation --

15          MS. PARK:  -- established any --

16          MR. OROZCO:  -- Judge.

17          MS. PARK:  -- foundation, Your Honor, for his

18  testimony as to what this -- what this document is.  He hasn't

19  --

20          MR. OROZCO:  That's exactly what the question is

21  asking, Judge:  when it was taken.  And --

22          MS. PARK:  You're --

23          MR. OROZCO:  -- he's going to get to that -- I'm

24  going to get to that foundation --

25          THE COURT:  I'm --

1          MR. OROZCO:  -- from another question --

2          MS. PARK:  Tech -- generally --

3          THE COURT:  Ms. Park, I -- I'm going to allow it --

4          MS. PARK:  Okay.

5          THE COURT:  -- at this point, in the --

6          MS. PARK:  Yes, Your Honor.

7          THE COURT:  -- interest as -- of -- of just moving

8  the -- the process --

9          MS. PARK:  Yes, Your Honor.

10          THE COURT:  -- forward.  Go ahead.

11  BY MR. OROZCO:

12      Q    Can you tell me when that document is dated?

13  A    December of '96.

14      Q    And how did you come to obtain this document?

15  A    This is a true copy of the document that is in the file in

16  Cartago, Costa Rica.

17      Q    And how did that document come to be in Cartago?

18  A    This document is part of the docket that is right there.

19      Q    Have you had an opportunity to review that document

20  before?

21          MS. PARK:  Again, for the record, Judge, I object to

22  this whole line of questioning.

23          THE COURT:  Well.

24  BY MR. OROZCO:

25      Q    You may respond to the question.

27

1  A    I have reviewed it many times.

2          THE COURT:  Go ahead, Mr. Orozco.

3  BY MR. OROZCO:

4      Q    Are you licensed as an attorney in Costa Rica?

5  A    Yes, sir.

6      Q    And -- and as a licensed attorney in Costa Rica, do

7  you have access to that file in Cartago?

8  A    Yes, sir.

9      Q    And have you reviewed those copies of the statements,

10  the police statements, that have been submitted to you in Costa

11  Rica?

12  A    I reviewed the original and the copy, and they are the

13  same.

14      Q    And they are -- they are exact -- they are exactly

15  the same, correct?

16  A    Correct, sir.

17      Q    Do you represent Maria Pacheco Bolanos in the matter

18  presently in Costa Rica?

19  A    Yes, together with Bernie Masala (phonetic) Rodriguez

20  Chucone.

21          MR. OROZCO:  Your Honor, at this point in time, I

22  have no more questions, based upon the fact that I've been

23  limited to his knowledge of the -- of the documents and where

24  they were obtained from.  And, based upon the fact that I've

25  laid a sufficient foundation:  he's an attorney in Costa Rica;

1   he's licensed to practice; he's viewed those documents; he's

2   seen the copies, both in Costa Rica and in here; he's

3   identified them as authentic copies, I would submit that these

4   documents be admitted into evidence as D-1, D-2, and D-3, as

5   previously submitted in our memorandum as Exhibits A, B, and C.

6           THE COURT:  Ms. Park, to you.

7   CROSS EXAMINATION BY MS. PARK:

8       Q    Mr. Chucone, you stated earlier that you're a

9   licensed attorney in Costa Rica, is that right?

10  A    Yes.

11      Q    And you represent the defendant in the trial where

12  she was charged with accessory to commit a murder?

13  A    Yes, I have been named a co-counsel.

14      Q    Okay.  So the defendant has paid you to represent her

15  in Costa Rica, is that right?

16  A    Her brother paid me.

17      Q    Okay, and how much have you paid -- been paid by --

18          MR. OROZCO:  Objection, Your Honor, rel --

19          MS. PARK:  -- her brother to --

20          MR. OROZCO:  -- relevance.  I mean -

21          MS. PARK:  Relevance --

22          MR. OROZCO:  -- if she's trying to get at the fact

23  that he's a paid attorney, I mean, what -- what difference does

24  it make if he's a paid attorney or a public defender?

25          THE COURT:  I'll allow it and -- and not much more.

29

1   This type of a --

2           MS. PARK:  Yes, Your Honor.

3           THE COURT:  -- a question, Ms. Park.

4   BY THE COURT:

5       Q    You can answer the question.

6   A    Do you mean how much did I charge?

7       Q    I think that's what was asked.

8   A    $2,000.  But, so far, I have not received one penny.

9       Q    Okay.  And are you -- do you have -- do you work at

10  any capacity with the court in Costa Rica?

11  A    For 30 years, I worked with the police in one of the

12  states in Costa Rica.  I have retired from that, and now I

13  practice as an attorney.

14      Q    Okay.  But you do not work in any capacity, in terms

15  of being a custodian of the court with respect to documents

16  such as these that you've referred to, isn't that right?

17  A    No, no, I am now retired.  I work from the outside.

18      Q    Okay.  So, in terms of obtaining these documents, all

19  you can testify to is actually going to the court to get a copy

20  of those documents, is that -- is that right?

21  A    First, I review the document, the original.  Afterwards, I

22  obtained the copies.  I did not make the copies myself.  The

23  court make the copies and gave them to me.  And the last day, I

24  went to review the documents in the docket was on Thursday, the

25  day before I came here.  I came here on Friday, and I went to

1    make sure that nothing new had been added.

2        Q    So you received a copy of these documents from the

3    court before, isn't that right?

4    A    Well, he says, not the clerk.  He says, there is a lady

5    there that takes care of you once she gives you the copies.

6        Q    Okay.  And other than that, you've had no involvement

7    in actually producing these documents.

8    A    I do not understand your question.

9        Q    You just received a copy of these documents, is that

10   right?

11   A    Yes.

12       Q    You didn't -- you didn't -- you weren't involved with

13   producing or keeping these documents for the court.

14   A    No.

15            MS. PARK:  No further questions, Your Honor.

16            THE COURT:  Thank you.  Thank you, Sara.  Okay.

17                   (Pause in hearing)

18            MR. OROZCO:  Thank you, Mr. Chucone.

19            Your Honor, I'd like to continue please.  The -- the

20   issue of -- of -- of probable cause and sufficient the evidence

21   is really what we're attacking here.  The petition doesn't

22   contain any -- any evidence, and the evidence is what is

23   necessary in order to prove -- in order to have that probable

24   cause.

25            Now, the AUSA points out to Illinois versus Gates

31

1    that standard of probable cause.  Judge, in that case the US

2    Supreme Court decided that there needed to be corroboration in

3    order to arrive at probable cause; sufficient evidence which

4    supports the facts that a reasonable person could articulate

5    would lead to someone being charged with the crime.

6            But, Judge, let's go to the Standards of Evidence

7    that I'd like to point out in the numerous cases as cited by

8    the AUSA:  *In re* <u>David</u>, 395 <u>F. Supp.</u> 803; French Extradition.

9    What happened?  Affidavits, petitions, and declarations were

10   attached -- I'm sorry, affidavits and declarations were

11   attached to the petition.

12           <u>Mackaratoma</u> (phonetic) <u>versus Reno</u>, 573 <u>F.</u> 2d 1360.

13   Again, in that case, Judge, actually, the original petition was

14   denied, because there was no evidence attached to the petition.

15   And it wasn't until after the Government supplied additional

16   declarations that the extradition was granted.

17           *In re* <u>Sindona</u>, 450 <u>F. Supp.</u> 672, <u>US v. Marasco</u>, 325

18   <u>F.</u> 2d 562.  Judge, the list goes on and on:  <u>Vangen v. Valey</u>

19   (phonetic), <u>Glucksman v. Henkel</u>, <u>Sakaguchi v.</u> -- I can't even

20   pronounce that last name – it's 520 <u>F.</u> 2d 726, Judge.  The

21   Court goes on to state that there was a ton of evidence

22   submitted on behalf of the requesting state when they were

23   murder charged from Japan.  And <u>Marino versus Marshall</u>

24   (phonetic), *In re* <u>Ryan</u>, *In re* <u>Mahood</u> (phonetic) <u>Abu Marzook</u>,

25   924 <u>F. Supp.</u> 592.  Judge, all of these cases stand for the fact

1   that the petition must be accompanied by sufficient evidence.

2         And, when you look at the actual article contained in

3   the treaty, Judge, I would submit to you that, under Article 9,

4   what does it state?  It states that, when an individual has

5   been charged with the crime, they must submit sufficient

6   evidence in order to find probable cause in the requesting

7   state, and that is here.

8         If I were an AUSA, Judge, and I came to you and I

9   said to you, Your Honor, I'd like a warrant.  And you're going

10  to base it simply upon what I say and nothing more:  there's no

11  affidavit; there's no corroborating evidence; there's nothing.

12  I -- I'm -- I'm -- I'm -- I'm hoping that Your Honor wouldn't

13  grant such a request, because you would need sufficient

14  evidence to support the issuance of that warrant, probable

15  cause, and it's not here, Judge.

16        And I want to differentiate some of the cases that

17  are brought by the AUSA, because I think what it does is it

18  really sets that standard, Judge, based upon Article 9 and that

19  requirement that the evidence be submitted with the petition.

20        Bloomfield versus Gangler(phonetic), 507 F Supp. 925;

21  Spitola (phonetic) versus US, 925 F. Supp. 615; and US versus

22  Fernandez, 99 F. Supp. 1358.  In each of those three cases,

23  Judge, the petition for extradition was granted, after the

24  defendants had been found either guilty, or after they had been

25  already sentenced after a finding of guilty in the requesting

33

1    state.

2          And in those cases the Court stated that there was no

3    need for additional supplemental evidence, based upon the fact

4    that a finding of guilt in the requesting state was per se

5    probable cause.  That is not the case here.

6          The article, Article 9, is clear in the treaty,

7    Judge.  The petition must be accompanied by sufficient evidence

8    to support a finding of probable cause.

9          I would -- I'd like to add, Judge, that, based upon

10   the fact that Article 10 states that, if the requested state

11   considers the documents furnished in support of the request to

12   be insufficient, that you may request that additional

13   documentation be provided.

14          And I would submit to Your Honor that that is, in my

15   opinion, humbly and respectfully, Judge, the only likely

16   conclusion that can be had at this point in time, based upon

17   the fact that there is nothing, not one iota, not one scintilla

18   of evidence that is submitted with the petition.

19          And, Your Honor, I'd just like to close by stating

20   that, based upon that, Republic of France versus

21   Magdum(phonetic), Six fif -- 617 F. Supp. 777 -- 777.  Judge,

22   in that case, the Court stated it succinctly, the harsh results

23   of an erroneous extradition, based upon untwerst(sic) --

24   untrustworthy accusations mitiate(phonetic) a Court against

25   applying too lenient a standard of review in determining

1   probable cause.

2          And that's what I would submit to Your Honor, at this

3   point in time.  That it is an entirely too mean standard of

4   cause to simply accept the petition extradi -- an extradition

5   petition from Costa Rica, which is certified, without any

6   accompanying evidence to actually bolster what they are

7   stating, after the fact that we have submitted, Judge,

8   statements which clarify and explain what is actually contained

9   in an extradition petition.  That it is not a fact these

10  individuals ever positively identified the defendant as having

11  -- having been at the place where the -- where the -- the

12  murder took place.

13         Judge, I would submit to you, on behalf of the

14  defendant, that, based upon that, based upon the fact that the

15  requesting state has clearly not met the burden of proof, shall

16  we say, for the sufficiency of evidence, that Your Honor deny

17  this request.  At a minimum, give them more time to supply that

18  -- that additional information.

19         I just want to point out one more thing, Judge.  When

20  this was originally scheduled, the -- requested more time.  We

21  were under the impression, and I can't state what the -- what

22  the -- what the strategy was for that, but under the impression

23  that they were going to get additional evidence.  None of that

24  was obtained.  They've had sufficient time to submit it, Judge.

25         We request that extradition petition be denied, at

35

1  this point in time, and that Ms. Bolanos be released, or, at a

2  minimum, additional time.  And we request that she be given the

3  opportunity to be given GPS monitoring, a bail, or something

4  else along those lines, Judge, so that she can go home and see

5  her family.

6        As been submitted in the brief, under Exhibit E, if

7  I'm not mistaken, the report of Ms. Kahn (phonetic), this

8  arrest and detention has had a serious impact upon the family.

9        THE COURT:  Thank you.

10       MS. PARK:  Your Honor, I want to remind the Court

11 that there is sufficient probable cause here.  In -- in October

12 of 1998, a court in Costa Rica saw fit to indict this defen --

13 this fugitive.  And they found that there was sufficient

14 evidence to, you know, indict her and bring her to trial.

15       She fled in January of 1999.  And, you know, did --

16 the Court did not have an opportunity to proceed with

17 additional proceedings against her.

18       Flight is an evidence of guilt, in this particular

19 case.  And I ask that the Court take that under consideration.

20       And I, you know, we laid out all the probable cause

21 in our brief, Your Honor.  As mentioned before, the three

22 statements that they've submitted and asked that you take into

23 evidence is merely looking to contradict the more than

24 sufficient PC that the Government has put forward.

25       That's all I have, Your Honor.  Thank you.

36

1          THE COURT:  All right.  Thank you.  I am going to

2    reserve decision on this and issue a -- a written opinion.  The

3    request for bail is denied.  There is no basis for that at this

4    point.  And indeed that issue was addressed fully in the

5    special context of an extradition proceeding, when the

6    defendant initially appeared before me.

7          Okay, Counsel?

8          MR. BAILEY:  Your Honor?

9          THE COURT:  Yes, sir?

10         MR. BAILEY:  May we be permitted to provide a

11   supplementary belief(sic) -- brief, at this point in time.  If

12   it acceptable to Your Honor, within 10 --

13         THE COURT:  You know, I -- I will allow each side to

14   submit a five-page letter brief, which should be submitted by

15   Monday, on this, if they wish.  And the only reason for that is

16   there are things that were mentioned here today in court that

17   were not mentioned as part of these papers, including a letter

18   which I -- I still haven't seen, which was made part of this

19   record.  I'm going to give each side the -- the opportunity to

20   submit five-pages of letter brief, if they wish.  Okay?

21         MR. BAILEY:  Thank you, Judge.

22         MS. PARK:  Timing wise, Your Honor?

23         THE COURT:  That should be in by Monday.

24         MS. HERMAN:  Monday.

25         MS. PARK:  Okay.  Thank you, Your Honor.

37

1          THE COURT:  Thank you.

2          MR. BAILEY:  Judge, from me --

3          THE COURT:  All right, yes.

4          MR. BAILEY:  -- have a happy holiday.

5          THE COURT:  You too.

6          MR. BAILEY:  Thank you, Judge.

7          THE COURT:  Thank you.

8          MS. HERMAN:  Thank you.

9          MS. PARK:  Thank you, Your Honor.

10         COURT CLERK:  All rise.

11         THE COURT:  Get my civil case in here right now,

12    please.

13

14

15

16

17

18

19

20

21

22

23

24

25         (Whereupon, at 11:58:48 a.m. the hearing was adjourned.)

38

## CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


S/ *Sonia Undseth*                    *February 2, 2009*
Signature of Assigned Transcriber      Date


Sonia Undseth, Assigned Transcriber
King Transcription Services
65 Willowbrook Boulevard
Wayne, NJ 07470
(973) 237-6080