# EXHIBIT G

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN THE MATTER OF THE EXTRADITION  :  Hon. Mark Falk
                   OF                                      :
MAGDELENA PACHECO BOLANOS  :  Mag. No. 08-3641
a/k/a "Maria Magdalena Pacheco Bolanos"
a/k/a "Veronica Giron Solares"
a/k/a "Maria Pacheco Carvajal"

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW

Please accept this supplemental memorandum of law in further support of Respondent Maria Pacheco Bolanos' opposition to the Government's petition for Extradition. All arguments and issues set forth in that original brief; or, argued during oral argument on December 23, 2008, are incorporated herein as if set forth in full.

## LEGAL ARGUMENT

The defense reiterates that the extradition petition is devoid of any factual documentary exhibits that are the alleged basis for the prosecution in Costa Rica; and, that the so-called 'evidence' submitted by the Government is nothing more then a prosecutor's 'conclusory re-statement' of what he/she hopes their case will prove.

Respectfully, as previously argued by the defense, the probable cause basis for the petition is deficient without a sufficient documentary basis.

**I. Other courts have required evidence to support the extradition petition where there is a similar article as contained in Article 9 of the subject treaty.**

The United States currently has extradition treaties with over 100 countries, and lacks extradition treaties with only, roughly, 50. *List of United States Extradition Treaties*, http://en.wikipedia.org/wiki/List_of_United_States_Extradition_treaties. Even in those cases where the extradition treaty is said to be one sided in favor of the requesting State, the relevant provision regarding the necessary documents to be filed, which sets a standard, is the same: at a minimum, where the treaty lists requirements

1

such as the introduction of evidence to support the extradition of defendants who have not yet been convicted, the extraditing state is required to produce actual documentary evidence other than a verified petition.

> A. The extradition petition must be accompanied by tangible evidence such as affidavits and declarations of those persons other than the requesting state's authorities.

The government's response to the defendant's brief contains a cornucopia of cases which allegedly stand for the proposition that a certified and authenticated extradition petition is sufficient evidence to satisfy probable cause. The case law, however, is quite clear that where a defendant has not been convicted, the treaty calls for "such evidence as, according to the law of the Requested State, would be necessary to justify the apprehension and commitment for trial of the person if the offense had been committed there." U.S.-C.R., Dec. 16, 1982, S. Treaty Doc. 98-17 (1984). Evidence is defined by Mirriam-Websters as "something that furnishes proof; *specifically* : something legally submitted to a tribunal to ascertain the truth of a matter." Nothing other than a petition has been submitted as proof. *Webster's Third International New Dictionary*, (Phillip B. Grove ed., G & C Merriam Co. 1961).

In fact, there is not one single case that the defendant's attorneys have found that stands for the proposition that a certified, signed extradition petition alone, is sufficient evidence to find probable cause. Moreover, 18 U.S.C. 3190 provides that "**Depositions, warrants, or other papers or copies thereof** offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be property and legally authenticated." The purpose of the statute is to afford the Government an efficient method of satisfying obligations **under extradition treaties** and supply a framework through which the Government can introduce evidence to efficiently extradite fugitives." United States v.

2

Taitz, 134 F.R.D. 288, 291(S.D.Cal. 1991), *citing* Oteiza v. Jacobus, 136 U.S. 330 (1890).

The standard that this office would argue applies is found in the caselaw and relevant treaties with almost the same language regarding non-convicted defendants and citing the same provisions in Section 3190. Cucuzzella v. Kelikoa 638 F.2d 105 (holding that the evidence was sufficient to find probable cause, where requesting state submitted affidavits that would be admissible in a Canadian Court); Abu Eiain v. Adams, 529 F. Supp. 685 (1980)(holding that there was sufficient evidence to satisfy extradition request when requesting state of Israel submitted 3 separate statements by witnesses); Messina v. US, 728 F.2d 77 (1984)(granting extradition where court was provided not only with affidavits, but audio copies of wire taps incriminating defendant with extraditable crimes); In re Lehming, 951 F. Supp. 505 (1996)(holding extradition sufficient where Germany had provided transcribed sworn statements and other court proceedings as evidence); In Re Sergio Luigi Locatelli, 468 F. Supp. 568 (1979)(granting extradition where extraditing country provided sworn testimony, forged documents and intelligence reports); Republic of France v. Moghadam, 617 F. Supp. 777 (1985)(holding insufficient probable cause even after requesting state had submitted statements and letters from people other than prosecutors to support petition); In Re Mousa Mohammed Abu Marzook, 924 F. Supp. 592 (1996)(holding extradition was proper where Israel had presented numerous affidavits in support of extradition request); Ntakirutmana v. Reno, 184 F.3d 419 (1999)(where the original extradition request was denied for lack of probable cause extraditing entity submitted additional declarations of witnesses); In re Ryan, 380 F. Supp. 270 (1973)(granting extradition request where requesting state provided depositions of eyewitnesses); Sakaguchi v. Kaulukukui, 520 F. 2d 726 (1975)(granting extradition where requesting state provided sworn confessions,

3

affidavits, autopsy reports and investigation reports); Jiminez v. Aristeguieta, 311 F. 2d 547 (1962)(granting extradition where the court found extraditing country had provided voluminous evidence in the form of **documentary** evidence); In Re Marasco, 325 F. 2d 562 (1970)(holding sufficient probable cause to grant extradition where requesting state provided numerous statements and affidavits).[1]

    a. When taking into account the relevant and similar provisions in treaties that are used for extraditing countries, and where the evidence submitted is only a certified petition, that the petition alone is sufficient only when it pertains to convicted defendants.

The government cannot point to one single case which supports their contention that the petition alone is sufficient to support probable cause. The only cases which support that contention deal with cases where the defendant has already been convicted. Extradition treaties are to be liberally construed. Valentine v. United States, 299 U.S. 5 (1936). However liberal the interpretation of the relevant provisions, there is unquestionably a requirement of evidence which has not and cannot be met here.

It also flows logically from the case law and the similar treaties.[2] In fact, based upon the respective treaty and relevant US cases, the only time a certified extradition petition is sufficient is when the defendant has been convicted. Spatola v. United States, 741 F. Supp. 362 (1991)(holding that where "there has been a judgment of conviction there is no need for an 'independent' determination of probable cause: the relator's guilt is an adjudicated fact which a fortiori establishes probable cause." Id. At 374);

---

[1] In every single one of the aforementioned cited cases there is an extradition treaty in place which literally parrots the current relevant treaty and what is necessary when the extradition request pertains to individuals who have not been convicted. Where the defendant has been convicted, the treaties between all of the countries only require a certified petition, nothing more. Thus, evidencing a standard based upon the treaty requiring supplemental, tangible evidence to support an extradition where there has been no conviction.

[2] All of the treaties pertaining to the cited cases in the previous section of this memorandum differentiate between convicted defendants and charged defendants. Thus, a standard exists which requires petitions to be supplemented by evidence. See Treaty between United States and Canada (U.S.-Can., July 9, 1974, S. Treaty Doc. 93-31 (1975)); Mexico (U.S.-Mex., May 4, 1978, S. Treaty Doc. 96-13 (1979)); Japan (U.S.-Ja., March 3, 1978, S. Treaty Doc. 96-16 (1979)); Italy (U.S.-Itl., Oct. 13, 1983, S. Treaty Doc. 98-20 (1984), France (U.S.-Fr., Apr. 23 1996, S. Treaty Doc. 105-13 (1998) and; Germany (U.S.-G.R., Jun. 20, 1978, S. Treaty Doc. 96-1 (1979)).

Bloomfield v. Gengler, 507 F. 2d 925 (1974)(where defendants were not tried in absentia, and there was a conviction, court held finding of probable cause is, in essence, a per se standard).

## II. The evidence presented by defendant was properly authenticated and explanatory, additional 'evidence' by the Government was not.

Mr. Sanchez, who testified on behalf of the defendant, properly identified the statements previously submitted through defense counsel, where those documents came from, and how they came to be in his possession. They are the only statements that Costa Rican authorities could rely upon to substantiate their conclusory statements of what certain witnesses would say. Therefore, they can only be viewed as explanatory evidence on the part of the defendant because, as they are the actual statements, they cannot arguably contradict conclusory statements, only explain them.

The Government requested the introduction of an unsigned letter, with no letterhead, as evidence in the subject matter. Again, even assuming this document could be introduced as evidence, it clearly misstates what has actually transpired in Costa Rica. See Exhibit A, certified translation of Forensic Pathology report showing that hair samples on scene and compared to defendant Maria Pacheco Bolanos do not match. Costa Rican authorities have, again, grossly misstated the facts of this case.

## CONCLUSION

For all of the foregoing reasons, the petition for extradition should be denied.

Respectfully submitted,

_____
Michael Orozco

5

# EXHIBIT A

muestra tricológica de cabello recibida en esta Sección de la Sección de Patología Forense, autopsia N° 97-2034.

3. Muestras tricológicas a nombre de quienes dijeron ser:

   a. Jesús Mariano Sandoval Rodríguez, cédula de identidad N° 1-658-730.

   b. Martín Federico Carvajal Villalobos, cédula de identidad N° 1-605-998.

   Extraídas en la Sección de Biología el 04 de diciembre de 1997 al ser las 15:00 y 14:15 horas, respectivamente.

4. Una bolsa conteniendo tierra tomada en el lugar donde apareció el cuerpo del señor José Andrés Borrasé Taylor y donde fue fotografiada la huella de rodamiento por parte de los compañeros de la Delegación de Tres Ríos.

## III. ANALISIS SOLICITADO:

Comparación de descarte.

## IV. METODO EMPLEADO:

Observación y comparación tricológica macro y microscópica.

## V. RESULTADO:

A solicitud de los investigadores encargados del caso y con la autorización de la Fiscalía, se procede a realizar la comparación de descarte entre: los elementos pilosos descritos en los puntos y 8 del Material Recibido para Análisis y los patrones tricológicos a nombre de quien dijo ser María Magdalena Pacheco Bolaños y a nombre de José Andrés Borrasé Taylor; y los resultados son los siguientes:

1. De las prendas fueron levantados elementos pilosos.
2. Algunos de los elementos pilosos descritos en el punto anterior son muestras no aptas para realizar en ellas un análisis tricológico eficiente.
3. Otros elementos pilosos presentan características físicas macro y microscópicas de pelo (elemento piloso no humano).
4. Los demás elementos pilosos cuestionados presentan características físicas macro y microscópicas de cabello y vello del "resto" del cuerpo humano de persona(s) de raza caucasoide - (afinidad biológica caucasoide).
5. Los cabellos y vellos del "resto" del cuerpo humano cuestionados NO presentan caracterís-

3/3

ticas físicas fenotípicas macro y microscópicas afines con los patrones tricológicos de cabello y vello a nombre de quien dijo ser María Magdalena Pacheco Bolaños, es decir, son diferentes.

6. Los cabellos cuestionados NO presentan características físicas fenotípicas macro y microscópicas afines con el patrón tricológico de cabello a nombre de José Andrés Borrasé Taylor, es decir, son diferentes.

7. No es posible realizar la comparación de descarte de los vellos cuestionados con el patrón de vello a nombre de José Andrés Borrasé Taylor, lo anterior por cuanto no contamos en esta Sección con muestras tricológicas que tengan esa procedencia a nombre de Borrasé Taylor.

## VI. CONCLUSIONES:

1. En relación con el punto N° 5 de los resultados, se descarta a Pacheco Bolaños como fuente de origen de los cabellos y vellos del "resto" del cuerpo cuestionados.

2. En relación con el punto N° 6 de los resultados, se descarta a Borrasé Taylor como fuente de origen de los cabellos cuestionados.

### OBSERVACIONES:

1. El análisis se concluyó el 27 de marzo de 1998, cita N° 98-C-039-BIO.

2. Se adjuntan copias de las actas de revisión, montaje y análisis.

3. De los cinco sobres recibidos en esta Sección y a los cuales se les asignó el N° 97-646-BIO. Se puede hacer notar que del sobre # 3 se indica contiene dos fibras de aparente cabello, analizadas éstas de forma macroscópica se puede hacer la observación que presentan características físicas macroscópicas de fibras sintéticas.

4. Los sobres # 4 y # 5 no estaban cerrados ni lacrados y los mismos no contenían elementos pilosos (ver acta de montaje de indicios y fibras).

5. Los elementos pilosos y fibras quedan en nuestro archivo.

Atentamente,

Licda. Marycell Molina Zamora
JEFE, A.I. SECCION DE BIOLOGIA

MMZ/mari
cc: canales

ANEXO: TODOS LOS INDICIOS RECIBIDOS EXCEPTO LOS INDICIOS QUE CORRESPONDEN A LA SOLICITUD DE DICTAMEN N° 97-636-BIO. SE REMITEN A LA SECCION DE BIOQUIMICA EL 15-04-98.

Translation                                                                 2

Trichological sample of hair received in this Section of the Division of Forensic Pathology.
Autopsy No. 97-2034

   3. Trichological samples that belong to those identified as:

      a. **Jesús Mariano Sandoval Rodríguez**
         **Identification card No. 1-658-730**

      b. **Martin Federico Carvajal Villalobos**
         **Identification card No. 1-605-998**

Collected at the Biology Section on December 04, 1997 at the 15:00 and 14:15 hours, respectively.

   4. A bag that contains soil taken from the place where the body of **Jose Borrasé Taylor** was found and where fellow officers of the Tres Ríos Police Department photographed the tread marks.

**III.-----Requested analysis:**

   Comparison for the purpose of ruling out.

**IV.-----Method used:**

   Observation and macroscopic / microscopic comparison.

**V-----Results:**

   At the request of the investigators in charge of the case, and with the authorization of the Prosecutor's Office, we proceed to rule out based on a comparison of the following :

Hair traces described in items [blank] and 8 of the material received for the purpose of testing.

Nora C. Adams<br>
Federally Certified Spanish Interpreter<br>
N.J. AOC Approved<br>
Interpreter and Translator

Trichological patterns under the name of Maria Magdalena Pacheco Bolaños, as per the identification provided by her.

Items submitted on behalf of Jose Andres Borrasé Taylor.

And the results are as follows:

1. Hair was lifted from clothing.
2. Some of the hairs described above were not suitable for effective use in a trichology test.
3. Other hair traces present physical macro/microscopic characteristics of hair (non-human hair)
4. All other hair in question presented physical macro/microscopic characteristics of hair and other body hair of a person, or persons, of Caucasian race or (Caucasian biological racial affinity.)
5. Hair and other body hair tested DOES NOT exhibit physical and phenotypical macro/microscopic characteristics that are similar to the trichological hair and body hair patterns that belong to the person who identified herself as Maria Magdalena Pacheco Bolaños, in other words, they are different.
6. The hair in question DOES NOT exhibit physical and phenotypical macro/microscopic characteristics that are similar to the trichological hair pattern under the name of José Andrés Borrasé Taylor, in other words, they are different.
7. It is not possible to conduct a ruling out comparison between the body hair in question and the body hair pattern for José Andrés Borrasé since this office is not in possession of a trichological sample of the same nature under the name of Borrasé Taylor.

## VI.----CONCLUSIONS

1. Pursuant to item No. 5, in the above results section, Pacheco Bolaños is ruled out as the source of the hair and other body hair in question.

Nora C. Adams
Federally Certified Spanish Interpreter
N.J. AOC Approved
Interpreter and Translator

2. Pursuant to item No. 6, in the above results section, Borrasé Taylor is ruled out as the source of the hair in question.

## OBSERVATIONS

1. The analysis concluded on March 27, 1998
   Entry No. 98-C-039-BIO

2. Copies attached show the record of review, assembly and analysis.

3. This Section received five envelopes that were assigned No. 97-646-BIO. It should be noted that envelope #3 contains two fibers of what appears to be hair. Further macroscopic analysis revealed that they present macroscopic physical characteristics of synthetic fiber.

4. Envelopes #4 and #5 were not closed or sealed with wax and that neither one contained hair ( see record of assembly of indications and fibers)

5. Hair traces and fibers will remain in our files.

Yours truly,

Signature
Marycell Molina Zamora, Esq.
Chief Biology Section
MMZ/mari
Cc: Canales

Attachments:

All indications received, except for those that correspond to the request for a ruling under No. 97-636-BIO were sent to the Biochemistry section on 04-15-98

Nora C. Adams
Federally Certified Spanish Interpreter
N.J. AOC Approved
Interpreter and Translator

## TRANSLATOR'S CERTIFICATION

I, Nora C. Adams, certify that the foregoing translation document is a true and exact version in English of the original document [or photocopy] presented to me in Spanish. This translation has been prepared to the best of my ability. I attest to its accuracy under penalty of perjury.

*[signature]*

Nora C. Adams, M.A.
Certified by the Administrative Office of the Courts of the United States as a Spanish Interpreter
Approved by the Administrative Office of the Courts of the State of New Jersey as Spanish Interpreter and Translator.
Member of NAJIT
Date: December 27TH, 2008

This translation bears the stamp and embossed seal of the translator on every page.

Nora C. Adams
Federally Certified Spanish Interpreter
N.J. AOC Approved
Interpreter and Translator

Case 2:08-mj-03641-MF   Document 15   Filed 12/29/2008   Page 12 of 12

12/29/2008 13:29 FAX 9732389869   BLUE COPY   ☑005