# EXHIBIT H



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

970 Broad Street, Suite 700
Newark, NJ 07102

(973)645-2700

January 7, 2009

**Via Facsimile and Regular Mail**
Honorable Mark Falk
United States Magistrate Judge
Martin Luther King, Jr. Federal Building
 & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

> Re:  In the Matter of the Extradition of Magdalena Pacheco Bolanos
>      (Case No. 08-3641)

Dear Judge Falk:

Please accept this letter in lieu of a more formal submission in response to Magdalena Pacheco Bolanos', a/k/a "Maria Magdalena Pacheco Bolanos," a/k/a "Veronica Giron Solares" and a/k/a "Maria Pacheco Carvajal" (the "Fugitive"), brief dated December 29, 2008. In addition to this letter, the Government relies and incorporates by reference its two briefs, dated October 17, 2008 and December 12, 2008, in support of its request that the Court grant the Government's request that this Court certify the case pursuant to Title 18 U.S.C. § 3184 to the Secretary of State for further consideration pending any determination that the Fugitive be extradited to Costa Rica.

I. Certification of documents

In *Cucuzzella v. Keliikoa*, the court held that Title 18 U.S.C. § 3190 governs the admissibility of statements submitted by the requesting state and the standard is satisfied by a certification that accords with the terms of the statute. 638 F.2d 105 (9th Cir. 1991); *see also Collins v. Loisel*, 259 U.S. 309. Alternatively, documents may be received in evidence if they are certified in accordance with the terms of the treaty. *Emami v. United States District Court*, 834 F.2d 1444 (9th Cir. 1987). Documents certified in accordance with Title 18 U.S.C. § 3190 are conclusively admissible. *Cucuzzella*, 638 F.2d at 106-07; *Emami*, 834 F.2d at 1451; *United States v. Fernandez-Morris*, 99 F. Supp.2d 1358, 1361 (S.D. Fl. 1999).

The documents that have been submitted in this matter by the requesting state, Costa Rica, which were appended to the Complaint and later introduced at the extradition hearing on December 23, 2008, as Government Exhibit 1, are admissible. Appropriate officers of the Department of State and its Consular sections have certified these documents in accordance with Title 18 U.S.C. § 3190. Heather K. McShain, an Attorney Advisor in the Office of the Legal

[handwritten margin note: documents contain nothing more than statements]

Adviser of the United States Department of State, has provided the Department of Justice with a Declaration (the "Declaration")[1] authenticating a copy of the diplomatic note by which the request for extradition was made along with a copy of the Treaty between the United States and Costa Rica (the "Treaty"). *See* Paragraph 2 of the Declaration. In addition, the Declaration states that the offense for which the Fugitive's extradition is sought is covered by the Treaty. *See* Paragraph 5 of the Declaration. Furthermore, the Declaration also states that the documents supporting the request for extradition are properly certified by David R. Dreher, Counsel General at the United States Embassy, in accordance with Title 18 U.S.C. § 3190. *See* Paragraph 6 of the Declaration. Mr. Dreher was the principal consular officer of the United States in Costa Rica at the time of his certification. Furthermore, Mr. Dreher also certifies that the extradition documents are "properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of the Republic of Costa Rica as required by Title 18 United States Code Section 3190." *See* Paragraph 1 of David R. Dreher's certification; *see also Cucuzzella*, 638 F.2d at 106-07.[2] Accordingly, the exhibit is presumptively what it purports to be and the Court should admit it into evidence for consideration in support of the Government's application for extradition of the Fugitive.

II. Probable cause has been established

The standard of proof in extradition proceedings is that of probable cause as defined in federal law. *Matter of Extradition of Betrand*, 1986 WL 8845, at *4 (D.N.J. June 13, 1986); *see also Sindona v. Grant*, 619 F.2d 167, 175 (2nd Cir. 1980).[3] This means evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused. *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973). The Supreme Court stated in *Collins v. Loisel*, that "[t]he function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether evidence is sufficient to justify a conviction." 259 U.S. 309, 316 (1922). That this Court accepts the sworn evidence provided by Costa Rica as true inheres in any

---

[1] The Declaration, which has been previously submitted to the Court, has been appended to the Complaint and later introduced at the extradition hearing on December 23, 2008, as Government Exhibit 1.

[2] The Fugitive argues that *Greci v. Birknes*, 527 F.2d 956 (1st Cir. 1976), is controlling. In *Greci*, the treaty between Italy and the United States specifically added an additional requirement involving the swearing of certain documents beyond the authentication requirements of Title 18 U.S.C. § 3190. However, the Treaty here does not add specific authentication or admissibility requirements; therefore, Title 18 U.S.C. § 3190 is controlling.

[3] Treaties with language similar to Article 9(4)(a) have been interpreted to establish a standard of proof, i.e., probable cause. *In re Berri*, 2008 U.S. Dist. LEXIS 77857, at *4 (E.D.N.Y. 2008); *Sidali v. INS*, 914 F. Supp. 1104, 1113 (D.N.J. 1996); *In re extradition of Molnar*, 202 F.Supp.2d 782 (N.D. Ill., 2002).

probable cause determination. *Id.* at 315-16; *Marzook I*, 924 F.Supp. 565, 592 (S.D.N.Y May 7, 1996) (court must accept as true all statements and offers of proof by the demanding state); *Matter of Extradition of Atta*, 1988 WL 66866, at *4 (E.D.N.Y. June 17, 1988).

The Fugitive's right to controvert the evidence introduced against her is limited to testimony which explains rather than contradicts the demanding country's proof. *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978), *cert. denied*, 439 U.S. 932 (1978). The district court in *Matter of Sindona* discussed the distinction between contradictory and explanatory evidence, which is "difficult to articulate," as follows: "[i]n admitting 'explanatory evidence' the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and having some reasonable chance of negating a showing of probable cause. The scope of this evidence is restricted to what is appropriate to an extradition hearing." 450 F. Supp. 672, 685 (S.D.N.Y. 1978), *aff'd*, 619 F.2d 167 (2d Cir. 1980). The extent to which the Fugitive may offer explanatory proof is largely within the discretion of the committing judicial officer. *Hooker*, 573 F.2d at 1369; *United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir. 1963), *cert. denied*, 376 U.S. 952 (1964).

The Government adopts by reference Section IV of its reply brief regarding probable cause, dated December 12, 2008. This section enumerates the many pieces of evidence compiled against the Fugitive and discusses the extensive basis for probable cause in this case. Without reiterating its entire earlier brief, the Government notes that neither the Fugitive's identity or activity is in doubt. The Fugitive herself voluntarily, in the presence of her attorney, admitted her involvement in the crime in proceedings in Costa Rica. Specifically, she provided details about having changed the tires on the vehicle she was driving - and in which the victim's body was transported to the place where it was abandoned - in spite of the fact that they were in good condition at the time. [She also stated] that she had gotten rid of a firearm, a rifle, which was consistent with the type of weapon that fired the bullets that killed [the victim]." Exhibit 1, at p. 2.

In addition to the evidence in the original package from Costa Rica, which was previously filed with this Court, the Government has recently received a letter from Roger Mata Brenes of the Cartago Office of the Public Prosecutor, in Costa Rica, which is attached to this letter brief as Exhibit 1.[4] The letter, in part, states that "one of the private investigators hired by Laureano placed [the Fugitive] at the scene, having seen her there when she arrived in her brother Juan Carlos' car. Furthermore, the physical description provided by witness Steller Vargas of the person he saw is consistent with [the Fugitive's] appearance at the time." Exhibit 1, at p. 2.

The Fugitive argued in her brief and at the extradition hearing that three contradictory,

---

[4] The letter will be certified shortly in accordance with Title 18 U.S.C. § 3190. Since it was received as an electronic attachment from the Costa Rican authorities with whom the United States is in contact, it bears sufficient indicia of reliability to be admitted pending receipt of the original document. However, it is the Government's position that there is more than sufficient evidence to satisfy probable cause here without this letter.

-3-

unauthenticated, unattested, purported statements by Martin Federico Carvajal Villalobos,[5] Mariano Jesus Sandoval Rodriguez[6] and Juan Carlos Stellar Vargas[7] undercut the substantial evidence submitted by Costa Rica against her. These statements may not be introduced at an extradition hearing as they are not authenticated, admissible or explanatory evidence. Even if these three statements were authenticated and admissible, they are merely contradictory evidence and therefore not admissible. They are not limited in scope and do not "obliterate" or undercut the substantial evidence submitted by the Government on behalf of Costa Rica. The exercise of looking at various witness statements and comparing them to each other in the context of the entirety of the evidence is a task specifically reserved for the trier of fact in Costa Rica.[8]

In addition, the Fugitive also argued in her brief and at the extradition hearing that the Costa Rican prosecutor had made "deliberate mis-statement[s]" with regard to the evidence against her. This Court should accept as true the sworn evidence provided by Costa Rica in any probable cause determination. *See Collins*, 259 U.S. at 315-16; *Marzook I*, 924 F.Supp. at 592 (court must accept as true all statements and offers of proof by the demanding state); *Matter of Extradition of Atta*, 1988 WL 66866, at *4.

Contrary to the Fugitive's claims, the Government has submitted, on behalf of Costa Rica, more than sufficient evidence to sustain a charge of accomplice to aggravated homicide against the Fugitive.[9] The submitted evidence permits this Court to apply a "totality-of-the-

---

[5] Mr. Villalobos stated that "a white car, with polarized glass arrived, driven by a woman who seemed mannish . . . ." Exhibit A, at p. 6, which was appended to Fugitive's brief dated November 3, 2008.

[6] Mr. Rodriguez stated that he "was able to observe a fair haired woman, who was driving a white vehicle." Exhibit B, at p. 4, which was appended to Fugitive's brief dated November 3, 2008.

[7] Mr. Vargas stated that "[t]he woman was like mannish, somewhat slender, or normal weight, rather." Exhibit C, at p. 2, which was appended to Fugitive's brief dated November 3, 2008.

[8] Exhibit A, which is attached to Fugitive's Supplemental Memorandum of Law, dated December 29, 2008, may not be introduced at an extradition hearing as it is not authenticated, admissible or explanatory evidence. This exhibit, which is similar to the attempted submission of the three witness statements by the Fugitive, is intended to raise fact issues reserved for a trier of fact in Costa Rica.

[9] *See Afanasjev v. Hurlburt*, 418 F.3d 1159, 1163-65 (11th Cir. 2005), *cert. denied*, 546 U.S. 993 (2005) (holding that a Lithuanian *bill of indictment containing unsworn allegations by a Lithuanian investigator and unsworn hearsay statements by witnesses and victims* constituted competent legal evidence for purposes of the extradition proceeding so that the magistrate judge did not err in relying on the bill of indictment in ordering the petitioners be extradited) (emphasis added); *see also Emami v. U.S. Dist. Court for Northern Dist. of California*, 834 F.2d 1444 (9th Cir. 1987) (holding that hearsay statements *summarized by a German prosecutor in his affidavit supporting extradition* of Iranian physician to Germany was admissible where doctor had not

circumstances analysis" and "make a practical, common-sense decision whether, given all the circumstances . . . [that] there is a fair probability that" the Fugitive committed the crime charged. *In Matter of Extradition of Glantz*, 1995 WL 495644, at *2 (S.D.N.Y. August 21, 1995) (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)).[10] Given the substantial evidence against the Fugitive, probable cause has been satisfied in this case.

The Fugitive fled Costa Rica during criminal proceedings against her.[11] The Government respectfully asks the Court to issue the necessary order certifying the case under Title 18 U.S.C. § 3184 and committing the Fugitive pending further decision by the Secretary of State as to her extradition and surrender to Costa Rica.

Respectfully submitted,
RALPH J. MARRA, JR.
Acting United States Attorney


By: /s/ Lakshmi Srinivasan Herman
Lakshmi Srinivasan Herman
Assistant United States Attorney

cc: Howard W. Bailey, Esq. (by ECF)

---

challenged authentication of affidavit and there was no conflict with specific provisions of extradition treaty) (emphasis added); *Zanazanian v. United States of America*, 729 F.2d 624 (9th Cir. 1984) (authenticated document containing police officer's report describing witnesses' detailed statements, which incriminated the witnesses themselves and amounted to confessions to participation in petitioner's illegal narcotics activities, provided sufficient competent legal evidence to support a finding of petitioner's extraditability); *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986) (unsworn hearsay statements contained in properly authenticated documents can constitute competent evidence to support a certificate of extradition); *In re Extradition of Sainez*, 2008 WL 366135, at *18 (S.D. Cal. Feb. 8, 2008) ("inconsistencies are not sufficient to negate the showing of probable cause. Instead, [they] raise issues which are appropriate for determination at a full trial . . . ."); *Murphy v. U.S.*, 1998 WL 1179110, at *3 (N.D.N.Y. December 2, 1998) ("A careful reading of the statements of all the victims shows that although the statements are unsworn and some are vague as to the exact time, here are sufficient allegations to meet the probable cause standard . . . .")

[10] "Although evidence tying defendant to shooting was circumstantial and less than overwhelming, foreign government is not required to present its entire case in this country, but rather, evidence presented need only support reasonable belief that defendant was guilty of crimes charged." *Austin v. Healy*, 5 F.3d 589, 605 (2d Cir. 1993), *cert. denied*, 510 U.S. 1165 (1994).

[11] The Fugitive's co-defendant and former boyfriend, Laureano Montero Romero, was convicted of aggravated homicide, and has served nearly 10 years in jail.

Cartago, December 16, 2008

Yorleny Matamoros Salazar

Office of the Prosecutor General of the Republic

OATRI [Office of Technical Consultancy and International Affairs] Prosecutor

I am writing to inform you of the research done on the file in case number 97-200572-349-PE against Magdalena Pacheco Bolaños and Laureano Montero for the offense of homicide. The victim in the case was José Andrés Borrasé Taylor. The information on record is as follows:

Page 354 of Volume II shows that Magdalena Pacheco was informed of the charges against her when her initial statement was taken on April 20, 1998.

On April 20, 1998, the prosecution requested that the Judge of the Criminal Court issue a three-month pretrial detention order against the defendant, which was granted. However, it was replaced on July 22, 1998 by a bond of 500,000 *colones*.

Defendant Magdalena Pacheco confronted the criminal case against her, attending court until January 4, 1999, when she failed to appear at trial during the oral argument phase of the proceedings. Oral argument had begun on December 15, 1998. Page 1058 of the file contains the Trial Court's ruling finding the defendant in contempt of court and ordering her arrest.

As a consequence of defendant Pacheco's evasion, the criminal case against her was severed from the case against her husband and codefendant Laureano Montero. All of the proceedings against her were declared null and void. The principal case continued, and defendant Montero was convicted.

The case against Magdalena Pacheco remains active pending her appearance; the statute of limitations has not expired.

Several individuals had testified during the oral proceedings that were declared null and void. Among them was Officer Adrian Coto Pereira, a member of

the Judicial Investigative Agency, whose statement linked the defendant to Borrasé Taylor's death.

Defendant Magdalena Pacheco was linked to the case as a result of the investigations conducted by the Judicial Police, introduced at trial through the testimony of Officer Adrián Coto Pereira. The evidence presented subsequently during the trial was not considered by the judges in relation to defendant Pacheco because she had fled. As such, it is impossible to know with any degree of certainty whether such evidence was relevant to establishing her criminal liability. That would require the reopening of oral argument, in order to conclude with certainty whether the evidence gathered currently meets the requisite degree of probability of the defendant's involvement.

The testimony of Homicide Officer Adrián Coto (Pages 258 and 259 of the file) provides evidence pointing to Magdalena Pacheco's probable involvement in the events, given that the defendant went to the residence when her husband Laureano was injured. Also, one of the private investigators hired by Laureano placed her at the scene, having seen here there when she arrived in her brother Juan Carlos's car. Furthermore, the physical description provided by witness Steller Vargas of the person he saw is fully consistent with Magdalena's appearance at the time.

Another important piece of evidence is the information offered voluntarily by the defendant in the presence of her attorney, in which she provided details about having changed the tires on the vehicle she was driving—and in which the victim's body was transported to the place where it was abandoned—in spite of the fact that they were in good condition at the time. [She also stated] that she had gotten rid of a firearm, a rifle, which was consistent with the type of weapon that fired the bullets that killed Borrase. Also, the pattern of the tires was consistent with the tracks located at the scene of the crime, which implicates the defendant circumstantially, [and] points to the knowledge she had of Andrés Borrase's death.

Another factor that incriminates Magdalena Pacheco in terms of the timeline was also obtained from the statement she gave in the presence of her attorney. The time at which the defendant claims to have transported her husband Laureando [sic] to the place known as San Pedro de Montes de Ocas is inconsistent. The time at which she says she did that coincides with the time of José Andrés Borrase's death, which is circumstantial evidence of her presence at the scene of the homicide. Added to this is the fact that the witness Martín saw Magdalena arrive at the house in a white vehicle, which was later determined to belong to her brother, when Laureano was injured and the victim Borrase was unconscious. Therefore, the assertion that she was involved only in picking her husband up at Plaza del Sol, and that she then changed the tires, is not logical.

According to the investigation, the vehicle that was used to dispose of the body was Magdalena's—a Toyota coupe with license plate number 155287. This

was the car that she always drove, and she was the one who went to have the tires changed even though they were in good condition. We also have the accounts given by the owner of the place where the tires were changed and by the homicide officers, and the expert witness reports that establish the similarity between the tire tracks and the tires that were seized.

The white vehicle was mentioned by the private investigator Martín. He states that Laureano had told him that his wife was on her way, and [he states] that when he left the house, he saw her arrive in a white vehicle (which, according to the investigation, is Magdalena Pacheco's brother's vehicle, to which she had access) and later exchange the vehicle in which she had arrived for a red Toyota in which they transported the deceased José Andrés Borrase.

Finally, the file does not contain any request for an expert opinion report on the hair evidence; nevertheless, it is possible that this evidence was not examined during the oral argument phase of the proceedings due to the absence of the defendant, which made it impossible to collect a sample for purposes of comparison.

Sincerely,


Róger Mata Brenes

Cartago Office of the Public Prosecutor

Case 2:09-cv-01208-JLL   Document 1-10   Filed 03/17/09   Page 10 of 10
Case 2:08-mj-03641-MF   Document 17-2   Filed 01/07/2009   Page 4 of 4
SULLIVAN                                              410-770-8998                      p.1

703-247.4295

# CERTIFICATE OF TRANSLATION

I, Aimee Sullivan, certify that I am competent to translate this document, and that the translation is true and accurate, to the best of my abilities. Archival seals, stamps, and certifications have ~~not~~ been translated here.

English Title: __Magdalena Pacheco Bolaños__

Title: __1675__

I certify under penalty of perjury, pursuant to 28 U.S.C. 1746, that the attached translation is true and correct.

Executed this __23rd__ day of __December__ 20__08__.

[or left blank with place for a stamp]

_____
Signature