# EXHIBIT J

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF MAGDALENA PACHECO BOLANOS | Hon. Mark Falk<br>Mag. No. 08-3641<br><br>OPINION |

This matter comes before the Court by way of the Government's application for the extradition of Magdalena Pacheco Bolanos ("Bolanos") pursuant to 18 U.S.C. § 3184. The Court has considered the submissions made in support of and in opposition to the instant application, and conducted a hearing on December 23, 2008. Based on the reasons set forth below, the Government's application is **granted.**

## INTRODUCTION

Petitioner, the United States of America (the "Government"), acting on behalf of the Costa Rican government, has requested the extradition to Costa Rica of Bolanos, pursuant to 18 U.S.C. § 3184[1] and the December 4, 1982 Extradition Treaty between the United States of America and Costa

---

[1] 18 U.S.C. § 3184 provides that:

> If, on such hearing, [the magistrate judge] deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

1

Rica (the "Treaty").

The accused, Bolanos, was charged as an accomplice to aggravated homicide, in violation of the Penal Court of the Judicial Circuit of Cartago, Costa Rica. She is being sought by the Costa Rican government to stand trial in connection with this charge. A warrant for her arrest was issued on January 4, 1999 by the Penal Court of the Judicial Circuit of Cartago in criminal case number 97-200572-349-PE after she failed to make a court appearance. A warrant for her international arrest was issued on May 29, 2000. Bolanos apparently fled Costa Rica while this charge was pending. Bolanos was arrested by United States officials on September 17, 2008 and remains in detention. The United States, acting on behalf of the Costa Rican government, now makes this application for her extradition.[2]

## BACKGROUND[3]

Bolanos is charged with being an accomplice to a homicide which occurred on November 18, 1997. On that date, Bolanos' boyfriend and co-defendant, Laureano Montero Romero ("Romero"), agreed to meet the victim, Jose Andres Barrase Taylor, at the home where Romero and Bolanos resided. Romero and the victim began to engage in an argument at which point Romero

---

[2] This Court's jurisdiction is premised on 18 U.S.C. § 3184 and Local Crim. R. 5.1(k).

[3] The Government has submitted several documents in support of their application including but not limited to: (a) a copy of the Treaty, and (b) a copy of the charging document. The Court's statement of facts is taken from those materials.

The Court notes that there was originally a question as to whether certain materials submitted by the Government for the Court's consideration had been properly certified. See CM/ECF Docket Entry No. 12. Bolanos now concedes that the documents submitted by Costa Rica are, in fact, properly certified. See CM/ECF Docket Entry No. 18. In any event, given the particular evidentiary standard applicable in extradition cases, the Court has carefully considered all materials submitted by the parties in rendering its decision.

2

stunned the victim with an electric stick. Romero then shot the victim with a twenty-two caliber weapon. It is alleged that Bolanos and Romero handcuffed the victim, pushed the victim into Bolanos' car and drove the victim to Los Tinoco farm in Tres Rios. At the farm, Romero shot the victim five times in the back and twice in the neck. Bolanos and Romero apparently left the victim's body in the surrounding areas of Banco Popular in San Pedro de Montes de Oca. It is further alleged that Bolanos took evidence of the crime, including a shovel and blood-stained mattress, and disposed of it. Bolanos subsequently had all four tires changed on the vehicle and washed her car presumably to remove further evidence of the crime.

The Costa Rican government found sufficient evidence to indict Bolanos. During the criminal proceedings, however, Bolanos fled Costa Rica and entered the United States illegally. Romero was tried and found guilty of aggravated homicide and has served approximately ten (10) years in jail.

## ANALYSIS

### I. Extradition Proceeding

International extradition proceedings are governed by statute, 18 U.S.C. § 3181–84 and by treaty. See generally 18 U.S.C. § 3184. Generally speaking, the purpose of this proceeding is to determine "whether there is probable cause to believe that the defendant is guilty of the crimes charged. If the evidence is sufficient, the court makes a finding of extraditability and certifies the case to the Secretary of State." Sidali v. I.N.S., 107 F.3d 191, 195 (3d Cir. 1997).

To issue a certificate of extradition, the Court's inquiry is limited to the following:

> (1) whether there is an applicable extradition treaty between the requesting country and the requested country that is in full force and effect;

3

(2) whether there are charges pending against the proposed extraditee in the requesting country;
(3) whether the treaty authorizes the extradition for the crime alleged to have been committed; and
(4) whether there is competent legal evidence to support a finding of probable cause as to the charge for which the extradition is sought.

See Bingham v. Bradley, 241 U.S. 511, 516-17 (1916); Ornelas v. Ruiz, 161 U.S. 502 (1896); In re Extradition of Fulgencio Garcia, 188 F. Supp. 2d 921 (N.D. Ill. 2002).[4] Bolanos challenges only the fourth element necessary for extradition – namely, whether the evidence produced by the Government supports a finding of probable cause.

**(a). Applicable Treaty**

The treaty at issue is the December 4, 1982 Extradition Treaty between the United States of America and Costa Rica ("Treaty"). The Government has provided a declaration from an attorney in the Office of the Legal Advisor of the Department of State certifying that the treaty is in full force and effect. In any event, neither the validity nor the applicability of the Treaty has been challenged; therefore, the Court need not dwell on this issue.

**(b). Charges Pending**

The documents submitted by the Government demonstrate that Bolanos has been charged with being an accomplice to aggravated homicide in Costa Rica. See Indictment.[5] It is undisputed that this charge against Bolanos is, in fact, pending.

---

[4] This Court's personal jurisdiction over Bolanos has not been challenged, nor has it been contested that Bolanos is the individual named in the charging document.

[5] The Government has attached certified copies of the original charging document, as well as an English translation of same.

4

**(c).   Terms of the Treaty**

The Court must now assess whether the offense at issue falls within the scope of the Treaty, and whether the offense is illegal in both countries. See generally Quinn v. Robinson, 783 F.2d 776, 783 (9th Cir. 1986) ("Under the doctrine of 'dual criminality,' an accused person can be extradited only if the conduct complained of is considered criminal by the jurisprudence or under the laws of both the requesting and requested nations."); see also Article 2(1) of the Treaty (explaining that "[a]n offense shall be an extraditable offense if it may be punished under the laws of both Contracting Parties by deprivation of liberty for a maximum period of more than one year or by any greater punishment."). In doing so, the Court construes the terms of the extradition treaty liberally. See generally Factor v. Laubenheimer, 290 U.S. 276, 293-94 (1933) ("Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intention of the parties to secure equality and reciprocity between them.").

The Court has reviewed the terms of the Treaty, and notes that Article 2 therein provides for the return of fugitives charged with or convicted of a crime in the requesting state. Heather K. McShain ("McShain"), an Attorney Advisor in the Office of the Legal Adviser of the United States Department of State has provided the Department of Justice with a Declaration which states that the offense for which Bolanos is sought is covered by the Treaty. (McShain Decl., ¶ 5). Bolanos does not contest this; therefore, the Court turns to the sufficiency of the evidence presented.

5

**(d).    Evidence Presented**[6]

The Court must now determine whether the evidence presented is sufficient to sustain the charge. See, e.g., Sidali, 107 F.3d at 195. "In essence, the court must analyze if there is probable cause to believe that the individual committed acts alleged in the extradition request." Spatola v. United States, 925 F.2d 615, 618 (3d Cir. 1991). The Court's determination in this regard does not require an adjudication of guilt or innocence,[7] a determination of whether the evidence is sufficient to justify a conviction,[8] or a prediction of whether the Costa Rican courts will convict Bolanos.[9] See

---

[6] As previously mentioned, although Bolanos originally disputed the authenticity of the documents submitted by the government of Costa Rica, see CM/ECF Docket Entry No. 12, she now concedes that such documents "are properly certified." See CM/ECF Docket Entry No. 18 at 1. The Court, therefore, need not address this issue. In any event, the Court notes that McShain has provided the Department of Justice with a declaration authenticating a copy of the diplomatic note by which the instant request for extradition was made. McShain has likewise provided a declaration authenticating a copy of the Treaty, which states that the offense for which the extradition is sought is covered by Article 2 of the Treaty, and confirming that the documents submitted in support of this application have been properly certified by the principal consular officer of the United States in Costa Rica, in accordance with 18 U.S.C. § 3190. McShain's declaration is accompanied by a certificate bearing an official United States of America Seal which has been signed by Condoleezza Rice, United States Secretary of State. Moreover, the documents submitted by McShain include documents from the Embassy of Costa Rica which have been certified by David R. Dreher, Consul General at the Untied States Embassy. At the time of his certification, Mr. Dreher was the principal consular officer of the United States in Costa Rica. Any such attack on the authenticity of the documents submitted by the government of Costa Rica would therefore be meritless. See, e.g., Messina v. United States, 728 F.2d 77, 80 (2d Cir. 1984) ("Appellants' attack on the adequacy of the Certification of Authenticity by the United States Ambassador to Italy is equally meritless.") (citing Galanis v. Pallanck, 568 F.2d 234, 240 (2d Cir.1977)).

[7] See, e.g., Peryea v. United States, 782 F. Supp. 937, 939 (D. Vt. 1991), aff'd, 970 F.2d 896 (2d Cir. 1992); In re Extradition of Ramos Herrera, 268 F. Supp. 2d 688, 693 (W.D. Tex. 2003); In re Extradition of Fulgencio Garcia, 188 F. Supp. 2d 921, 932 (N.D. Ill. 2002).

[8] See, e.g., Peters v. Egnor, 888 F.2d 713, 717 (10th Cir. 1989) (citing to Collins v. Loisel, 259 U.S. 309, 316 (1922)); United States v. Fernandez-Morris, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999).

[9] See, e.g., Ahmad v. Wigen, 910 F.2d 1063, 1066 (2d Cir. 1990).

6

generally Collins v. Loisel, 259 U.S. 309, 316 (1922).[10] Moreover, the Federal Rules of Criminal Procedure and Federal Rules of Evidence do not apply to extradition hearings. See Fed. R. Crim. P. 54(b)(5); Fed. R. Evid. 1101(d)(3).[11] Instead, as the Government points out, "unique rules of 'wide latitude,' govern reception of evidence in Section 3184 hearings." Sayne v. Shipley, 418 F.2d 679, 685 (5th Cir. 1969).

The probable cause standard applicable in extradition proceedings is similar to that used by courts in federal preliminary hearings. See generally Sindona v. Grant, 619 F.2d 167, 175 (2d Cir.1980); Thus, the Government has the burden of providing sufficient evidence that "will support a reasonable belief that [the defendant] was guilty of the crime charged." Ahmad v. Wigen, 910 F.2d 1063, 1066 (2d Cir.1990). Having reviewed the materials submitted by the Government, the Court finds that the Government has met its burden. See generally 18 U.S.C. § 3184. In particular, the Court takes note of the charging document entitled "Indictment and Request to Open Trial." According to this document, a woman matching the physical characteristics of Bolanos was seen by several witnesses before, during the course of, and after the commission of the crime. For instance,

---

[10] See also Benson v. McMahon, 127 U.S. 457, 463 (1888) ("We are not sitting in this court on the trial of the prisoner, with power to pronounce him guilty and punish him or declare him innocent and acquit him. We are now engaged simply in an inquiry as to whether, under the construction of the act of congress and the treaty entered into between this country and Mexico, there was legal evidence before the commissioner to justify him in exercising his power to commit the person accused to custody to await the requisition of the Mexican government.").

[11] See generally U.S. ex rel. Eatessami v. Marasco, 275 F.Supp. 492, 494 (S.D.N.Y. 1967) ("The federal courts have always recognized that an extradition magistrate need not be bound by the specific rules of evidence or rules governing the admissibility of evidence in such proceedings as these. Similarly, an extradition magistrate need not be concerned about acting only upon evidence which would be sufficient to convict under the laws of the place where he sits. Hearsay evidence, for example, may be considered by a judge or United States Commissioner sitting as an extradition magistrate.")

7

the following witnesses identified a woman with physical characteristics matching those of Bolanos at the initial scene of the crime: (a) two private investigators who were present at Bolanos' home on the date and time in question and saw a woman matching her description as they were leaving the house, and (b) a witness who happened to be across the street from Bolanos' home on the date and time in question who saw a woman matching her description carrying the victim out of the house while the victim was bound and yelling. Additionally, the owner of a local tire shop has submitted a statement certifying that a woman with Bolanos' physical characteristics, driving a car with the same make and model as the car allegedly driven by Bolanos on the date in question, had her tires changed at his shop on the day following the murder. Last but not least, the Court notes that Bolanos admits that her identity is "not in question." See CM/ECF Docket Entry No. 18 at 2.[12]

Probable cause is defined as "[a] reasonable ground for belief in certain alleged facts." BLACK'S LAW DICTIONARY 1201 (6th ed. 1990). Although much of the evidence described in the charging document is circumstantial at best, Costa Rica is not required to present its entire case in this country, nor is it appropriate for this Court to assess whether the evidence presented is sufficient to justify a conviction.[13] Instead, the Court must only determine whether there was sufficient legal

---

[12] It should also be noted that the Government has submitted a document indicating that Bolanos "voluntarily, in the presence of her attorney, admitted her involvement in the crime. . . . Specifically, she provided details about having changed the tires on the vehicle she was driving – and in which the victim's body was transported to the place where it was abandoned – in spite of the fact that they were in good condition at the time. [She also stated] that she had gotten rid of a firearm, a rifle, which was consistent with the type of weapon that fired the bullets that killed [the victim]." CM/ECF Docket Entry No. 17 at 3. The document upon which the Government relies in support of this contention appears to be an uncertified internal memorandum written by Yorleny Matamoros Salazar of the Cartago Office of the Public Prosecutor. See id. at Ex. 1. Although noteworthy, the Court need not rely on this document in reaching its decision.

[13] See generally Austin v. Healy, 5 F.3d 589, 605 (2d Cir. 1993) ("No doubt, the evidence tying Austin to the shooting of Wilson is circumstantial, and less than overwhelming. However, the

8

evidence before the prosecutor in Costa Rica to justify his or her decision to charge Bolanos with the crime at issue. Based on the witness statements as set forth in the Indictment, the totality of the circumstances, and given this Court's limited function in the context of this criminal proceeding, the Court finds sufficient probable cause to sustain the charge.[14] The Court's inquiry ends here.[15]

---

foreign government is not required to present its entire case in this country. The evidence presented need only 'support a reasonable belief that [Austin] was guilty of the crime[s] charged.'"), cert. denied, 510 U.S. 1165 (1994); Collins, 259 U.S. at 316 ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction.").

[14] The Court notes that Bolanos has submitted several pieces of evidence, including what appears to be the actual statements of three of the witnesses referred to in the Indictment: (a) Martin Villalobos, (b) Mariano Rodriguez, and (c) Juan Vargas. Bolanos admits that such statements were utilized by Costa Rica to establish probable cause and are referred to in the Indictment. Bolanos now urges this Court to review the contents of these statements. In this regard, she argues that "[n]ot only does the witness not identify the 'woman,' the statement provides no description as to the race, age, build, or any other identifying characteristic from which an identification could be developed or compared." Bolanos also claims that the "Costa Rican prosecutor, instead of providing the court with an accurate interpretation of what the witness actually said, 'interprets' this non-identification into an identification by his conclusory statement that it was Mrs. Bolanos." There is no question that such evidence has been offered by Bolanos to contradict the findings of the Costa Rican prosecutor. Contradictory evidence may not be considered by this Court. See, e.g., In re Extradition of Sindona, 450 F.Supp. 672, 685 (S.D.N.Y. 1978) ("The rule is that the accused has no right to introduce evidence which merely contradicts the demanding country's proof, or which only poses conflicts of credibility."); see generally Collins, 259 U.S. at 316 ("Collins was allowed to testify, and it was clearly the purpose of the committing magistrate to permit him to testify fully, to things which might have explained ambiguities or doubtful elements in the prima facie case made against him."). Even if the Court were to construe such evidence as explanatory – rather than contradictory – the Court may not weigh the evidence and make factual determinations. See generally Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir. 1986), cert. denied, 479 U.S. 882 (1986) ("The magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only whether there is competent evidence to support the belief that the accused has committed the charged offense."); Jhirad v. Ferrandina, 536 F.2d 478, 484 (2d Cir.), cert. denied, 429 U.S. 833 (1976) (explaining that extradition proceedings are "not to be converted into a dress rehearsal for trial."). Such a task is specifically reserved for the trier of fact in Costa Rica.

[15] See 18 U.S.C. § 3184 (stating that if the magistrate judge deems the evidence sufficient to sustain the charge, "he **shall** certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities

9

## CONCLUSION

Based on the reasons set forth above, the request of the government of Costa Rica for the extradition of Magdalena Bolanos is **granted**. This ruling will be certified to the Secretary of State, together with a copy of all evidence received in this proceeding. The Court will issue a warrant for the commitment of Bolanos, so that she may be held until surrender to the Costa Rican authorities is made.

**DATE: January 20, 2009**              /s/ Mark Falk
                                        **MARK FALK**
                                        **United States Magistrate Judge**

---

of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.") (emphasis added).

10