ATTORNEYS AT LAW

HOWARD W. BAILEY                                                   MICHAEL A. OROZCO

---

THE NATIONAL NEWARK BUILDING
744 BROAD STREET, SUITE 1901, NEWARK, N.J. 07102

PHONE: 973-693-4408                          WEB: WWW.NJ-CRIMINALDEFENSE.COM
FAX:   973-735-2719                                WWW.BOLEGAL.COM

MATTHEW BRYANT, *OF COUNSEL
*MEMBER OF NEW YORK BAR

August 31, 2009

**Via Hand Delivery**
U.S. Pre Trial Services Agency
District of New Jersey
Martin Luther King, Jr. Federal Courthouse
50 Walnut Street - Room 1018
Newark, New Jersey 07101

      Re:    **USA v. Maria Carvajal**
              **a/k/a Maria Magdalena Pacheco Bolanos**
              **aka Veronica Giron Solares**
              **Case No: 09-CV-1208**
              **Formerly Mag. No. 08-3641 (MF)**

Dear Sir/Madam:

      Please accept this letter in support of my client's application for bail. Based upon my conversations with Mrs. Carvajal and her family, there is currently one property being offered as part of this bail package. The defense is suggesting that a property bond, using the property listed below which has an estimated value of $613,000.00 and , $20,000.00 in cash, and a third party custodian is sufficient to ensure defendant's presence at all court appearances.

Property
Mr. and Mrs. Fonseca
125 Springfield Avenue
Summit, NJ 07901
Property value according to appraisal: $613,000.00
Current Mortgage balance: $387,499.48
Current equity value: $225,500.52.

      I have explained the obligations that owners would have for the purposes of being personally responsible on a property bond, and how the government may force the transfer of said property should the defendant fail to appear. By and through the defendant's/appellant's husband, Marcos Carvajal, we are prepared to also deposit $20,000.00 cash with the court.

I have also confirmed with my client and her family that her husband, Marcos Carvajal, is willing to serve as the home monitor and report to Pre-Trial Services on a regular basis regarding the defendant's actions while out on bail. Once and if released, the defendant Maria Carvajal would reside with her husband and 3 children at

244 Water Lane South
Wantagh, NY 11793

Her husband, Marcos Carvajal, can be reached at 516 707 4769. We would finally note that the defendant is currently undergoing cancer treatment and is in an extremely weak state. She is unable to dress herself or feed herself. The care that she is receiving at Hudson County Jail is deficient and is not the same level of care she could receive from a private facility. At this point, she is in dire need of the proper medical attention. For humanitarian purposes, we respectfully submit that bail is proper at this point. Mrs. Carvajal's family has already sent her medical records to Dr. Pamela Drullinsky and Dr. Lisa Sclafani at Memorial Sloan Kettering.

Based upon the foregoing, it is respectfully submitted that there is sufficient financial responsibility on the part of the parties herein to ensure the defendant's appearance throughout the pendency of this matter, coupled with the defendant's consent to bracelet monitoring. Therefore, under these facts and circumstances the defendant respectfully requests that the bail be granted. Should you have any questions please do not hesitate to contact my office.

Respectfully submitted,


Michael Orozco

MAO/mao
cc: Lakshmi Herman, AUSA (Via Hand Delivery) w/enclosures
Honorable Jose Linares (Via Hand Delivery) w/enclosures

# UNIFORM RESIDENTIAL APPRAISAL REPORT

File No.

## Subject

| Field | Value |
|---|---|
| Property Address | 425 SPRINGFIELD AVENUE | City SUMMIT | State NJ | Zip Code |
| Legal Description | BLOCK 3602 LOT 2 | County UNION |
| Assessor's Parcel No. | 2918-03602-0000-00002 |
| Tax Year | 2009 |
| R.E. Taxes $ | 6,488.00 |
| Special Assessments $ | 0.00 |
| Borrower | FONSECA |
| Current Owner | FONSECA |
| Occupant | ☒ Owner ☐ Tenant ☐ Vacant |
| Property rights appraised | Y Fee Simple ☐ Leasehold |
| Project Type | ☐ PUD ☐ Condominium (HUD/VA only) |
| HOA $ | N/A /Mo. |
| Neighborhood or Project Name | N/A |
| Map Reference | DIGITAL |
| Census Tract | 380.00 |
| Sale Price $ | N/A |
| Date of Sale | N/A |
| Description and $ amount of loan charges/concessions to be paid by seller | N/A |
| Lender/Client | FONSECA |
| Address | 125 SPRINGFIELD AVENUE SUMMIT, NJ 07901 |
| Appraiser | JOHN MACK |
| Address | 39 WHITFIELD STREET, CALDWELL, NJ 07006 |

## Neighborhood

| Location | ☐ Urban ☒ Suburban ☐ Rural | Predominant occupancy | Single family housing PRICE $(000) / AGE (yrs) | Present land use % | Land use change |
|---|---|---|---|---|---|
| Built up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | 300 Low 1 | One family 90 | ☒ Not likely ☐ Likely |
| Growth rate | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner | | 2-4 family 2 | ☐ In process |
| Property values | ☐ Increasing ☐ Stable ☒ Declining | ☐ Tenant | 1,000+ High 150+ | Multi-family 3 | To: |
| Demand/supply | ☐ Shortage ☒ In balance ☐ Over supply | ☒ Vacant (0-5%) | Predominant | Commercial 5 | |
| Marketing time | ☐ Under 3 mos. ☒ 3-6 mos. ☐ Over 6 mos. | ☐ Vac.(over 5%) | 650 65 | VACANT | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: THE SUBJECT'S NEIGHBORHOOD BOUNDARIES ARE ROUTE 24 TO THE NORTH & EAST, MORRIS AVENUE TO THE SOUTH, SUMMIT AVENUE TO THE WEST

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): THE SUBJECT IS LOCATED IN A NEIGHBORHOOD WITH MIXED STYLE DWELLINGS. ADEQUATE ACCESS TO SCHOOLS, LOCAL SHOPPING AND PUBLIC TRANSPORTATION. ENTRANCE TO MAJOR HIGHWAYS ARE WITHIN ONE MILE.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): A REVIEW OF THE MARKET AREA INDICATES A DECLINING RESALE MARKET. SUPPLY AND DEMAND CONTINUE TO BE IN BALANCE. TYPICAL MARKETING TIME IS WITHIN SIX MONTHS.

## PUD

Project Information for PUDs (If applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? ☐ Yes ☒ No N/A
Approximate total number of units in the subject project N/A   Approximate total number of units for sale in the subject project N/A
Describe common elements and recreational facilities: N/A

## Site

| Field | Value | Field | Value |
|---|---|---|---|
| Dimensions | IRREGULAR | Topography | SLOPING |
| Site area | .19 ACRE | Size | AVERAGE FOR AREA |
| Corner Lot | ☐ Yes ☒ No | Shape | IRREGULAR |
| Specific zoning classification and description | RESIDENTIAL | Drainage | APPEARS ADEQUATE |
| Zoning compliance | ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | View | AVERAGE |
| Highest & best use as improved | ☒ Present use ☐ Other use (explain) | Landscaping | AVERAGE FOR AREA |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private |
|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | MACADAM | ☒ | ☐ |
| Gas | ☒ | | Curb/gutter | BEL BLOCK | ☒ | ☐ |
| Water | ☒ | | Sidewalk | CONCRETE | ☒ | ☐ |
| Sanitary sewer | ☒ | | Street lights | YES/OVERHEAD | ☒ | ☐ |
| Storm sewer | ☒ | | Alley | NONE | | |

Driveway Surface PAVED ASPHALT
Apparent easements TYPICAL UTILITIES
FEMA Special Flood Hazard Area ☐ Yes ☒ No
FEMA Zone C   Map Date 9/20/2006
FEMA Map No. 34039C0010F

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): NO APPARENT ADVERSE EASEMENTS/ENCROACHMENTS OR UNFAVORABLE SITE CONDITIONS. SITE CHARACTERISTICS, UTILITIES, IMPROVEMENTS ARE TYPICAL OF THIS MARKET AREA. NO DETRIMENTS TO VALUE/MARKETABILITY.

## Description of Improvements

| GENERAL DESCRIPTION | | EXTERIOR DESCRIPTION | | FOUNDATION | | BASEMENT | | INSULATION | |
|---|---|---|---|---|---|---|---|---|---|
| No. of Units | ONE | Foundation | CONC/MSY | Slab | NONE | Area Sq. Ft. | 594 | Roof | ☐ |
| No. of Stories | TWO | Exterior Walls | VINYL/BRICK | Crawl Space | NONE | % Finished | 95 | Ceiling | ☐ |
| Type (Det./Att.) | DETACHED | Roof Surface | ASPHSHNGL | Basement | YES/PART | Ceiling | DROP CEIL | Walls | ☐ |
| Design (Style) | COLONIAL | Gutters & Dwnspts. | ALUMINUM | Sump Pump | NONE NOTED | Walls | DRY WALL | Floor | ☐ |
| Existing/Proposed | EXISTING | Window Type | COMBO | Dampness | NONE NOTED | Floor | CARP/TILE | None | ☐ |
| Age (Yrs.) | 46 | Storm/Screens | YES | Settlement | NONE NOTED | Outside Entry | YES | Unknown | ☒ |
| Effective Age (Yrs.) | 5 | Manufactured House | NO | Infestation | NONE NOTED | | | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | 1 | | 1 | | | 594 |
| Level 1 | | 1 | 1 | 1 | 1 | | | 1 | .5 | | | 1,188 |
| Level 2 | | | | | | | | 4 | 1 | | | 891 |

Finished area above grade contains: 9 Rooms; 5 Bedroom(s); 1.5 Bath(s); 2,079 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | TILE/VIN/HDW/AVG | Type | RAD | Refrigerator | ☐ | None | ☐ | Fireplace(s) # | ☐ | None | ☐ |
| Walls | DRY WALL/AVG | Fuel | GAS | Range/Oven | ☒ | Stairs | ☒ | Patio | ☒ | Garage | # of cars |
| Trim/Finish | WOOD/AVG | Condition | AVG | Disposal | ☐ | Drop Stair | ☐ | Deck | ☐ | Attached | |
| Bath Floor | CERAMIC/AVG | COOLING | | Dishwasher | ☒ | Scuttle | ☐ | Porch | ☐ | Detached | |
| Bath Wainscot | CERAMIC/AVG | Central | NONE | Fan/Hood | ☒ | Floor | ☒ | Fence | ☐ | Built-In | TWO CAR |
| Doors | WOOD/AVG | Other | N/A | Microwave | ☐ | Heated | ☐ | Pool | ☐ | Carport | |
| | | Condition | N/A | Washer/Dryer | ☐ | Finished | ☐ | | | Driveway | YES |

Additional features (special energy efficient items, etc.): COVERED PATIO, NEW KITCHEN WITH GRANITE COUNTERS AND NEW APPLIANCES

## Comments

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.: CONDITION OF IMPROVEMENTS RATED AVERAGE. NO FUNCTIONAL DEPRECIATION ASSIGNED. QUALITY OF CONSTRUCTION CONSIDERED AVERAGE. EXTERNAL CONDITION DUE TO THE SUBJECT'S TRAFFIC STREET LOCATION.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property.: NO KNOWN OR APPARENT ENVIRONMENTAL CONDITIONS NOTED AT THE TIME OF INSPECTION THAT WOULD BE CONSIDERED DETRIMENTAL TO SUBJECT'S VALUE OR MARKETABILITY.

# UNIFORM RESIDENTIAL APPRAISAL REPORT    File No.

## Valuation Section

### COST APPROACH

ESTIMATED SITE VALUE ............................................... = $ 250,000

ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS:

| | | | |
|---|---|---|---|
| Dwelling | 2,079 Sq. Ft. @ $ 175.00 | = $ | 363,825 |
| | 594 Sq. Ft. @ $ 50.00 | = | 29,700 |
| COVERED PATIO | | = | 10,000 |
| Garage/Carport 594 Sq. Ft. @ $ 35.00 | | = | 20,790 |
| Total Estimated Cost New | | = $ | 424,315 |
| Less  Physical  Functional  External | | | |
| Depreciation 21,216 | 10,000 | = $ | 31,216 |
| Depreciated Value of Improvements | | = $ | 393,099 |
| "As-is" Value of Site Improvements | | = $ | 7,000 |
| INDICATED VALUE BY COST APPROACH | | = $ | 650,099 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property): NO FUNCTIONAL DEPRECIATION ASSIGNED. EXTERNAL CONDITION DUE TO THE SUBJECT'S TRAFFIC STREET LOCATION. SITE VALUE'S % OF TOTAL VALUE FOR SIMILAR PROPERTIES IN THIS MARKET AREA ARE TYPICALLY OVER 30%. ESTIMATED REMAINING ECONOMIC LIFE 45 TO 50 YEARS. SEE SKETCH.

### SALES COMPARISON ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 125 SPRINGFIELD AVENUE SUMMIT | 9 MIDDLE AVENUE SUMMIT | | 115 ASHWOOD AVENUE SUMMIT | | 32 MOUNTAIN AVENUE SUMMIT | |
| Proximity to Subject | | 0.28 miles | | 0.91 miles | | 0.92 miles | |
| Sales Price | $ N/A | $ 619,000 | | $ 575,000 | | $ 661,000 | |
| Price/Gross Living Area | $ | $ 294.62 | | $ 360.05 | | $ 234.56 | |
| Data and/or Verification Source | INSPECTION | MLS# 2657528 GARDEN STATE MLS | | MLS# 2603122 GARDEN STATE MLS | | MLS# 2685198 GARDEN STATE MLS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. |
| Sales or Financing Concessions | | N/A NONE KNOWN | | CONV MTGE NONE KNOWN | | CONV MTGE NONE KNOWN | |
| Date of Sale/Time | | 5/14/09-31 | -6,000 | 2/13/09-69 | -10,000 | 7/23/09-6 | |
| Location | AVERAGE | TRAFFIC ST | | AVERAGE | | TRAFFIC ST | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | -10,000 | FEE SIMPLE | |
| Site | .19 ACRE | .18 ACRE | | .15 ACRE | | .25 ACRE | -1,000 |
| View | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Design and Appeal | COLONIAL | COLONIAL/AVG | | COLONIAL/AVG | | COLONIAL/AVG | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Age | 46 | 56 | | 61 | | 36 | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Above Grade Room Count | Total 9 Bdrms 5 Baths 1.5 | Total 9 Bdrms 3 Baths 2.5 | +18,000 | Total 7 Bdrms 3 Baths 1.5 | +20,000 | Total 11 Bdrms 7 Baths 2.5 | -22,000 |
| Gross Living Area | 2,079 Sq. Ft. | 2,101 Sq. Ft. | | 1,597 Sq. Ft. | +19,000 | 2,818 Sq. Ft. | -26,000 |
| Basement & Finished Rooms Below Grade | FULL BSMNT UNFINISHED | FULL BSMNT UNFINISHED | -5,000 +10,000 | FULL BSMNT UNFINISHED | -5,000 +10,000 | FULL BSMNT UNFINISHED | -5,000 +10,000 |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | RAD/NONE | FWA/CAC | -5,000 | RAD/STM/CAC | -5,000 | FWA/CAC | -5,000 |
| Energy Efficient Items | THERM/PANE | THERM/PANE | | THERM/PANE | | THERM/PANE | |
| Garage/Carport | 2 CAR/DRVWY | 1 CAR/DRVWY | +5,000 | 1 CAR/DRVWY | +5,000 | 1 CAR/DRVWY | +5,000 |
| Porch, Patio, Deck, Fireplace(s), etc. | NONE NONE | DECK FIREPLACE | -5,000 -5,000 | NONE FIREPLACE | -5,000 | DECK FIREPLACE | -5,000 -5,000 |
| Fence, Pool, etc. | COVER PATIO | NONE | +5,000 | PATIO | +3,000 | PATIO | +3,000 |
| Net Adj. (total) | | ☒ + ☐ - $ | 12,000 | ☒ + ☐ - $ | 22,000 | ☐ + ☒ - $ | 51,000 |
| Adjusted Sales Price of Comparable | | Net 1.9% Gross 10.3% $ | 631,000 | Net 3.8% Gross 16.0% $ | 597,000 | Net 7.7% Gross 13.2% $ | 610,000 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): DATE OF SALE ADJUSTMENTMENT DUE TO THE SUBJECT'S LOCATION IN A DECLINING MARKET. (ADJUSTMENT BASED ON 1/3 PERCENT PER MONTH AND ROUNDED) SITE ADJUSTMENT BASED ON $10,000 PER ACRE AND ROUNDED. GLA BASED ON $40 PER SQUARE FOOT AND ROUNDED. COMPARABLE PHOTOS USED FROM THE APPRAISER'S FILES. EQUAL WEIGHT GIVEN TO ALL SALES IN THE FINAL DETERMINATION OF MARKET VALUE.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | NO PRIOR SALES | NO PRIOR SALES | NO PRIOR SALES | NO PRIOR SALES |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: A REVIEW OF AVAILABLE TAX AND MLS RECORDS SHOWS NO PRIOR LISTINGS OR SALES OF THE COMPARABLES OTHER THAN THE REPORTED SALES AND LISTINGS IN THE LAST TWELVE MONTHS.

INDICATED VALUE BY SALES COMPARISON APPROACH ............................................... $ 613,000

INDICATED VALUE BY INCOME APPROACH (If Applicable)    Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $

This appraisal is made ☒ "as is"  ☐ subject to the repairs, alterations, inspections or conditions listed below  ☐ subject to completion per plans & specifications.

Conditions of Appraisal: APPRAISAL MADE "AS IS" NO PENDING CONDITIONS NOTED.

### RECONCILIATION

Final Reconciliation: "SALES COMPARISON" WHEN ADEQUATELY SUPPORTED, THIS METHOD BEST INDICATES ACTIONS OF THE MARKET FOR THIS TYPE PROPERTY AND ACCORDINGLY, IS GIVEN "MOST WEIGHT" IN THE FINAL ANALYSIS OF SUBJECT PROPERTY'S ESTIMATE OF MARKET VALUE.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA form 1004B (Revised               ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF AUGUST 7, 2009 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 613,000

APPRAISER:
Signature /s/ John Mack
Name JOHN MACK
Date Report Signed August 09, 2009
State Certification # _____ State
Or State License # 42RA00320500 State NJ

SUPERVISORY APPRAISER (ONLY IF REQUIRED):
Signature _____
Name _____
Date Report Signed _____
State Certification # _____ State
Or State License # _____ State

☐ Did  ☐ Did Not Inspect Property

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

* Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** 125 SPRINGFIELD AVENUE, SUMMIT, NJ 07901

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: *[signed]* | Signature: |
| Name: JOHN MACK | Name: |
| Date Signed: August 09, 2009 | Date Signed: |
| State Certification #: | State Certification #: |
| or State License #: 42RA00320500 | or State License #: |
| State: NJ | State: |
| Expiration Date of Certification or License: 12/31/2009 | Expiration Date of Certification or License: |
| | ☐ Did  ☐ Did Not Inspect Property |

## Subject Photo Page

| Borrower/Client | SEOUSECA | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 125 SPRINGFIELD AVENUE | | | | | |
| City | SUMMIT | County | UNION | State | NJ | Zip Code 07901 |
| Lender | FONSECA | | | | | |



**Subject Front**

| | |
|---|---|
| 125 SPRINGFIELD AVENUE | |
| Sales Price | N/A |
| Gross Living Area | 2,079 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 1.5 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | .19 ACRE |
| Quality | `AVERAGE |
| Age | 46 |



**Subject Rear**



**Subject Street**

Form PICPIX.SR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Subject Photo Page

| Borrower | | | | |
|---|---|---|---|---|
| Property Address | 125 SPRINGFIELD AVENUE | | | |
| City SUMMIT | County UNION | | State NJ | Zip Code 07901 |
| Lender FONSECA | | | | |



**Subject Interior**

125 SPRINGFIELD AVENUE
Sales Price         N/A
Gross Living Area   2,079
Total Rooms         9
Total Bedrooms      5
Total Bathrooms     1.5
Location            AVERAGE
View                AVERAGE
Site                .19 ACRE
Quality             `AVERAGE
Age                 46



**Subject Interior**



**Subject Interior**

Form PICPIX.SR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

| | |
|---|---|
| Borrower/Client | FONSECA |
| Property Address | 125 SPRINGFIELD AVENUE |
| City | SUMMIT |
| County | UNION |
| State | NJ |
| Zip Code | 07901 |
| Lender | FONSECA |



### Comparable 1
| | |
|---|---|
| 9 MIDDLE AVENUE | |
| Prox. to Subject | 0.28 miles |
| Sale Price | 619,000 |
| Gross Living Area | 2,101 |
| Total Rooms | 9 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | TRAFFIC ST |
| View | AVERAGE |
| Site | .18 ACRE |
| Quality | AVERAGE |
| Age | 56 |



### Comparable 2
| | |
|---|---|
| 115 ASHWOOD AVENUE | |
| Prox. to Subject | 0.91 miles |
| Sale Price | 575,000 |
| Gross Living Area | 1,597 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.5 |
| Location | AVERAGE |
| View | AVERAGE |
| Site | .15 ACRE |
| Quality | AVERAGE |
| Age | 61 |



### Comparable 3
| | |
|---|---|
| 32 MOUNTAIN AVENUE | |
| Prox. to Subject | 0.92 miles |
| Sale Price | 661,000 |
| Gross Living Area | 2,818 |
| Total Rooms | 11 |
| Total Bedrooms | 7 |
| Total Bathrooms | 2.5 |
| Location | TRAFFIC ST |
| View | AVERAGE |
| Site | .25 ACRE |
| Quality | AVERAGE |
| Age | 36 |

**Building Sketch**

| Borrower/Client | FONSECA | | | | |
|---|---|---|---|---|---|
| Property Address | 125 SPRINGFIELD AVENUE | | | | |
| City | SUMMIT | County | UNION | State NJ | Zip Code 07901 |
| Lender | FONSECA | | | | |

2:09-cv-01208-JLL   Document 9   Filed 09/01/09   Page 10 of 13



| Borrower/Client | FONSECA | | | | |
|---|---|---|---|---|---|
| Property Address | 125 SPRINGFIELD AVENUE | | | | |
| City | SUMMIT | County | UNION | State NJ | Zip Code 07901 |
| Lender | FONSECA | | | | |



Form MAP.LOC — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

Primary Phone Number: (908) 598-1923
Secondary Phone Number:

**Property Address:** 125 SPRINGFIELD AVE,
SUMMIT, NJ 07901

| Account Information as of | 07/09/09 |
|---|---|
| Loan Number | 1004397020 |
| Interest Rate | 6.625% |
| Principal Balance | $387,499.48 |
| Escrow Balance | $1,566.88 |
| Unapplied Funds | $ .00 |
| Funds Advanced by IMS (1,2) | $ .00 |
| Principal Paid YTD | $3,696.80 |
| Interest Paid YTD | $15,057.32 |
| Property Taxes Paid YTD | $5,011.99 |
| Hazard Insurance Paid YTD | $918.00 |

004611 RE
#BWNDXCT
#6680207934001079#

JORGE FONSECA
125 SPRINGFIELD AVENUE
SUMMIT NJ 07901-4031

For statement questions,
please call Customer Service at
1.800.781.7899

**08/01/09 Payment Options:**

| | |
|---|---|
| Principal and/or Interest | $2,677.89 |
| Escrow | $625.84 |
| Optional Products (2) | $ .00 |
| Other (2) | $ .00 |
| **Payment Amount** | $3,303.73 |
| Past Due Payment(s) | $ .00 |
| Total Payment Due | $3,303.73 |
| Unpaid Late Charges | $ .00 |
| Returned Payment Fees | $ .00 |
| Other Unpaid Charges (2) | $ .00 |
| Funds Advanced by IMS (1,2) | $ .00 |
| **Total Amount Due** | $3,303.73 |
| After 08/16/09 please pay: (3) | $3,437.62 |

**Payment Due:**
08/01/09

1. Unless otherwise agreed upon, additional funds may be applied to advances prior to being applied to fees/charges.
2. Itemized detail available upon request.
3. Payment calculation includes Late Charge fee.

| Date | Transaction | Total | Principal/Deferred Interest | Interest | Escrow | Fees/Misc. |
|---|---|---|---|---|---|---|
| 07/09/09 | Add'l Prin App | 1.27 | 1.27 | | | |
| 07/09/09 | Funds Applied | 3,303.73 | 535.61 | 2,142.28 | 625.84 | |
| 07/08 | City Tax Disb | 1,767.63- | SUMMIT CITY | | 1,767.63- | |

**ONLINE ACCESS TO YOUR LOAN INFORMATION IS JUST A CLICK AWAY!**
To find out more, see the back of this statement.

 **IndyMac** Case 2:09-cv-01208-JLL Document 9 Filed...

Primary Phone Number: (908) 598-1923
Secondary Phone Number:

**Property Address:** 125 SPRINGFIELD AVE,
SUMMIT, NJ 07901

008348 RE
#BWNDXCT
#6680207934001061#

JORGE FONSECA
125 SPRINGFIELD AVENUE
SUMMIT  NJ  07901-4031

### Account Information

| | |
|---|---|
| Account Information as of | 06/08/09 |
| Loan Number | 1004397020 |
| Interest Rate | 6.625% |
| Principal Balance | $388,036.36 |
| Escrow Balance | $2,708.67 |
| Unapplied Funds | $ .00 |
| Funds Advanced by IMS (1,2) | $ .00 |
| Principal Paid YTD | $3,159.92 |
| Interest Paid YTD | $12,915.04 |
| Property Taxes Paid YTD | $3,244.36 |
| Hazard Insurance Paid YTD | $918.00 |

For statement questions,
please call Customer Service at
1.800.781.7399

### Payment Information

**07/01/09 Payment Options:**

| | |
|---|---|
| Principal and/or Interest | $2,677.89 |
| Escrow | $625.84 |
| Optional Products (2) | $ .00 |
| Other (2) | $ .00 |
| **Payment Amount** | $3,303.73 |
| Past Due Payment(s) | $ .00 |
| **Total Payment Due** | $3,303.73 |
| Unpaid Late Charges | $ .00 |
| Returned Payment Fees | $ .00 |
| Other Unpaid Charges (2) | $ .00 |
| Funds Advanced by IMS (1,2) | $ .00 |
| **Total Amount Due** | $3,303.73 |
| After 07/16/09 please pay: (3) | $3,437.62 |

**Payment Due:**
**07/01/09**

#### Additional Information

1. Unless otherwise agreed upon, additional funds may be applied to advances prior to being applied to fees/charges.
2. Itemized detail available upon request.
3. Payment calculation includes Late Charge fee.

### Transactions Since Last Statement

| Date | Transaction | Total | Principal/Deferred Interest | Interest | Escrow | Fees/Misc |
|---|---|---|---|---|---|---|
| 06/08/09 | Add'l Prin App | 1.27 | 1.27 | | | |
| 06/08/09 | Funds Applied | 3,303.73 | 532.66 | 2,145.23 | 625.84 | |

### Important Messages

**ONLINE ACCESS TO YOUR LOAN INFORMATION IS JUST A CLICK AWAY!**
To find out more, see the back of this statement.